**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KELLY MILLIGAN,<br>on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INC., BANK OF AMERICA CORP., and JOHN/JANE DOE 1, THE SENIOR VICE PRESIDENT–HUMAN RESOURCES GLOBAL BANKING AND GLOBAL WEALTH AND INVESTMENT MANAGEMENT ADMINISTRATION AT BANK OF AMERICA CORP.,<br><br>       Defendants. | Case No. 3:24-cv-00440-KDB-DCK<br><br>Judge Kenneth D. Bell<br><br>Magistrate Judge David Keesler |

**DEFENDANTS' ANSWER AND**
**DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") and Bank of America Corp. ("Bank of America") (together, "Defendants"), by and through their attorneys and pursuant to Rule 8 of the Federal Rules of Civil Procedure, provide the following answer and defenses to Plaintiff's Complaint (Dkt. 1):

**GENERAL DENIAL**

Defendants deny each allegation of the Complaint not specifically admitted herein.

**ANSWERS TO PLAINTIFF'S SPECIFIC ALLEGATIONS**

Subject to their additional defenses, Defendants plead as follows to the specific allegations contained in the numbered paragraphs of Plaintiff's Complaint.[1]

---

[1] The Complaint contains various headings and/or sub-headings. Defendants do not consider these to be substantive allegations to which a response is required. However, to the extent that a responsive pleading is required, Defendants

# INTRODUCTION

1.      Defendants admit that Plaintiff purports to assert his claims on behalf of a putative class.  Defendants further admit that Plaintiff purports to assert claims under the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendants deny that Plaintiff has asserted any viable claim arising under ERISA.  Defendants further deny that Plaintiff can satisfy the requirements for class certification under any theory, deny that class action treatment is appropriate, and further deny that Plaintiff is entitled to any relief in this action.  Defendants deny all remaining allegations in Paragraph 1.

2.      Denied. Answering further, Merrill Lynch financial advisors (or "FAs") are compensated, in relevant part, pursuant to a "Financial Advisor Incentive Compensation Plan" ("FA Incentive Comp. Plan"), which is issued annually and is subject to change by Merrill Lynch and/or Bank of America.  During the relevant period, FAs were paid a guaranteed monthly salary and also were eligible to receive additional incentive compensation, including in two separate and distinct forms: (1) monthly cash incentive compensation based on production credits at grid rates described in the FA Incentive Comp. Plan, and (2) "Long Term Contingent Awards," based on separate and distinct grid rates and subject to the other terms and conditions of the FA Incentive Comp. Plan, the relevant plan document(s) under which such awards are issued, and any applicable award agreement(s).  An FA's monthly cash incentive compensation is calculated and paid monthly.  Long Term Contingent Awards, by contrast, are issued annually, based on the full prior performance year and, during the relevant period, were awarded through two vehicles: the WealthChoice Contingent Award Plan ("WealthChoice Plan") and restricted stock units ("RSUs"), or some combination thereof.  Long Term Contingent Awards are only earned and payable if the

---

deny any and all allegations within any such heading or sub-heading.  For the Court's convenience, Defendants adopt the same numbering system used in the Complaint and italicize subheadings to distinguish them from the allegations.

FA remains employed through the award's designated vesting date, in addition to satisfying all other terms and conditions of each such award.[2]

3. Denied.

4. Denied.

5. Defendants admit that Plaintiff was employed by Merrill Lynch as a Financial Advisor. Defendants further admit that, upon Plaintiff's voluntary resignation, he did not satisfy the conditions to earn or become entitled to payment of unvested WealthChoice awards pursuant to the terms of the Plan document and his individual WealthChoice Award Agreements ("Award Agreement"). Defendants deny all remaining allegations in Paragraph 5.

6. Defendants admit that Plaintiff purports to seek the relief described in Paragraph 6. Defendants deny that Plaintiff has asserted any viable claims arising under ERISA. Defendants further deny that Plaintiff can satisfy the requirements for class certification under any theory, deny that class action treatment is appropriate, and further deny that Plaintiff is entitled to any relief in this action. Defendants deny all remaining allegations in Paragraph 6.

