# EXHIBIT B

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KELLY MILLIGAN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | Civil Action No. ——————3:24-cv-00440 |
| Plaintiff, | |
| vs. | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., BANK OF AMERICA CORP., and JOHN/JANE DOE 1, THE SENIOR VICE PRESIDENT–HUMAN RESOURCES GLOBAL BANKING AND GLOBAL WEALTH AND INVESTMENT MANAGEMENT ADMINISTRATION AT BANK OF AMERICA CORP., | CLASS ACTION |
| Defendants. | |

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Plaintiff Kelly Milligan, on behalf of himself and all others similarly situated, files this Class Action Complaint against Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Bank of America Corp. ("BOA"), and John/Jane Doe 1, the Senior Vice President–Human Resources Global Banking and Global Wealth and Investment Management Administration at BOA (together, "Defendants").

## INTRODUCTION

1.      This is a class action under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover the deferred compensation that financial advisors ("FAs") forfeited in violation of ERISA § 203(a), 29 U.S.C. § 1053(a), when they left Merrill Lynch.

2.      FAs receive salary plus commissions. Commissions are based on the revenue generated by client investment activities. Defendants automatically allocate a portion of FAs'

1

commissions into Merrill Lynch's deferred compensation plan (the WealthChoice Contingent Award "Plan (the "Plan"). The deferred commissions are allocated to individual Plan accounts for each FA. Under the relevant Plan award agreements, commissions as either "WealthChoice" awards or Restricted Stock Units ("RSU") of BOA common stock. WealthChoice awards "vest" in eight years. RSUs "vest" over three years (33% per year). Merrill Lynch causes FAs to forfeit the value in their Plan accounts if they leave Merrill Lynch before these vesting dates (the "Cancellation Rule").

3. The Plan is an "employee benefit pension plan" under ERISA because it "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii).

4. Specifically, the Plan "results in a deferral of income" because FAs are paid for work (i.e., the revenue they generate) years after they perform the work. The Plan also "results in" income being deferred "for periods extending to the termination of covered employment or beyond" because FAs receive the value of their Plan accounts after their employment ends if they retire, are laid off, or become disabled.

5. Plaintiff worked as an FA at Merrill Lynch and, when he left Merrill Lynch, Defendants invoked the Cancellation Rule to deny him the deferred compensation that he earned under the FA Deferred Compensation Program. Plan.

6. Plaintiff seeks an Order from the Court under ERISA § 502(a)(3) declaring that the Plan is subject to ERISA and that the Cancellation Rule violates ERISA's vesting and anti-forfeiture requirements. He seeks the payment of his and the other class members' deferred compensation that was wrongfully forfeited. He also asserts a claim against John/Jane Doe 1, the Senior Vice President–Human Resources Global Banking and Global Wealth and Investment

2

Management Administration, who administers the deferred-compensation plan, for breach of fiduciary duty under ERISA § 502(a)(2) and (a)(3) for applying the Cancellation Rule in violation of ERISA. Alternatively, Plaintiff seeks an Order reforming the Plan so that it complies with ERISA's vesting ~~and,~~ anti-forfeiture, and other requirements by, among other things, eliminating the Cancellation Rule. Plaintiff also asserts a claim under ERISA 502(a)(1)(B) to recover the benefits due to him and the other class members under the Plan, as reformed.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and under 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

8. This Court has personal jurisdiction over Defendants because they are headquartered, transact business, reside in, or have significant contacts with this District, and because ERISA provides for nationwide service of process.

9. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all the violations of ERISA occurred in this District, and Defendants may be found in this District. Venue is also proper in this District under 28 U.S.C. § 1391 because Defendants do business in this District, and a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred within this District.

10. Venue is also proper in this District because the relevant award agreements provide any dispute related to the Plan shall be resolved "solely in the courts of Mecklenburg County, North Carolina or the federal courts for the United States for the Western District of North Carolina."

3

## PARTIES

### Plaintiff

11.     Plaintiff Kelly Milligan resides in the State of California. He is a Certified 401(k) Professional, Certified Plan Fiduciary Advisor, Certified Private Wealth Advisor, and Chartered Retirement Planning Counselor, with more than 20 years of experience as a financial advisor. Milligan worked as an FA at Merrill Lynch from 2000–2021. When he left Merrill Lynch, he forfeited over $~~500~~1,000,000 in deferred compensation as a result of the Cancellation Rule.

