# Regulatory Notice  16-25

## Forum Selection Provisions

**Forum Selection Provisions Involving Customers, Associated Persons and Member Firms**

*July 2016*

**Notice Type**
- ▶ Guidance

**Suggested Routing**
- ▶ Compliance
- ▶ Legal
- ▶ Registered Representatives
- ▶ Senior Management

**Key Topics**
- ▶ Arbitration
- ▶ Dispute Resolution
- ▶ Forum Selection Provisions
- ▶ Predispute Agreements
- ▶ Predispute Arbitration Agreements

**Referenced Rules & Notices**
- ▶ FINRA Rule 2010
- ▶ FINRA Rule 2263
- ▶ FINRA Rule 2268
- ▶ FINRA Rule 12200
- ▶ FINRA Rule 12206
- ▶ FINRA Rule 12504
- ▶ FINRA Rule 12904
- ▶ FINRA Rule 13200
- ▶ FINRA Rule 13904
- ▶ IM-12000
- ▶ IM-13000
- ▶ SEA Section 29

### Summary

FINRA reminds member firms that customers have a right to request arbitration at FINRA's arbitration forum at any time and do not forfeit that right under FINRA rules by signing any agreement with a forum selection provision specifying another dispute resolution process or an arbitration venue other than the FINRA arbitration forum.

In addition, FINRA reminds member firms that FINRA rules do not permit member firms to require associated persons to waive their right to arbitration under FINRA's rules in a predispute agreement.

A member firm's failure to comply with FINRA's rules relating to predispute arbitration agreements with customers or predispute agreements with associated persons, or failure to submit a dispute to FINRA arbitration as required by FINRA's rules, would violate FINRA rules, and member firms may be subject to disciplinary action.

Questions concerning this *Notice* should be directed to:

▶ Victoria L. Crane, Associate General Counsel, Office of General Counsel, at (202) 728-8104 or victoria.crane@finra.org; or

▶ Margo A. Hassan, Associate Chief Counsel, Dispute Resolution, at (212) 858-4481 or margo.hassan@finra.org.

### Background & Discussion

#### FINRA Arbitration Forum

FINRA operates the largest securities dispute resolution forum in the United States to assist in the resolution of disputes involving customers, associated persons and member firms. FINRA's arbitration forum provides a fair, efficient and economical alternative to litigation, particularly for customers with small claims: cases are resolved more quickly; the overall costs are less; and customers may appear without counsel. All FINRA awards are


Case 3:24-cv-00440-KDB-DCK   Document 67-10   Filed 02/14/25

EXHIBIT
___J___

Financial Industry Regulatory Authority

1

publicly available in a searchable online database.[1] In addition, FINRA actively suspends member firms and associated persons that fail to pay arbitration awards or agreed-upon settlements, which incents payment of awards.[2]

FINRA's arbitration forum promotes investor protection and market integrity and undergirds FINRA's rules requiring firms to arbitrate with customers and associated persons at their request.

### Customer Disputes

*Predispute Arbitration Agreements; FINRA Rules 12200 and 2268*

FINRA Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes (Customer Code), titled "Arbitration Under an Arbitration Agreement or the Rules of FINRA," requires parties to arbitrate a dispute under the Customer Code in certain circumstances, as follows:

> Parties must arbitrate a dispute under the Code if:
>
> ▶ Arbitration under the Code is either:
>
>> (1) Required by a written agreement, or
>>
>> (2) Requested by the customer;
>
> ▶ The dispute is between a customer and a member or associated person of a member; and
>
> ▶ The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

This rule preserves a customer's ability to resolve disputes through FINRA arbitration, regardless of whether arbitration is required by a written agreement.