## JURISDICTION AND VENUE

7. Denied. Specifically, Defendants deny that ERISA applies to this dispute, meaning Plaintiff asserts no claim arising under ERISA or any law of the United States.

8. Defendants admit the Court has personal jurisdiction over Defendants. Defendants deny the remaining allegations in Paragraph 8.

9. Defendants admit that venue is proper in this Court. Defendants deny the remaining allegations in Paragraph 9.

---

[2] For the Court's convenience, Defendants have utilized Plaintiff's defined term "the Plan" or "WealthChoice Plan." However, Defendants deny the accuracy of this defined term to the extent it implies that the WealthChoice Contingent Award Plan is an "employee benefit pension plan" under ERISA.

10.     Admitted.

## PARTIES

### *Plaintiff*

11.     Defendants admit, upon information and belief, that Plaintiff resides in California and is a certified 401(k) professional, certified plan fiduciary advisor, certified private wealth advisor, and chartered retirement planning counselor.  Defendants further admit that Plaintiff worked as an FA for Merrill Lynch from 2000 until 2021.  Defendants deny all remaining allegations in Paragraph 11, including but not limited to the allegation that Plaintiff "forfeited" any earned "deferred compensation."  Answering further, pursuant to the terms of the WealthChoice Plan and Plaintiff's WealthChoice Award Agreements, the contingent awards at issue did not become earned and payable unless and until Plaintiff remained employed through the designated vesting date for each such award. Award Agmt. Ex. A ¶ (a).  Under the express terms of Plaintiff's WealthChoice Award Agreements, therefore, if Plaintiff voluntarily terminated his employment before an award vested, such unearned awards "shall be canceled as of your Termination of Employment." *Id.* ¶ (b)(v).  Defendants deny all remaining allegations in Paragraph 11.

### *Defendants*

12.     Admitted.

13.     Defendants admit that Merrill Lynch is a registered broker-dealer, registered investment adviser, and wholly owned subsidiary of Bank of America. Defendants further admit that Merrill Lynch is a "Participating Employer" as that term is specifically defined in Article II of the WealthChoice Plan document.  Defendants deny, however, that Merrill Lynch is a "Participating Employer under the Plan," to the extent the allegations in Paragraph 13 suggest or

imply that any Defendant is a "Participating Employer" as contemplated under or defined by ERISA, and deny that the WealthChoice Plan is an employee benefit pension plan under ERISA.

14.     Defendants admit that the WealthChoice Plan document defines the term "Administrator" as "the Senior Vice President-Human Resources Global Banking and Global Wealth and Investment Management Administrator or the individual serving in the functionally equivalent position if applicable from time to time (or any permitted delegate pursuant to Article III)." Defendants deny all remaining allegations in Paragraph 14, including but not limited to the extent they suggest that any Bank of America employee serves as a "plan administrator," as contemplated under or defined by ERISA. Defendants further deny that the WealthChoice Plan is a "deferred-compensation" plan or an employee benefit pension plan under ERISA. Defendants deny all remaining allegations in Paragraph 14.

## SUBSTANTIVE ALLEGATIONS

### A.     *Merrill Lynch's Compensation Program for FAs.*

#### 1.     *The FA Compensation System.*

15.     Denied. Answering further, FAs were compensated, in relevant part, pursuant to the FA Incentive Comp. Plan in effect during a particular year, as noted above (*see* Response to ¶ 2). During the relevant period, FAs were paid a guaranteed monthly salary and also were eligible to receive additional incentive compensation, including in two separate and distinct forms: (1) monthly cash incentive compensation based on production credits at grid rates described in the FA Incentive Comp. Plan, and (2) "Long Term Contingent Awards," based on separate and distinct grid rates and subject to the other terms and conditions of the FA Incentive Comp. Plan, the relevant plan document(s) under which such awards are issued, and any applicable award agreement(s). An FA's monthly cash incentive compensation is calculated and paid monthly.