### Defendants

12.     Defendant BOA is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Bank of America is a global financial services firm that, through its subsidiaries and affiliates, including Merrill Lynch, provides financial advisory services to clients.

13.     Defendant Merrill Lynch is a registered broker-dealer, registered investment adviser, and wholly owned subsidiary of BOA. It is a Participating Employer under the Plan.

14.     Defendant John/Jane Doe 1 is the Senior Vice President–Human Resources Global Banking and Global Wealth and Investment Management Administration or the individual serving in the functionally equivalent position at BOA during the Class Period. This individual administers the ~~deferred-compensation plan~~Plan.

## SUBSTANTIVE ALLEGATIONS

**A.      ~~A.~~     Merrill Lynch's Compensation Program for FAs.**

**1.         ~~1.~~     The FA Compensation System.**

15.     FAs receive a combination of salary and commissions on the revenue ~~generated~~that is "received and retained by [Merrill Lynch]" through ~~their~~FAs' clients' investment activities.

16.     To calculate commissions, Merrill Lynch applies a specified percentage to the amount of revenue an FA generates. ~~For example, Milligan earned commissions ranging from~~

4

~~approximately 38% to 46% of the revenue he generated in any given year. At least 5% of an FA's~~ ~~commission is then deferred into the Plan. A "grid" determines the exact deferral percentage. This~~ ~~deferral percentage is applied to the first dollar of commissions earned by an FA each~~ ~~month.~~Merrill Lynch pays FAs cash commissions monthly, subject to adjustments until the end of the year.  Merrill Lynch designates a percentage of an FA's commissions as "long-term" compensation, which Merrill Lynch grants as deferred compensation "awards."  The percentages applicable for the cash and deferred components of an FA's commissions are set forth in a "grid," which sets the rates based on the FA's production level.  The grid for the 2020 calendar year is shown below:

| Production range | Cash grid | Long-term |
|---|---|---|
| 10,000,000+ | 50% | 7.25% |
| 5,000,000-9,999,999 | 49% | 7.00% |
| 3,000,000-4,999,999 | 47% | 6.75% |
| 2,000,000-2,999,999 | 46% | 6.50% |
| 1,500,000-1,999,999 | 45% | 6.25% |
| **Step-up grid** | | |
| **Retroactive grid** | | |
| 1,050,000-1,499,999 | 42% | 6.00% |
| 850,000-1,049,999 | 41% | 5.50% |
| 650,000-849,999 | 40% | 5.00% |
| 450,000-649,999 | 39% | 4.00% |
| 350,000-449,999 | 37% | 3.50% |
| 250,000-349,999 | 35% | -- |
| <250,000 | 34% | — |

17.     In February of each year, the total of an FA's deferred compensation from the previous calendar year is granted to the FA as ~~a~~one or more Plan ~~award~~awards. The ~~terms and~~ ~~conditions of each award~~ Plan awards "are ~~contained in an~~subject to the terms and conditions of the applicable plans, programs, and award agreements… ." 2020 ICP, ECF 42-10 at 12.[1]  ~~Award~~

---

[1] Page numbers for filed documents refer to the ECF-stamped page numbers.

Agreement. Plan, § 2 (definition of "Award Agreement"). The The Plan Administrator determines the terms and conditions of each award. *Id.* at § 4.1 ("Awards"). at 38; WealthChoice Plan, ECF 41-3 at § 3 ("Administration").

18. FAs receive the remainder of their (non-deferred) portion of their commissions each month in their paychecks. , as an advance. Both these cash commissions and FAs' deferred commissions are finalized shortly after the end of each calendar year.

**2.     2.     The Award Plans and Award Agreements.**

19. The "applicable plan" for WealthChoice awards is the WealthChoice Contingent Award Plan. (the "WealthChoice Plan").

19.20. Bank of America sponsors the WealthChoice Plan. This The WealthChoice Plan is administered by BOA's Senior Vice President–Human Resources Global Banking and Global Wealth and Investment Management Administration or the individual serving in the functionally equivalent position ("Administrator"). The Administrator has "all of the powers necessary to enable it to properly carry out its duties" under the Plan, including the power to "construe and interpret the Plan and to determine all questions that shall arise thereunder." *Id.* WealthChoice Plan, ECF 41-3 at § 3.