Many member firms require customers opening accounts to agree in writing to arbitrate disputes concerning the account.[3] To help ensure that customers understand these predispute arbitration agreements, FINRA Rule 2268 sets forth requirements that apply when firms use predispute arbitration agreements. These requirements include that any predispute arbitration clause must be highlighted and immediately preceded by a disclosure that the agreement contains a predispute arbitration clause and that by signing an arbitration agreement the parties agree that:

1. All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

Case 3:24-cv-00440-KDB-DCK    Document 67-10    Filed 02/14/25    Page 2 of 12

2. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

3. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

4. The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

5. The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.

6. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

7. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.[4]

In addition, FINRA Rule 2268(d) prohibits any predispute arbitration agreement from including any condition that: (1) limits or contradicts the rules of any self-regulatory organization (SRO),[5] or (2) limits the ability of a party to file any claim in arbitration.[6] These requirements make clear that predispute arbitration agreements must preserve the rights of the contracting parties under SRO rules and that arbitration must be a choice for the parties as a means of dispute resolution.

*Federal Appellate Court Decisions*

FINRA is aware of federal appellate court decisions that have held that forum selection clauses in agreements between member firms and customers supersede the requirements of FINRA Rule 12200, permitting member firms to require customers to arbitrate in a private arbitration forum or to litigate in state or federal court.[7] FINRA notes that the reasoning giving rise to these decisions is mixed and conflicts with FINRA's views regarding the application of its arbitration rules.

The holdings of these courts rest on the assumption that the duty to arbitrate under FINRA rules, or to arbitrate in FINRA's arbitral forum, is merely "contractual" and can be superseded or waived.[8] This assumption is inconsistent with the fact that the Exchange Act requires most broker-dealers to be members of FINRA and that FINRA's rules are approved by the Securities and Exchange Commission (SEC), binding on FINRA member firms and associated persons, and have the force of federal law.[9] FINRA rules are not mere contracts that member firms and associated persons can modify.

Furthermore, those courts that have upheld forum selection clauses have relied on authority that traces back to two appellate decisions in the 1990s that never actually decided whether a member firm may obtain and enforce a waiver of its obligation to arbitrate as set forth in FINRA Rules 12200 and 13200.[10] Subsequent court decisions repeatedly assumed that the issue had already been resolved and failed to recognize the mandatory nature of the FINRA rules' requirement that FINRA arbitration must be available upon the customer's request, even in the absence of an agreement to arbitrate.[11] As one federal appellate court has correctly indicated, Rule 2268(d)—which provides that member firms may not include terms in predispute arbitration agreements with customers that "limit[] or contradict[] the rules of" FINRA—is a clear statement that member firms cannot require customers to waive Rule 12200 in those agreements.[12]

In addition, these court decisions potentially remove an important investor protection provided by FINRA Rule 12200 by allowing member firms to deny investors the benefits of FINRA's arbitration program, which may, as a practical matter, foreclose customers from asserting their claims, particularly small claims. Litigation in a judicial forum can be complicated, protracted and costly, which may deter customers from bringing their claims before a court. By contrast, FINRA's arbitral forum provides customers with a simple, relatively fast and inexpensive way for their claims to be heard. As the SEC has commented on several occasions, FINRA's arbitration rules "provide[] its members, their employees, and their public customers with a very useful mechanism for resolving disputes."[13] Moreover, FINRA's arbitration rules ensure that its forum is fair and protective of investors. In approving these rules, the SEC found that they were "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, . . . and, in general, to protect investors and the public interest," in compliance with the requirements of Section 15A(b)(6) of the Exchange Act.[14]

Member firms' use of forum-selection clauses in customer agreements undermines this design and contravenes the important public policies embodied in FINRA's arbitration rules. Furthermore, the SEC's judgment that these rules serve the public interests delineated in the Exchange Act is entitled to significant weight.[15] Thus, preserving a customer's right to arbitration under FINRA Rule 12200 is necessary for the protection of investors and as a matter of public policy.

FINRA is concerned regarding the potential impact of this line of judicial decisions and that member firms are requiring customers to sign predispute arbitration agreements or otherwise enter into agreements that include exclusive forum selection provisions, with the potential effect of limiting the customer's ability to exercise his or her arbitration rights under FINRA Rule 12200 and in contravention of the requirements of FINRA Rule 2268. Thus, FINRA is issuing this *Notice* to remind member firms of the requirements of FINRA's arbitration rules and their obligations under these rules.