Long Term Contingent Awards, by contrast, are issued annually, based on the full prior performance year and, during the relevant period, were awarded through two vehicles: the WealthChoice Plan and as RSUs, or some combination thereof. Long Term Contingent Awards are only earned and payable if the FA remains employed through the award's designated vesting date, in addition to satisfying all other terms and conditions of each such award. Defendants specifically deny any characterization, description, or summary of Merrill Lynch's FA compensation program that contradicts the relevant FA Incentive Comp. Plan(s), the applicable plan document(s) for any plans under which such compensation or awards were issued, and any applicable award agreement(s) relating to or governing any such awards.

16. Denied. Answering further, FAs are compensated, in relevant part, pursuant to the FA Incentive Comp. Plan in effect during a particular year, as noted above (*see* Responses to ¶¶ 2, 15). Defendants incorporate their responses to ¶¶ 2 and 15 as if fully stated herein, and specifically deny any characterization, description, or summary of Merrill Lynch's FA compensation program that contradicts the relevant FA Incentive Comp. Plan(s), the applicable plan document(s) for any plans under which such compensation or awards were issued, and any applicable award agreement(s) relating to or governing any such awards.

17. Defendants admit that the WealthChoice Plan document defines "Award Agreement" as "an agreement between the Company and each Covered Associate setting forth the terms and provisions applicable to Awards under the Plan." Plan, Art. II. Defendants further admit that the Plan states that "[t]he amount of each Covered Associate's Award in any given year shall be determined by the Administrator and be subject to the review and approval by the Company." Plan, § 4.1. Defendants also admit that if an FA received a WealthChoice award, such award was issued no more than 120 days after the end of the previous calendar year, but Defendants expressly

deny that such awards constitute "deferred compensation" and any suggestion that FAs earned or became entitled to receive such awards before those awards became earned and payable upon their designated vesting date. Defendants deny all remaining allegations in Paragraph 17.

18.     Denied. Answering further, FAs are compensated, in relevant part, pursuant to the FA Incentive Comp. Plan in effect during a particular year, as noted above (*see* Responses to ¶¶ 2, 15). Defendants specifically deny that an FA's monthly cash incentive compensation constituted the "remainder" of any FA's "commissions each month." Defendants also incorporate their responses to ¶¶ 2 and 15 as if fully stated herein, and specifically deny any characterization, description, or summary of Merrill Lynch's FA compensation program that contradicts the relevant FA Incentive Comp. Plan(s), the applicable plan document(s) for any plans under which such compensation or awards were issued, and any applicable award agreement(s) relating to or governing any such awards.

        **2.     The WealthChoice Contingent Award Plan.**

19.     Defendants admit that Bank of America established the WealthChoice Plan, but deny that Bank of America "sponsors" the Plan to the extent the allegations in Paragraph 19 seek to imply that Bank of America is a "plan sponsor," as contemplated under and defined by ERISA § 203(a), 29 U.S.C. § 1002(16)(B). Defendants admit that the WealthChoice Plan defines "Administrator" as the "Senior Vice President–Human Resources Global Banking and Global Wealth and Investment Management Administration or the individual serving in the functionally equivalent position if applicable from time to time (or any permitted delegate pursuant to Article III)." Defendants further admit that the WealthChoice Plan states that the "Administrator shall have all of the powers necessary to enable it to properly carry out its duties under the Plan,"

including the power to "construe and interpret the Plan and to determine all questions that shall arise thereunder." Defendants deny all remaining allegations in Paragraph 19.

20.    Paragraph 20 purports to characterize the WealthChoice Plan document and undated and unspecified versions of WealthChoice Award Agreements, documents that speak for themselves; therefore no response is required.  To the extent a response is required, Defendants admit that the operative WealthChoice Plan and the applicable WealthChoice Award Agreement for a given year contained terms and conditions that apply to a long-term contingent award granted under the WealthChoice Plan to an FA in such year.  Answering further, the Plan states that "[t]he amount of each Covered Associate's Award in any given year shall be determined by the Administrator and by subject to the review and approval by the Company." Plan § 4.1.