21. The terms and conditions that apply to FAs WealthChoice Plan awards are contained in the Incentive Compensation Plan documents, the WealthChoice Plan document, and the Award Agreements that Merrill Lynch issues to FAs when Merrill Lynch grants Plan awards. WealthChoice Plan, ECF 41-3 at § 4.1.

22. The "applicable plan" for RSU awards is the restricted stock unit plan (the "RSU Plan"). Bank of America sponsors the RSU Plan. The RSU Plan is also administered by an administrator, and the administrator of the RSU Plan has all of the powers necessary to enable it

6

to properly carry out its duties under the RSU Plan, including the power to construe and interpret the Plan and to determine all questions that shall arise thereunder.

20.23. The terms and conditions that apply to RSU Plan awards are in the Incentive Compensation Plan documents, the RSU Plan document, and the Award Agreements that Merrill Lynch issues to FAs when ~~they receive~~Merrill Lynch grants Plan awards. *Id.* at § 4.1.

24. FAs have individual, notional Plan accounts for each award they receive, i.e., they have an account for each year's deferred compensation.

25. FAs have both WealthChoice accounts and RSU accounts.

21.26. FAs can invest their ~~accounts~~WealthChoice awards in notional investments, like in a 401(k) plan, with the value of their accounts tracking the performance of the selected investments. ~~2018~~2019 WC Award Agreement, ECF 42-11, § 1.

27. RSU awards are notional investments of Bank of America stock. When Bank of America stock awards dividends, Merrill Lynch reinvests the dividend equivalents in the FA's RSU account. 2020 ICP, ECF 42-10 at 10.

22.28. FAs' Plan awards are subject to a "Vesting Date," which is the date the award's account balance "becomes earned and payable" under the Plan. WealthChoice Plan, ~~§ 2; 2018~~ECF 41-3 at 5 (definition of "Vesting Date").; 2019 WC Award Agreement, ECF 42-11, at § 3 and Exhibit A, §(a). The Vesting Date for WealthChoice awards granted in February ~~2019~~2020 (based on deferred compensation earned in ~~2018~~2019) was February 15, ~~2027~~2028, i.e., an 8-year vesting schedule. ~~2018~~2019 WC Award Agreement, ECF 42-11, at Exhibit A, §(a).

29. RSU awards vest gradually over three years, with 1/3 vesting each year. 2020 ICP, ECF 42-10 at 10.

23.30. According to the WealthChoice Plan document, Merrill Lynch pays FAs their vested deferred compensation in the WealthChoice Plan. WealthChoice Plan, § 6.1; 20182019 WC Award Agreement, ECF 42-11, at ¶ 8 ("Your Account Balance represents an unsecured, unfounded, contingent promise by your employer to pay the value of the Account Balance to you after the Vesting Date."). "); Merrill Lynch makes the payment "as soon as practicable" after the Vesting Date. Plan, § 7.1; 20182019 WC Award Agreement, ECF 42-11, at Exhibit A, §(a).

31. Merrill Lynch also pays FAs their vested deferred compensation in the RSU plan upon vesting. 2020 ICP, ECF 42-10 at 10 (RSUs "represent the right to receive one share of Bank of America common stock or an equivalent cash payment for each unit that vests upon the applicable vesting date.").

24.32. Subject to certain exceptions described below, an FA must be employed by Merrill Lynch on the Vesting Date to receive his or her deferred WealthChoice compensation. If an FA's employment ends before that date, Defendants invoke the Cancellation Rule and cancel the FA's Account Balance so that the FA never receives his or her WealthChoice deferred compensation. 20182019 WC Award Agreement, ECF 42-11, at Exhibit A, §(b).

33. Subject to those same exceptions, Merrill Lynch applies the Cancellation Rule to RSU awards.

25.34. The Award Agreements contain several exceptions to the Cancellation Rule. *Id.* at §§(b), (c). The Cancellation Rule does not apply if an FA dies. *Id.* at §(b)(i) ("Death"). If this occurs, the FA's Account Balance "shall become immediately earned and payable." *Id.*

26.35. The Cancellation Rule also does not apply if an FA's employment ends because of a "Workforce Reduction, Divestiture or Disability," as long as the FA agrees to certain "Covenants." *Id.* at §(b)(ii) ("Workforce Reduction, Divestiture or Disability"). The first Covenant