*Right to Arbitrate under FINRA Rules*

As discussed above, FINRA's rules require that predispute arbitration agreements not limit or contradict its rules, or limit the ability of a party to file a claim in arbitration. In addition, FINRA rules require FINRA arbitration if there is a written agreement requiring FINRA arbitration or if requested by the customer. FINRA recognizes that even with a predispute arbitration agreement, member firms and customers may elect, by mutual consent, to resolve their disputes in a forum other than at FINRA, such as at a private arbitration forum or by civil litigation, *after* a dispute has arisen between the parties. Similarly, if a written agreement to arbitrate at FINRA does not exist or if the customer does not request FINRA arbitration, the parties to a dispute may proceed to agree to resolve their disputes at a private arbitration forum or in civil litigation. A customer's right to request FINRA arbitration *at any time* under FINRA rules, however, cannot be superseded or disclaimed by any separate agreement between the customer and member firm.

FINRA rules set forth specific requirements relating to predispute arbitration agreements and when a customer dispute must be arbitrated at FINRA. They are not default rules that may be overridden by more specific or separate contractual terms without consequences under FINRA rules. Thus, any member firm's denial, limitation or attempt to deny or limit a customer's right to request FINRA arbitration, even if the customer seeks to exercise that right after having agreed to a forum selection clause specifying a venue other than a FINRA arbitration forum, would violate FINRA Rules 2268 and 12200. In addition, in FINRA's view, the failure to submit a dispute to arbitration under the Customer Code as required by the Code would violate FINRA Rule 2010 (Standards of Commercial Honor and Principles of Trade).[16]

Member firms with provisions in predispute arbitration agreements or any other customer agreements that do not comply with FINRA rules may be subject to disciplinary action.[17] Accordingly, member firms should promptly review their predispute arbitration agreements and any other customer agreements and ensure that the agreements comply with FINRA rules. In addition, a member firm cannot use an existing non-compliant agreement as a basis to deny a customer the right to FINRA arbitration at the customer's request, without violating FINRA rules.

*Recommended Language for Agreements with Customers*

If a member firm is using a forum selection provision in a predispute arbitration agreement or any other customer agreement that includes forums other than FINRA's arbitration forum, FINRA recommends that the member firm use a non-exclusive forum selection provision and include the following language in the provision:

> This agreement does not prohibit or restrict you from requesting arbitration of a dispute in the FINRA arbitration forum as specified in FINRA rules.

Case 3:24-cv-00440-KDB-DCK    Document 67-10    Filed 02/14/25    Page 5 of 12

### Associated Person Disputes

FINRA is also concerned that member firms are including in predispute agreements with associated persons provisions that have the effect of waiving the associated person's right to obtain FINRA arbitration of any disputes arising out of the agreement.[18] For example, these provisions might require associated persons to resolve employment, business, commercial, or competition disputes at a private arbitration forum or in civil litigation. In FINRA's view, FINRA rules do not allow for the waiver of the Industry Code requirement to arbitrate disputes at FINRA in advance of a dispute.

FINRA Rule 13200 of the Code of Arbitration Procedure for Industry Disputes (Industry Code), titled "Required Arbitration," provides that member firms and associated persons must arbitrate certain of their disputes, as follows:

> (a) Generally
>
> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> ▶ Members;
>
> ▶ Members and Associated Persons; or
>
> ▶ Associated Persons.