21.    Defendants admit that a notional account was established for FAs who received a contingent award under the WealthChoice Plan, but deny that such accounts are "for each year's deferred compensation" or that they operate "like in a 401(k) plan."  Answering further, Plaintiff's 2018 Award Agreement cited in Paragraph 21 (granted on February 15, 2019) states, "Subject to the terms and conditions of the Plan and this Agreement, Bank of America or its Subsidiary will establish a notional Account under the Plan in your name with the value set forth above. The Account represents your contingent right to receive the value of the Account Balance on the Vesting Date for your Award. This Account shall be indexed to mutual funds or other benchmark investments that you select from choices established by the Administrator ("benchmark selections"), and the value of your Account Balance will increase or decrease based on the performance of the selected mutual funds or other benchmark investments."  2018 Award Agreement, § 1.  Plaintiff's Award Agreement further states that his WealthChoice account balance "represents an unsecured, unfunded, contingent promise by your employer to pay the value

of the Account Balance to you after the Vesting Date," and that "[y]ou will not own the mutual funds or other options chosen as benchmarks for your Account Balance." Defendants deny all remaining allegations in Paragraph 21.

22. Defendants admit that contingent WealthChoice awards do not "become[] earned and payable" until a specified vesting date (and assuming the FA satisfies all other terms and conditions for receiving payment of such awards). Defendants further admit that the Plan defines "Vesting Date" as, "for any individual Award, the date on which the Account Balance with respect to an Award becomes earned and payable (as specified in the applicable Award Agreement)," Plan Art. II, and that Plaintiff's 2018 Award Agreement (granted on February 15, 2019) states, "the Account Balance representing your Award will become earned and payable on February 15, 2027 if you remain employed with Bank of America and its Subsidiaries through that date." 2018 Award Agmt., Ex. A, §(a). Defendants deny all other allegations in Paragraph 22.

23. Defendants admit that ¶ 8 of Plaintiff's 2018 Award Agreement contains the sentence quoted in this Paragraph 23, and also admit that the Award Agreement further states that "[o]nce the Account Balance representing your Award becomes earned and payable, payment of your Account Balance will be made as soon as administratively practicable, generally within thirty (30) days after the payment date." 2018 Award Agmt., Ex. A § (a). Defendants further admit that § 7.1 of the WealthChoice Plan document states, "Subject to the provisions of Article VIII below, a Covered Associate's Account Balance with respect to an Award for a Performance Period shall be paid as soon as practicable after the relevant Vesting Date in accordance with the terms of any applicable Award Agreement." Defendants deny all remaining allegations in Paragraph 23.

24. Defendants admit that an FA generally must be employed by Bank of America or its subsidiaries through the Vesting Date for his or her contingent WealthChoice award to become

earned and payable. Defendants deny that they "invoke the Cancellation Rule" if "an FA's employment ends before that date," and further deny Plaintiff's characterization of such a so-called "Cancellation Rule"; rather, WealthChoice awards are paid in accordance with the terms and conditions of the Plan and applicable Award Agreement, and FAs—including Plaintiff—are not entitled to receive payment of an award under such terms unless and until that award becomes earned and payable (and subject to all other terms and conditions in the Plan document and applicable Award Agreement). Defendants deny all remaining allegations in Paragraph 24.

25. Defendants admit that Plaintiff's Award Agreements state, "The Account Balance shall become immediately earned and payable as of the date of your Termination of Employment if your Termination of Employment is due to your death. Payment will be made as soon as administratively possible." *See, e.g.*, 2018 Award Agmt. Ex. A, § (b)(i). Defendants deny all remaining allegations in Paragraph 25, including but not limited to Plaintiff's definition of a so-called "Cancellation Rule" (which is not a defined term in the Plan document or Award Agreements), the characterization of his Award Agreements as containing "exceptions" to any such "Cancellation Rule," and any suggestion or implication that the Award Agreement supports Plaintiff's claim that the Plan is a "pension benefit plan" under ERISA.