8

is that the FA ~~agrees~~must agree to not (1) "solicit or recruit for employment or encourage to leave employment with Bank of America or its Subsidiaries . . . [any] employee of Bank of America or its Subsidiaries; or (2) "solicit any client or customer of Bank of America or its Subsidiaries which you actively solicited or with whom you worked or otherwise had material contact in the course of your employment with Bank of America and its Subsidiaries." *Id.* at §(d)(i) ("Non-Solicitation"). The second Covenant is that the FA ~~agrees~~must agree to "not engage in Detrimental Conduct" until the payment date. *Id.* at §(d)(ii) ("Detrimental Conduct"). If an FA complies with these Covenants, then the FA's Account Balance "shall continue to become earned and payable" on the payment date. *Id.* at §(b)(ii). But if the FA fails to comply with these Covenants, Defendants will invoke the Cancellation Rule and cancel the FA's Account Balance. *Id.* at §(e) ("Remedies").

36.     Merrill also applies the exceptions to the Cancellation rule described in Paragraphs 34 and 35 to RSU awards.

~~27.~~37.  The Cancellation Rule does not apply if an FA retires, as long as the FA does "not engage in Competition" before the payment date, provides Bank of America with an annual "certification that [they] have not engaged in competition," and agrees to the non-solicitation and detrimental-conduct Covenants described above. *Id.* at §§(c) ("Retirement"), (d). FAs are eligible for retirement when they reach age 65 or age 55 with 10 years of service. *Id.* at §(e) ("Retirement"). Once they meet these requirements, their Account Balance "will become earned and payable in two installments, with the first 50% becoming earned and payable within 2½ months following the end of the calendar year in which [their] Retirement occurs and the remaining 50% becoming earned and payable within 2½ months following the end of the immediately subsequent calendar year." *Id.* at §(e).

9

38.     Thus, upon retirement, an FA receives recently earned deferred compensation on an accelerated schedule. But the FA's deferred compensation earned in earlier years may be further deferred beyond the original vesting date. For example, an FA who earned WealthChoice awards in February of 2012 and 2019 would normally receive those deferred compensation awards in 2020 and 2027, respectively. But if that hypothetical FA retired in January of 2020, then the FA would have received half of those deferred awards in 2021 and half in 2022. The 2012 award, based on 2011 commissions, would have been further deferred by one to two additional years. The 2019 award, on the other hand, would have been paid on an accelerated schedule, two to three years after it was issued.

39.     RSU awards normally vest more quickly than WealthChoice awards, but the payment schedules of RSU awards are accelerated or further deferred in the same way as WealthChoice Awards when FAs retire.

28.40.  FAs, including retirement-eligible FAs, who end their employment to work for another brokerage firm or change careers do not receive the value of their Plan accounts because of the Cancellation Rule. *Id.* at2019 WC Award Agreement, ECF 42-11, at Exhibit A §(v) ("All Other Terminations").

**B.     B.     The Plan Is an "Employee Benefit Pension Plan" Governed by ERISA.**

29.41.  ERISA covers any "employee benefit plan," ERISA § 4(a), 29 U.S.C. § 1003(a), a term that includes "employee pension benefit plans."  ERISA § 3(3), 29 U.S.C. § 1002(3). An "employee benefit pension plan" is:

> any plan, fund, or program which . . . by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i)     provides retirement income to employees, *or*

> > (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) (emphasis added).

30.42.  As described below, the Plan is an "employee benefit pension plan" under ERISA.

**1.        1.    The Plan Is a "Plan, Fund or Program."**

31.43.  The phrase "plan, fund or program" under ERISA "means nothing more than a 'scheme decided upon in advance.'"  *Feifer v. Prudential Ins. Co.*, 306 F.3d 1202, 1209 (2d Cir. 2002) (citing *Pegram v. Hedrich*, 530 U.S. 211, 223 (2000)). A "plan, fund or program" is "established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994). A "plan, fund or program" does not be a formal written document and can be comprised of multiple documents. *Id*. at 151; *Feifer*, 306 F.3d at 1209 ("However slap-dash, the Program Summary and the accompanying memorandum" established a plan that was governed by ERISA).

32.44.  The Plan  is a "plan, fund or program" under ERISA because it identifies the intended benefits—deferred compensation—using an objective formula (i.e., a percentage) that determines how FAs earn benefits.

33.45.  The Plan also has an ascertainable class of beneficiaries. Only FAs are eligible to participate in the program, and the Award Agreements that are issued to them about their deferred compensation are specific to FAs.