FINRA is aware of a recent Second Circuit decision in which the court stated that even though FINRA Rule 13200 by its terms requires arbitration in a FINRA forum, that requirement can be waived in a predispute agreement to arbitrate in a private, non-FINRA arbitral forum.[19] The court pointed to several cases in which it has held that an SRO's arbitration provisions are default rules which may be overridden by more specific contract terms.[20] In addition, the court stated that although FINRA Rule 13200 states that employee-related disputes must be arbitrated "under the Code," it does not address the issue of whether arbitration in a FINRA forum may be waived before a dispute arises. The court noted that "[h]ad FINRA wished to clearly state that Rule 13200 cannot be waived, it could have done so. In the customer-member context, FINRA requires that a predispute arbitration agreement not include any condition that 'limits or contradicts the rules of any self-regulatory organization.' Rule 2268(d)(1)."[21]

As stated above in connection with customer disputes, FINRA's arbitration rules are not default rules. FINRA Rule 13200 specifically states that industry disputes must be arbitrated at FINRA, except as otherwise provided in the Industry Code. Thus, any attempt to override this requirement of FINRA Rule 13200 in a predispute agreement by more specific contractual terms would violate FINRA rules.

Moreover, the absence of a provision similar to FINRA Rule 2268(d)(1) in connection with predispute agreements under the Industry Code does not lead to the result that a member firm can require an associated person to waive the requirements of FINRA Rule 13200. Under the Industry Code, FINRA IM-13000 states that "[i]t may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2010 for a member to require an associated person to waive the arbitration of disputes contrary to the provisions of the Code of Arbitration Procedure," or to "fail to submit a dispute for arbitration under the Code as required by the Code."[22] Through IM-13000, FINRA has made clear to member firms and associated persons that they have the mandatory and non-waivable duty to arbitrate disputes, and (with certain exceptions) to arbitrate them before FINRA.[23]

Thus, FINRA considers actions by member firms that require associated persons to waive their right under the Industry Code to arbitration of disputes at FINRA in a predispute agreement as a violation of FINRA Rule 13200 and as conduct inconsistent with just and equitable principles of trade and a violation of FINRA Rule 2010 (Standards of Commercial Honor and Principles of Trade).[24]

FINRA notes that it has a statutory obligation under the Exchange Act to "enforce compliance by its members and persons associated with its members, with the provisions" of, among other things, the Exchange Act and FINRA's rules, which include the requirement to arbitrate before FINRA.[25] Furthermore, FINRA may sanction its members or associated persons for violating any of its rules by "expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction."[26]

Member firms with provisions in predispute agreements that do not comply with FINRA rules may be subject to disciplinary action.[27] Accordingly, member firms should promptly review their predispute agreements to ensure that the agreements comply with FINRA rules. In addition, a member firm cannot use an existing non-compliant agreement as a basis to deny an associated person the right to FINRA arbitration as specified in FINRA rules, without violating FINRA rules.

*Recommended Language for Predispute Agreements with Associated Persons*

If a member firm is using a forum selection provision in a predispute agreement with an associated person that includes forums other than FINRA's arbitration forum, FINRA recommends that the firm use a non-exclusive forum selection provision and include the following language in the provision:

> This agreement does not prohibit or restrict you from filing an arbitration claim in the FINRA arbitration forum as specified in FINRA rules.

Case 3:24-cv-00440-KDB-DCK   Document 67-10   Filed 02/14/25   Page 7 of 12

## Endnotes

1. *See* http://finraawardsonline.finra.org.

2. Unless a party files a motion to vacate or modify an award, awards must be paid within 30 days of the award date. *See* FINRA Rules 12904(j) and 13904(j). If the award is not paid within 30 days, interest will accrue at the legal rate or at the rate specified by the arbitrators in the award. In addition, pursuant to FINRA Rule 9554, FINRA may initiate suspension proceedings for failure to comply with an award. FINRA notes that often the threat of suspension results in payment or settlement of an award by the member firm or associated person.