26. Paragraph 26 purports to characterize Plaintiff's 2018 WealthChoice Award Agreement, a written document that speaks for itself; therefore, no response is required. To the extent a response is required, Defendants admit that the language quoted in Paragraph 26 appears in Plaintiff's 2018 Award Agreement, but deny the allegations to the extent they inaccurately or incompletely describe or characterize the provisions, terms, or requirements of the cited Award Agreement. Defendants deny all remaining allegations in Paragraph 26, including but not limited to Plaintiff's definition of a so-called "Cancellation Rule," the allegation that Defendants "invoke

the Cancellation Rule," and any suggestion or implication that the Award Agreement supports Plaintiff's claim that the Plan is a pension benefit plan, as defined under ERISA.

27. Paragraph 27 purports to characterize Plaintiff's 2018 WealthChoice Award Agreement, a written document that speaks for itself; therefore, no response is required. To the extent a response is required, Defendants admit that the language quoted in Paragraph 27 appears in Plaintiff's 2018 Award Agreement, but deny the allegations to the extent they inaccurately or incompletely describe or characterize the provisions, terms, or requirements of the cited Award Agreement. Defendants deny all remaining allegations in Paragraph 27, including but not limited to Plaintiff's definition of a so-called "Cancellation Rule," the allegation that such "Cancellation Rule does not apply if an FA retires," the incomplete characterization of the Award Agreement's definition of "Retirement," and any suggestion or implication that the Award Agreement supports Plaintiff's claim that the Plan is a pension benefit plan, as defined under ERISA.

28. Paragraph 28 purports to characterize Plaintiff's 2018 WealthChoice Award Agreement, a written document that speaks for itself; therefore, no response is required. To the extent a response is required, Defendants admit that the cited Award Agreement states, "Unless you are eligible for Retirement as described below, in the case of All Other Terminations, the Account Balance shall be canceled as of your Termination of Employment." 2018 Award Agmt., Ex. A, §(b)(v). Defendants deny all remaining allegations in Paragraph 28, including but not limited to the extent such allegations inaccurately or incompletely describe the provisions, terms, or requirements of the cited Award Agreement, Plaintiff's definition of a so-called "Cancellation Rule," and any suggestion or implication that the Award Agreement supports Plaintiff's claim that the Plan is a pension benefit plan, as defined under ERISA.

**B.** *The Plan Is an "Employee Benefit Pension Plan" Governed by ERISA.*

29.     Paragraph 29 asserts legal conclusions and purports to characterize and/or quote a statute, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 29 appears in the cited statutory provisions.  Defendants deny that the allegations in Paragraph 29 suggest, imply, or otherwise establish that the Plan is a pension benefit plan, as defined under ERISA.

30.     Denied.

**1.**     *The Plan Is a "Plan, Fund or Program."*

31.     Paragraph 31 asserts legal conclusions and purports to characterize and/or quote case law, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 31 appears in the cited decisions. Defendants deny, however, that the descriptions of the cited case law are accurate or complete, and further deny that the allegations in Paragraph 31 in any way suggest, imply, or otherwise establish that the Plan is a pension benefit plan, as defined under ERISA.

32.     Denied.

33.     Denied.

34.     Denied.

**2.**     *The Plan "Results in a Deferral of Income."*

35.     Paragraph 35 asserts legal conclusions and purports to characterize and/or quote statutory provisions and case law, which speak for themselves; therefore, no response is required. To the extent a response is required, Defendants admit that the language quoted in Paragraph 35 appears in the cited legal decisions.  Defendants deny, however, that the descriptions of Section 3(2)(A) of ERISA and the cited case law are accurate or complete, and further deny that the

allegations in Paragraph 35 in any way suggest, imply, or otherwise establish that the Plan is a pension benefit plan, as defined under ERISA.

36.     Denied.

37.     Paragraph 37 asserts legal conclusions and purports to characterize and/or quote ERISA and case law, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 37 appears in the decisions cited therein.  Defendants deny all remaining allegations in Paragraph 37.