11

34.46.  The Plan also has an identifiable source of financing. FAs' deferred compensation in the Plan is paid out of the general assets of Merrill Lynch on the payment date. Plan, § 6.1; 20182019 WC Award Agreement, ECF 42-11, at § 8.

**2.    2.    The Plan "Results in a Deferral of Income."**

35.47.  Subparagraphs (i) and (ii) in Section 3(2)(A) of ERISA "set out independent tests" for whether a "plan, fund or program" is an "employee benefit pension plan." *Pasternack v. Schrader*, 863 F.3d 162, 168 (2d Cir. 2017); *see also Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619, 624 (5th Cir. 2014) ("The plain language of the statute makes clear that subsection (ii) is separate and distinct from subsection (i)."). The second of these two independent tests—whether a "plan, fund or program" "results in a deferral of income" under ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii)—is "an effects-based inquiry rather than one based on purpose." *Pasternack*, 863 F.3d at 170, n.5.

36.48.  The Plan results in a deferral of FAs' income. At least 5% of an FA's commissions are withheld from their paychecks each year, allocated to a Plan award of deferred compensation that the FA receives in February of the next year, and ultimately paid to the FA eight years later. FAs receive their remaining commissions at the end of the next month as cash compensation. In other words, Merrill Lynch forces FAs to defer the first portion of their compensation, instead of receiving it right away in cash.

37.49.  While ERISA does not define the phrase "deferral of income," it has the same meaning as "deferred compensation." *See, e.g.*, *Tolbert*, 758 F.3d at 625. Accordingly, "by its express terms," Merrill Lynch's compensation program for FAs "results in a deferral of income." *See, e.g.*, *id.* at 625-26 (plan covered by ERISA because it "contain[ed] provisions for both Voluntary Deferred Compensation and Mandatory Deferred Compensation, terms that plainly

12

refer to income that is deferred."); *Wilson v. Safelite Group, Inc.*, 930 F.3d 429, 434 (6th Cir. 2019) (ERISA applied "when a deferral of income by employees . . . arises as an effect, issue, or outcome from' the provisions of that plan.").

~~38.~~50. These cases are consistent with the dictionary definition of "deferred compensation" as (1) "[p]ayment for work performed, to be paid in the future or when some future event occurs," and (2) "an employee's earnings that are taxed when received or distributed rather than when earned . . . ." BLACK'S LAW DICTIONARY (11th ed. 2019). Here, FAs defer part of their compensation for work performed (by generating revenue) until a later date and do not pay taxes on this compensation until it is distributed. Plan, § 11; ~~2018~~2019 Award Agreement, ECF 42-11, at § 10.

### 3. ~~3.~~ The Plans Result in a Deferral of Income "For Periods Extending to the Termination of Covered Employment or Beyond."

~~39.~~51. The Plan results in FAs deferring income "for periods extending to the end of covered employment or beyond." ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii). The phrase "end of covered employment" refers to when an employee stops working for a company. *Wilson*, 930 F.3d at 435.

~~40.~~52. A plan need ***not*** require employees to defer income until "the end of covered employment or beyond" in order to be governed by ERISA. *Wilson*, 930 F.3d at 434. ERISA "covers plans containing terms that have as an effect, issue, or outcome—even if not a requirement—deferral of income by employees extending to the termination of covered employment or beyond." *Id.* at 435. As the court explained in *Wilson*,

> Subsection (ii) does not specify deferral of income "until termination" or "to termination;" rather it says "for periods extending to the termination." Thus, deferrals may occur for various periods, and those periods may last up to and/or beyond termination. Subsection (ii) covers a wide array of plans

13

and does not exclude plans that give participants the option to receive in service distributions.

*Id*.

41.53.  The Plan contains several provisions that contemplate FAs receiving their deferred compensation at or after the end of their employment with Merrill Lynch. FAs whose employment ends because of Retirement receive their deferred compensation in two installments in the two years after they retire. And FAs whose employment ends because of a Workforce Reduction, Divestiture, Disability, or Retirement still receive their deferred compensation on the payment date, which occurs after their employments have ended. Thus, "by design," *Tolbert*, 758 F.3d at 625, and "as an effect, issue or outcome from the provisions of the plan," *Wilson*, 930 F.3d at 434, Merrill Lynch pays FAs their deferred compensation on or after the termination of employment.