3. FINRA notes that between the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427 (1953), overruled by *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477 (1989), until the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), the courts would not enforce predispute arbitration agreements relating to federal securities law claims. Instead, the arbitration of claims was strictly voluntary. In addition, until its rescission in 1987, Rule 15c2-2(a) under the Securities Exchange Act of 1934 (Exchange Act) provided that: "It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer." The SEC noted that it adopted Rule 15c2-2 "[b]ecause years of informal discussions have failed to correct" the practice of agreements to arbitrate future disputes between broker-dealers and their public customers arising under the federal securities laws. *See* Securities Exchange Act Release No. 20397 (November 18, 1983), 48 FR 53404 (November 28, 1983); *see also* Securities Exchange Act Release No. 25034 (October 15, 1987), 52 FR 39216 (October 21, 1987) (Rescission of Rule Governing Use of Predispute Arbitration Clauses in Broker-Dealer Customer Agreements). In *McMahon*, the Supreme Court held that predispute arbitration agreements are enforceable as to claims brought under the Exchange Act. As a result, firms can compel arbitration of customer claims through inclusion of predispute arbitration provisions in their agreements with customers.

4. FINRA Rule 2268(a).

5. This provision is consistent with Section 29(a) of the Exchange Act.

6. *See* FINRA Rule 2268(d)(1) and (2). FINRA Rule 2268(d) also prohibits a predispute arbitration agreement from including any condition that limits the ability of a party to file a claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement, or limits the ability of arbitrators to make an award. *See* FINRA Rule 2268(d)(3) and (4).

7. *See, e.g., Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth*., 764 F.3d 210 (2d Cir. 2014) (holding that a forum selection clause requiring "all actions and proceedings" to be brought in federal court supersedes the agreement under FINRA Rule 12200 to arbitrate with customers); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) (majority holding that the forum selection clauses in broker-dealer agreements between the parties superseded the "default obligation" to arbitrate under FINRA rules and that by agreeing to these clauses, the customer

disclaimed any right it might otherwise have had to a FINRA arbitration forum); and *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011) (concluding that subsequent adjudication and merger clauses specifically preclude arbitration and, by operation of law, displace the previous arbitration clause because "[b]oth provisions are all-inclusive, both mandatory, and neither admits the possibility of the other"). *But cf. UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013) (holding that the forum selection clause did not have the effect of superseding or waiving the customer's right to arbitration). Although the court in *Carilion Clinic* did not conclude that the forum selection clause superseded or waived the customer's right to arbitration, the court determined that the obligation to arbitrate under FINRA Rule 12200 can be superseded and displaced by a more specific agreement between the parties. *See Carilion Clinic*, 706 F.3d at 328.

8. *See, e.g., Kidder, Peabody & Co. v. Zinsmeyer Trusts Partnership*, 41 F.3d 861, 863-64 (2d Cir. 1994) (construing the inclusion in the "NASD rules and regulations" of a "duty to submit to arbitration upon a customer's demand" as an "agreement in writing," or contract); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 113 (2d Cir. 1990) ("[T]he rules of a securities exchange are contractual in nature.").

9. *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005) ("[W]e hold that the NASD arbitration procedures in dispute here," which the SEC approved, "have preemptive force over conflicting state law.").

10. These two decisions are *Kidder, Peabody & Co. v. Zinsmeyer Trusts Partnership*, 41 F.3d 861 (2d Cir. 1994), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir. 1990). In *Kidder*, the Second Circuit expressly stated that it did "not consider the broader issue of whether a customer can waive entirely the option to arbitrate conferred by the broker's exchange membership obligations," and that its prior decision in *Georgiadis* also did not address that question. 41 F.3d at 864. *Georgiadis* addressed only whether the parties could agree to an arbitral forum different from the forum specified in an exchange's constitution. 903 F.2d at 112. The court thus had no occasion to determine whether a customer's right to arbitration conferred by an SRO's arbitration rules could validly be waived by a pre-dispute agreement.