38.     Paragraph 38 asserts legal conclusions and purports to characterize and/or quote a legal dictionary, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 38 appears in the cited portion of Black's Law Dictionary (11th ed. 2019).  Defendants deny that the 2019 edition of Black's Law Dictionary has any potential relevance to this action.  Defendants further deny all remaining allegations in Paragraph 38.

*3.*     ***The Plans Result in a Deferral of Income "For Periods Extending to the Termination of Covered Employment or Beyond."***

39.     Denied.

40.     Paragraph 40 asserts legal conclusions and purports to characterize and/or quote case law, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 40 appears in the decision cited therein.  Defendants deny the remaining allegations in Paragraph 40.

41.     Denied.

**D.     *The Cancellation Rule Violates ERISA's Vesting Requirements.***

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

**E.     *The Plan Is Not a "Bonus Program."***

46.     Admitted.

47.     Denied.

48.     Paragraph 48 asserts legal conclusions and purports to characterize and/or quote a legal dictionary, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 48 appears in the cited portion of Black's Law Dictionary (11th ed. 2019).  Defendants deny that the 2019 edition of Black's Law Dictionary has any potential relevance to this action, and further deny the allegations in Paragraph 48 to the extent they inaccurately or incompletely describe or characterize the cited provision.  Defendants deny the remaining allegations in Paragraph 38.

49.     Denied.

50.     Paragraph 50 asserts legal conclusions and purports to characterize and/or quote case law, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants admit that the language quoted in Paragraph 50 appears in the cited decisions.  Defendants deny, however, that the descriptions of the cited case law are accurate or complete, and further deny that these decisions have any potential relevance to this action and deny any suggestion or implication that these decisions support Plaintiff's claim that the Plan is a pension benefit plan, as defined under ERISA.

51.     Denied.

52.     Defendants admit that FAs may become eligible to receive a variety of awards and/or other types of compensation.  Defendants deny any allegation in Paragraph 52 that

incompletely or inaccurately describes or characterizes the terms of the applicable FA Incentive Comp. Plan(s), and further deny all remaining allegations in Paragraph 52.

## CLASS ACTION ALLEGATIONS

53.     Defendants admit that Plaintiff purports to assert his claims on behalf of a putative class and that Plaintiff's proposed class definition is set forth in Paragraph 53. Defendants deny that Plaintiff can satisfy the requirements for class certification under any theory, deny that class action treatment is appropriate, and further deny the remaining allegations in Paragraph 53.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Declaratory and Equitable Relief
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

61.     Defendants restate and incorporate by reference the answers to all prior allegations, as though fully set forth herein, and deny all remaining allegations in Paragraph 61.

62.     Paragraph 62 asserts legal conclusions and purports to characterize a statutory provision, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 62 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation.

Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

63.     Defendants admit that Plaintiff purports to seek the relief identified in Paragraph 63. Defendants deny that Plaintiff has asserted any viable claims arising under ERISA, and as a result, deny that this Court has subject matter jurisdiction over Plaintiff's claims.  Defendants further deny that Plaintiff is entitled to any relief whatsoever in this action.

64.     Defendants admit that Plaintiff purports to seek the relief identified in Paragraph 64. Defendants deny that Plaintiff has asserted any viable claims arising under ERISA, and as a result, deny that this Court has subject matter jurisdiction over Plaintiff's claims.  Defendants further deny that Plaintiff is entitled to any relief whatsoever in this action.

### SECOND CLAIM
*Reformation of the FA Deferred Compensation Plan
and to Recover Benefits Under the Reformed Plan
(ERISA §§ 502(a)(1) and (3), 29 U.S.C. § 1132(a)(1) and (3))*

65.     Defendants restate and incorporate by reference the answers to all prior allegations, as though fully set forth herein, and deny all remaining allegations in Paragraph 65.