## C.   ~~D.~~   The Cancellation Rule Violates ERISA's Vesting Requirements.

42.54.  ERISA has strict vesting rules that apply to "individual account plans" like the Plan. Contributions to the Plan are employee contributions and, therefore, 100% vested when made under ERISA § 203.

43.55.  Even if contributions to the Plan were to be considered employer contributions under ERISA § 203(a)(2)(B), employees must be fully vested in their accounts plans after they have three years of service or, alternatively, gradually vested in their accounts under the following schedule:

| Years of Service | Nonforfeitable Percentage |
|:---:|:---:|
| 2 | 20 |
| 3 | 40 |
| 4 | 60 |
| 5 | 80 |
| 6 or more | 100 |

14

56. To compute the period of service to determine the nonforfeitable percentage under ERISA § 203(a)(2), "all of an employee's years of service with the employer…shall be taken into account…" ERISA § 203(b)(1). An employee's years of service do not "reset" each time the employer makes a contribution to the employee's account.

~~44.~~57. The Plan violates ERISA's vesting requirements because FAs vest in their deferred compensation in eight years under the Plan, with the vesting schedule not impacted by the FA's years of service.

~~45.~~58. Based upon his years of service, Plaintiff should have been fully vested in his deferred compensation under ERISA.

## D. ~~E.~~ The Plan Is Not a "Bonus Program."

~~46.~~59. The Department of Labor has promulgated regulations that "clarify the limits" of the term "employee pension benefit plan" under ERISA. 29 C.F.R. § 2510.3-2(a). Employee pension benefit plans do not include "bonus programs," which are "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." *Id.* at § 2510.3-2(c).

~~47.~~60. FAs' deferred compensation in the Plan is not a "bonus."

~~48.~~61. A bonus is a "premium paid in addition to what is expected; esp., a payment by way of a division of a business's profits, given over and above normal compensation (year-end bonus.)." Bᴌᴀᴄᴋ'ꜱ Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ (11th ed. 2019).

~~49.~~62. FAs do not have to do anything "in addition to what is expected" of them in order to earn the commissions allocated to the Plan. ~~For example, they do not have to generate a specified amount of revenue or improve their previous year's production in order to earn deferred~~

commission. ~~Indeed, FAs automatically receive deferred compensation with the *very first dollar of commissions* they earn as part of their compensation structure.~~ Given that FAs are expected to generate revenue, their compensation for performing this core function ~~— at the absolute minimum level —~~ is not, and cannot be, a "bonus." Rather, FAs' compensation—including their deferred compensation—is a "commission."

~~50.~~63.  "A commission is a 'fee or percentage allowed to a sales representative or an agent for services rendered.'" *Wolfe v. Advance Ins. Co. of Kansas*, No. 07-1406-DWB, 2009 WL 2106138, at *8 (D. Kan. July 16, 2009) (quoting The American Heritage Dictionary (3d ed. 1992)). A "'commission' is commonly understood to refer to those in the business of selling goods, services or real estate set typically as a percentage of the sales price." *Israel v. Voya Institutional Plan Servs. LLC*, No. 15-cv-11914-ADB, 2017 WL 1026416, at *4 (D. Mass. Mar. 16, 2017).

~~51.~~64.  FAs automatically earn deferred compensation as a fixed percentage of the revenue ~~they generate from the sale of~~that is "received and retained" by Merrill Lynch from FAs' clients' investment ~~services~~activities. Therefore, this deferred compensation constitutes "commissions."

~~52.~~65.  Indeed, FAs can receive separate discretionary "bonuses," which are in addition to their commissions. FAs earn deferred compensation under a non-discretionary, uniformly applied "grid" ~~starting at the first dollar of~~applied to revenue they generate. In contrast, FAs earn "year-end bonuses" by achieving individualized, performance-based goals such as increasing their prior year's revenue by specified percentages or cross-selling products to clients. "Achieving individualized, performance-based goals is "in addition to what is expected," and, therefore, a classic bonus. *Israel*, 2017 WL 1026416, at *6.

## CLASS ACTION ALLEGATIONS

~~53.~~66.  Plaintiff brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class (the "Class") defined as follows:

16

All former Merrill Lynch financial advisors who forfeited deferred compensation in the WealthChoice Contingent Award Plan and/or the RSU Plan from April 30, 20182014, until the date of judgementjudgment because of the Cancellation Rule. Excluded from the Class are Defendants and any individuals who are subsequently determined to be fiduciaries of the WealthChoice Contingent Award Plan. and/or the RSU Plan.