11. *See, e.g., Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.),* 672 F.3d 113, 132-33 (2d Cir. 2011) (relying on *Kidder, Peabody* to support holding that FINRA member's obligation to arbitrate could be superseded by later agreement); *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 328 (4th Cir. 2013) (relying on *American Express* to conclude "that the obligation to arbitrate under FINRA Rule 12200 can be superseded and displaced by a more specific agreement between the parties"); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014) (relying on *Carilion Clinic* to conclude that "a contract between the parties can supersede the default obligation to arbitrate under the FINRA Rules"). *See also Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249, 254-56 (2d Cir. 2016) (relying on *American Express, Georgiadis, Kidder, Peabody*, and their progeny to conclude that "an SRO's arbitration provisions are default rules which may be overridden by more specific contractual terms").

Case 3:24-cv-00440-KDB-DCK   Document 67-10   Filed 02/14/25   Page 9 of 12

12. *Tracy*, 812 F.3d at 255 n.12 (quoting Rule 2268(d)(1)).

13. *Daniel Joseph Avant*, Securities Exchange Act Release No. 36423, 52 S.E.C. 442, 443 (1995); *see also, e.g., Jerry L. Marcus*, Securities Exchange Act Release No. 15755, 47 S.E.C. 72, 73 (1979) (same); *Josephthal & Co.*, Complaint No. CAF000015, 2002 NASD Discip. LEXIS 8, at 17 (NASD NAC May 6, 2002) (NASD "arbitrators fulfill a critical role in a highly beneficial program.").

14. 15 U.S.C. § 78*o*-3(b)(6); *see* Securities Exchange Act Release No. 58643 (September 25, 2008), 73 FR 57174 (October 1, 2008) (Order Approving File Nos. SR-FINRA-2008-021, SR-FINRA-2008-022, SR-FINRA-2008-026, SR-FINRA-2008-028, and SR-FINRA-2008-029); *see also* Securities Exchange Act Release No. 16860 (May 30, 1980), 45 FR 39608 (June 11, 1980) (Order Approving File No. SR-NASD-79-11) (approving NASD's revised arbitration rules and noting that "[a] primary purpose of this proposal is to provide investors and members of the NASD with a simple and inexpensive procedure for the resolution of their controversies").

15. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (explaining that where statute is silent or ambiguous on a subject, courts afford deference to agency's interpretation because "the responsibilities for assessing the wisdom of . . . policy choices and resolving the struggle between competing views of the public interest are not judicial ones, . . . and because of the agency's greater familiarity with the ever-changing facts and circumstances surrounding the subjects regulated" (internal quotation marks and citation omitted)); *cf. SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) ("The job of determining whether the proposed SEC consent decree best serves the public interest, however, rests squarely with the SEC, and its decision merits significant deference[.]").

16. *See* FINRA IM-12000 (Failure to Act Under Provisions of Code of Arbitration Procedure for Customer Disputes). FINRA IM-12000 provides: "It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2010 for a member or a person associated with a member to: (a) fail to submit a dispute to arbitration under the Code as required by the Code...."

17. For example, in 2014, FINRA's Board of Governors issued a decision finding that a firm violated FINRA rules when it inserted provisions in predispute arbitration agreements that prevented customers from bringing or participating in judicial class actions and prevented FINRA arbitrators from consolidating more than one party's claims. *See Dep't of Enforcement v. Charles Schwab & Co.*, No. 2011029760201, 2014 FINRA Discip. LEXIS 5 (FINRA Bd. of Governors Apr. 24, 2014).

18. Such agreements include predispute clauses in employment agreements. FINRA's Form U4 (Uniform Application for Securities Industry Registration or Transfer) requires associated persons to sign the Form U4 as a condition of employment in the securities industry. The Form U4 requires associated persons to submit to arbitration any claim that is eligible for arbitration under the rules of the SRO with which he or she registers. Specifically, the Form U4 provides: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction." Form U4, Section 15A, Item 5 (Individual/Applicant's Acknowledgement and

Case 3:24-cv-00440-KDB-DCK   Document 67-10   Filed 02/14/25   Page 10 of 12

Consent). *See also* FINRA Rule 2263 (Arbitration Disclosure to Associated Persons Signing or Acknowledging Form U4).

19. *See Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249 (2d Cir. 2016).