66.     Paragraph 66 asserts legal conclusions and purports to characterize a statutory provision, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 66 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation. Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

67.     Denied.

68.     Denied.

69.     Paragraph 69 asserts legal conclusions and purports to characterize a statutory provision, which speaks for itself; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 69 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation. Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

70.     Denied.

### THIRD CLAIM
### Breach of Fiduciary Duty Against John/Jane Doe 1 Regarding the Plan
### (ERISA §§ 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3))

71.     Defendants restate and incorporate by reference the answers to all prior allegations, as though set forth fully herein, and deny all remaining allegations in Paragraph 71.

72.     Paragraph 72 asserts legal conclusions and purports to characterize and quote statutory provisions, which speak for themselves; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 72 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation.  Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

73.     Denied.

74.     Paragraph 74 asserts legal conclusions and purports to characterize and quote statutory provisions, which speak for themselves; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 74 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or

regulation.  Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

75.     Paragraph 75 asserts legal conclusions and purports to characterize and quote statutory provisions, which speak for themselves; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 75 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation.  Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

76.     Denied.

77.     Paragraph 77 asserts legal conclusions and purports to characterize and quote statutory provisions, which speak for themselves; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 77 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation.  Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

78.     Paragraph 78 asserts legal conclusions and purports to characterize and quote statutory provisions, which speak for themselves; therefore, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 78 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation.  Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

79.     Paragraph 79 asserts legal conclusions and purports to characterize and quote statutory provisions, which speak for themselves; therefore, no response is required.  To the extent

a response is required, Defendants deny the allegations in Paragraph 79 to the extent they inaccurately or incompletely describe the requirements of ERISA or any other applicable law or regulation. Answering further, Defendants deny the cited statutory provisions are applicable to Plaintiff's claims, as he has not asserted any viable claims arising under ERISA.

80.     Defendants admit that Plaintiff purports to seek the relief identified in Paragraph 63. Defendants deny that Plaintiff has asserted any viable claims arising under ERISA, and as a result, deny that this Court has subject matter jurisdiction over Plaintiff's claims. Defendants further deny the remaining allegations in Paragraph 80 and deny that Plaintiff is entitled to any relief whatsoever in this action.

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants admit that Plaintiff purports to seek the relief identified in the foregoing "Prayer for Relief." Defendants deny all allegations within each and every paragraph within the foregoing "Prayer for Relief," deny that Plaintiff has asserted any viable claims (arising under ERISA or otherwise), and deny that Plaintiff is entitled to any relief whatsoever, including but not limited to the relief identified in the foregoing "Prayer for Relief."

## AFFIRMATIVE AND OTHER DEFENSES

Defendants, by and through their attorneys, hereby assert the following defenses to Plaintiff's Complaint. By setting forth the defenses below, Defendants are not assuming the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff or any other party or non-party. Moreover, nothing stated herein is intended or shall be construed as an acknowledgement that any particular issue or subject necessarily is relevant to Plaintiff's allegations. Defendants further reserve the right to amend their Answer and Defenses and assert additional defenses and other claims, as this matter proceeds and as additional information becomes available during discovery proceedings or otherwise. Defendants therefore do not knowingly or intentionally waive any applicable defenses or affirmative defenses.

1.      Plaintiff fails to state a claim upon which relief may be granted.

2.      Some or all of the claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, because Plaintiff lacks standing to seek some or all of the requested relief.

3.      Some or all of the claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, by the applicable statute of limitations and/or statue of repose.

4.      The claims of some or all putative class members are barred, in whole or in part, to the extent such claims are required to be pursued in arbitration.

5.      Some or all of the claims of Plaintiff and/or some or all of the claims of some or all of the putative class members are barred, in whole or in part, to the extent that such claims have been released, discharged, abandoned, and/or barred in whole or in part by the doctrines of laches, waiver, and/or estoppel.

6.      Some or all of the claims of Plaintiff and/or some or all of the claims of some or all of the putative class are barred, in whole or in part, because they have not sustained any injury or damage by reason of any act or omission of Defendants.