54.67.  The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, the Class includes thousands of persons.

55.68.  Plaintiff's claims are typical of the claims of the members of the Class because his claims and the claims of all Class members arise out of the same policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

56.69.  There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class Members. Common legal and factual questions include:

      (a)     Whether ERISA applies to the Plan;

      (b)     Whether the Cancellation Rule is invalid under ERISA;

      (c)     Whether Class Members are entitled to equitable relief under ERISA § 502(a)(3);

      (d)     Whether John/Jane Doe 1 violated fiduciary duties under ERISA § 502(a)(2) in selecting and enforcing a vesting schedule that violated ERISA; and

      (e)     Whether Class Members should receive additional benefits under the Plan.

57.70.  Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiff has no interests

17

antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in managing this litigation as a class action.

~~58.~~71.  This action may be properly certified under Rule 23(b)(1). Certification is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Certification is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

~~59.~~72.  Alternatively, certification is warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or other equitable relief appropriate to the Class as a whole.

~~60.~~73.  Alternatively, certification is warranted under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Declaratory and Equitable Relief
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

~~61.~~74.  Plaintiff re-alleges all prior allegations.

~~62.~~75.  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title

18

or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

63.76.  Under this section of ERISA, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks a declaration that the Plan is an "employee benefit pension plan" under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

64.77.  Plaintiff also seeks orders from the Court providing a full range of equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including:

(a)     A declaration that the Plan and its Cancellation Rule violate ERISA's vesting and anti-forfeiture rules;

(b)     An injunction requiring Defendants to remedy their past violations of ERISA's vesting rules, including reversing all past forfeitures caused by the application of the Cancellation Rule;

(c)     Surcharge;

(d)     An "accounting" of all deferred compensation wrongfully withheld from FAs because of the Cancellation Rule;

(e)     Disgorgement of all amounts wrongfully withheld;

(f)     Disgorgement of all profits Defendants earned on the amounts they wrongfully withheld;

(g)     A declaration that the amounts wrongfully withheld are in a constructive trust for the benefit of Plaintiff and the Class;

(h)     An order granting Plaintiff and the Class an equitable lien on Defendants' assets equal to the amount that Defendants' wrongfully withheld; and

19

(i)     All other relief the Court determines is just and proper under its equitable powers.

## SECOND CLAIM
**Reformation of the FA Deferred Compensation Plan**
**and to Recover Benefits Under the Reformed Plan**
**(ERISA §§ 502(a)(1) and (3), 29 U.S.C. §§§ 1132(a)(1) and (3))**

65.78.  Plaintiff re-alleges all prior allegations.

66.79.  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

67.80.  Defendants improperly denied Plaintiff and the members of the Class their deferred compensation that should have been vested and not forfeited under ERISA. By denying Plaintiff and the members of the Class their deferred compensation, Defendants violated ERISA § 203(a), 29 U.S.C. § 1053(a).

68.81.  Plaintiff and the Class are entitled to reformation of the Plan to require Defendants to comply with the vesting and anti-forfeiture requirements in ERISA § 203(a), 29 U.S.C. § 1053(a).

82.     Plaintiff and the Class seek equitable relief in the form of an injunction requiring Defendants to invest Plan assets in the participants' chosen investments.

69.83.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

20

70.84.  Plaintiff and the Class are entitled to recover their vested benefits, enforce their rights to the payment of their past vested benefits, and clarify their rights to vested benefits under the Plan after reformation, and require that plan assets be invested in the participants' chosen investments.

### THIRD CLAIM
### Breach of Fiduciary Duty Against John/Jane Doe 1 Regarding the Plan
### (ERISA §§ 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3))

71.85.  Plaintiff re-alleges all prior allegations in the Amended Complaint.

72.86.  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other person who in fact performs fiduciary functions.  Thus, a person is a fiduciary if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override a finding of fiduciary status when the statutory test is met.

73.87.  John/Jane Doe 1 is a fiduciary under the Plan because he/she is the administrator of the Plan and is responsible for, among other things, reviewing and establishing the rules and procedures of the Plan, including the ability to determine that it is governed by ERISA.