20. *See Tracy*, 812 F.3d at 255 (discussing, among other cases, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir. 1990), *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014) and *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174 (2d Cir. 2015)).

21. *See Tracy*, 812 F.3d at 256, n.12. Notably, in contrast, the court stated "[i]t is true . . . that a pre-dispute complete waiver of arbitration has been held to be unenforceable in the employment context." In support of this statement, the court cited to its decision in *Thomas James Associates v. Jameson*, 102 F.3d 60 (2d Cir. 1996). The court stated that in *Jameson*, it held the arbitration waiver unenforceable based on the public policy favoring arbitration of disputes. The court, however, distinguished its decision in *Jameson* from its decision in *Tracy* stating that "[r]ather than waive the ability to arbitrate, Employees merely waive the right to arbitrate in a FINRA forum." (emphasis omitted). *Tracy*, 812 F.3d at 256.

22. FINRA IM-13000 (Failure to Act Under Provisions of Code of Arbitration Procedure for Industry Disputes).

23. In *Tracy*, the court also referenced the FINRA Board of Governors decision in *Schwab, see supra* note 17, in support of its position that member firms may prohibit employees from arbitrating their disputes with the member firm in FINRA's dispute resolution forum. Specifically, the court cited to the Board's statement that "there are no restrictions upon firms regarding the content of predispute arbitration agreements with employees." *See Tracy*, 812 F.3d at 256, n.14. Although *Schwab* centered on predispute agreements with customers, the Board's decision included language concerning employment disputes. Specifically, the Board disagreed with Schwab's argument that several court cases involving class action waivers inserted in employment agreements between firms and associated persons should direct the outcome of the Enforcement action concerning the customer agreements. The Board distinguished the cases by stating that: "The cases upon which Schwab relies analyze Rule 13204 of the Industry Code. While Rule 13204(a)'s text is identical to Rule 12204 of the Customer Code, there are no restrictions upon firms regarding the content of predispute arbitration agreements with employees, unlike the strict parameters set forth by FINRA Rule 2268 for predispute agreements with customers. In comparison, FINRA Rule 2268 expressly prohibits provisions that contradict SRO rules or which limit the ability of customers to file the kind of claims that FINRA arbitration rules determine can be brought in court. This difference makes the employment agreement cases inapplicable to this dispute." FINRA views these statements in *Schwab* as dicta and notes that the discussion in this *Notice* regarding the application of FINRA's arbitration rules supersedes these statements in *Schwab*. In addition, as discussed in this *Notice*, the absence of a provision similar to Rule 2268(d)(1) for predispute agreements under the Industry Code does not mean that a member firm may prohibit employees from arbitrating their disputes with the member firm in FINRA's dispute resolution forum as part of such an agreement. Such a prohibition would be impermissible under FINRA's arbitration rules and IM-13000.

Case 3:24-cv-00440-KDB-DCK   Document 67-10   Filed 02/14/25   Page 11 of 12

24. *See* FINRA IM-13000.

25. 15 U.S.C. § 78*o*-3(b)(2).

26. *Id*. § 78*o*-3(b)(7).

27. For example, in 2015, a firm consented to the imposition of a censure and a $150,000 fine for filing actions against associated persons to recover pre-paid securities commissions in state courts, instead of submitting the disputes for resolution in FINRA's arbitration forum as required by the Industry Code. *See AXA Advisors, LLC*, FINRA AWC No. 2012034518801 (February 26, 2015). Similarly, in 2012, a firm consented to the imposition of a censure and a fine of $1,000,000 for structuring its "Advisor Transition Program" to circumvent the requirement to arbitrate disputes under the Industry Code. *See* Merrill Lynch, Pierce, Fenner & Smith, Inc., FINRA AWC No. 2009020188101 (January 25, 2012).

©2016. FINRA. All rights reserved. Regulatory Notices attempt to present information to readers in a format that is easily understandable. However, please be aware that, in case of any misunderstanding, the rule language prevails.