7.      Any losses alleged by Plaintiff and/or some or all of the putative class members were not caused by any alleged act, fault, or omission by Defendants, but were caused by other circumstances, entities, persons, economic causes, and/or events not related to any alleged misconduct over which Defendants had control and/or for which Defendants are not responsible.

8.      The purported relief sought by the Complaint is not recoverable under the applicable provisions of ERISA, including but not limited to because such relief does not constitute "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

9.      To the extent Plaintiff has stated a claim on which relief can be granted, Plaintiff has proximately caused, contributed to, or failed to mitigate any and all losses claimed by them.

10.      To the extent Plaintiff has stated a claim on which relief can be granted, Plaintiff is barred from recovery or subject to set-off to the extent he (or any other putative class member) has been made whole, all or in part, for alleged forfeitures, including but not limited to as a result of any compensation such individual received from a subsequent employer to account for forfeitures.

11.      Some or all of the claims of Plaintiff and/or some or all of the claims of some or all of the putative class members are barred, in whole or in part, by the doctrines of estoppel and/or set-off.

12.      If Defendants did violate applicable law as to the claims of Plaintiff and/or some or all of the putative class members (which Defendants fully deny), the act(s) or omission(s) giving rise to such violation(s) were in good faith and Defendants had good faith and reasonable grounds for believing that the act(s) or omission(s) were not a violation of applicable law.

13.     To the extent the WealthChoice Plan is deemed to be governed by ERISA, and any Defendant is deemed to be a "fiduciary" within the meaning of ERISA, then such Defendant at all times acted prudently, loyally, in good faith, and otherwise in compliance with all fiduciary duties.

14.     Some or all of the claims of Plaintiff cannot and should not be maintained on a class basis because they fail to meet the necessary requirements for certification, including, but not limited to, numerosity, commonality, typicality, adequacy, predominance, and/or superiority.

15.     Without waiving its ability to oppose class certification and expressly asserting its opposition to the propriety of class treatment, if the Court does certify a class in this case over Defendants' objections, Defendants assert all defenses set forth herein against each and every member of the certified class.

16.     The WealthChoice Contingent Award Plan is not a pension plan under ERISA.

17.     The WealthChoice Contingent Award Plan is a bonus program within the meaning of ERISA and Department of Labor regulations.

18.     The WealthChoice Contingent Award Plan does not result in a deferral of income within the meaning of ERISA.

19.     The WealthChoice Contingent Award Plan does not result in a deferral of income for periods extending to the termination of covered employment or beyond.

20.     The WealthChoice Contingent Award Plan does not systematically defer awards until termination or beyond.

21.     One or more of Defendants are not, or were not acting as, fiduciaries within the meaning of ERISA, with respect to the purported misconduct or actions alleged by Plaintiff.

22.     The Court lacks subject matter jurisdiction because Plaintiff does not assert a viable claim arising under ERISA or any other law of the United States.

*   *   *

WHEREFORE, having fully answered Plaintiff's Complaint in its entirety, Defendants pray for judgment as set forth below.

   a.   An order dismissing all claims with prejudice;

   b.   An order awarding all costs and fees to Defendants; and

   c.   Any such other order and further relief as the Court deems just and proper.

Dated: July 12, 2024

Respectfully submitted,

By: /s/ Robert A. Muckenfuss

Robert A. Muckenfuss, NC State Bar #28218
Zachary L. McCamey, NC State Bar #53540
MCGUIRE WOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2000
(704) 343-2300
zmccamey@mcguirewoods.com
rmuckenfuss@mcguirewoods.com

Sari M. Alamuddin (*pro hac vice* forthcoming)
Matthew A. Russell (*pro hac vice* forthcoming)
Eric M. Makinen (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
(312) 324-1000
(312) 324-1001 (fax)
sari.alamuddin@morganlewis.com
matthew.russell@morganlewis.com
eric.makinen@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Robert A. Muckenfuss, an attorney, hereby certify that on July 12, 2024, I caused a copy of the foregoing **Defendants' Answer and Defenses to Plaintiff's Class Action Complaint** to be filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/*   Robert A. Muckenfuss