74.88.  ERISA requires that fiduciaries discharge their duties to a plan solely in the interest of the participants and their beneficiaries. ERISA § 1104, 29 U.S.C. § 1104(a). Further, fiduciaries

21

must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," and must discharge their duties to a plan in accordance with the documents and instruments governing the plan insofar as the plan is consistent with ERISA. *Id.*

75.89.  ERISA's fiduciary provision mandates that fiduciaries discharge their duties "in accordance with the documents and instruments governing the plan," but ***only if*** the plan's terms "are consistent" with ERISA's substantive requirements. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

76.90.  John/Jane Doe 1 breached this fiduciary duty by implementing Vesting Dates for the Plan that violated ERISA's vesting requirements and then applying the Cancellation Rule to deny the FAs who left Merrill Lynch their deferred compensation that should have been vested under ERISA.

77.91.  Section 409 of ERISA provides that any person who is a fiduciary of a plan and who breaches any responsibility, obligation, or duty imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from any breach, and to restore to the plan any profits the fiduciary made using the plan's assets. 29 U.S.C. § 1109. Section 409 of ERISA also provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate. *Id.*

78.92.  Section 502(a)(2) of ERISA permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under Section 409 of ERISA. 29 U.S.C. § 1132(a)(2).

79.93.  Section 502(a)(3) of ERISA permits a plan participant, beneficiary, or fiduciary to (A) enjoin any act or practice that violates any provision of Title I of ERISA or the terms of a plan;

or (B) obtain other appropriate equitable relief to (i) redress such violations, or (ii) enforce any provisions of Title I of ERISA or the terms of a plan. 29 U.S.C. § 1132(a)(3).

80.94. Plaintiff and the class seek the restoration of all deferred compensation that was illegally deemed forfeited by Defendants and a reformation of the plan to invest plan assets in the participants' chosen investments.

## PRAYER FOR RELIEF

For these reasons, Plaintiff prays that judgment be entered against Defendants and requests that the Court award the following relief:

A.      Certification of this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      A declaration that the Plan and the Cancellation Rule violate ERISA's vesting and anti-forfeiture rules;

C.      An injunction requiring Defendants to remedy their past violations of ERISA's vesting rules, including reversing all past forfeitures caused by the application of the Cancellation Rule;

D.      Surcharge;

E.      An "accounting" of all deferred compensation wrongfully withheld from Plaintiff and the Class;

F.      Disgorgement of the amounts that have been wrongfully withheld from Plaintiff and the Class;

G.      Disgorgement of the profits Defendants earned on the amounts wrongfully withheld from Plaintiff and the Class;

H.      A declaration that the amounts wrongfully withheld are in a constructive trust for the benefit of Plaintiff and the Class;

23

I.     An order granting Plaintiff and the Class an equitable lien on Defendants' assets equal to the amount that has been wrongfully withheld;

J.     Reformation of the FA Deferred Compensation Program;

K.     An Order directing Defendants to remedy their past violations of ERISA, including the re-instatement and payment of forfeited amounts and benefits of Plaintiff and the Class;

L.     An Order directing Defendants to pay all benefits improperly withheld under the Plan as reformed;

M.     An Order directing Defendants to invest the assets of Plaintiff and the class in the investments designated by the participants;

M.N.     Compensatory damages;

N.O.     Awarding, declaring, or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law that the Court deems proper;

O.P.     Attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), or other applicable doctrine;

P.Q.     Prejudgment and post-judgment interest; and

Q.R.     Any other relief the Court determines is just and proper.

24

Dated: ~~April 30~~January 6, 2024

Respectfully submitted,

/s/ John D. Hurst
John D. Hurst
N.C. Bar No. 37680
MOTLEY RICE LLC
50 Clay Street, Suite 1
Morgantown, WV 26501
Telephone: (304) 413-0456
Facsimile: (304) 413-0458
jhurst@motleyrice.com

Thomas R. Ajamie*
John S. "Jack" Edwards, Jr.*
Courtney D. Scobie*
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com
cscobie@ajamie.com

Mathew P. Jasinski*
Douglas P. Needham*
M. Zane Johnson*
MOTLEY RICE LLC
27 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
~~bnarwold@motleyrice.com~~
mjasinski@motleyrice.com
dneedham@motleyrice.com
zjohnson@motleyrice.com

Robert A. Izard*
Christopher M. Barrett*
IZARD, KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
cbarrett@ikrlaw.com

*Pro hac vice ~~motions forthcoming.~~

25