# Morgan Lewis

**Anahi Cruz**
Associate
+1.213.612.2500
Anahi.Cruz@morganlewis.com

December 17, 2024

**VIA DR PORTAL**

Shubhangi Nangunoori
Case Administrator
FINRA Dispute Resolution Services
300 South Grand Avenue
Suite 1700
Los Angeles, California 90071

Re: <u>Jeffrey A. DeWees, et al., vs. Merrill Lynch Pierce Fenner & Smith Inc., Case No. 24-02157</u>

Dear Ms. Nangunoori:

We write on behalf of Respondent Merrill, Lynch, Pierce, Fenner & Smith, Incorporated (CRD No. 7691) ("Merrill Lynch") with respect to the above-captioned matter. On December 2, 2024, Merrill Lynch sought a temporary stay in this matter until class certification can be resolved in a parallel federal court action, *Milligan v. Bank of Am. Corp., et al.*, No. 3:24-cv-00440 (W.D.N.C.) ("*Milligan*"). *Milligan* was filed **before** any of the Claimants here mirrored the allegations from the *Milligan* complaint into a Statement of Claim filed in FINRA. As of now, 32 Claimants, across three different actions (including this one), represented by the same counsel, assert the same claims that were already pending on their behalf in *Milligan* when they initiated these disputes.

Claimants filed their opposition on December 12, 2024 ("Opposition"). Therein, Claimants fail to refute the Motion to Stay in any way and instead provide a faulty "notice" that they are opting out of the *Milligan* action. Claimants further contend that FINRA should not allow the stay because a Motion to Stay is not contemplated under FINRA rules. Not so. By focusing on these misplaced arguments, Claimant misses the larger point of Merrill Lynch's motion. As a matter of prudence and efficiency, Merrill Lynch merely asks for a temporary pause in these FINRA proceedings so that the *Milligan* court can first determine whether that case will proceed as a mandatory class action under Rule 23(b)(1), as the plaintiff in that case seeks. If it does, class members—including Claimants— will *not* have the ability to "opt out" of that class, whether they file a notice in FINRA or not. Indeed, that is the very purpose of Rule 23(b)(1), which protects both defendants and plaintiffs in cases appropriate for certification under that Rule. Thus, if such a class is certified, it would mean Merrill Lynch is entitled to the protection Rule 23(b)(1) provides, which includes resolving the central legal question here—whether the WealthChoice Contingent Award Plan is governed by ERISA—in a single forum, with the outcome binding on all Plan participants equally.

Accordingly, any "notice" Claimants purport to provide stating that they "will not participate" in the *Milligan* class or any recovery that may result is premature in this unique context. Claimants simply

Morgan, Lewis & Bockius LLP

300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
United States
T +1.213.612.2500
F +1.213.612.2501

EXHIBIT
L

cannot make this representation at this time, because they do not know if the *Milligan* court will even allow a right to opt-out. And, given the nature of the relief both Mr. Milligan and Claimants seek—including declaratory and injunctive relief—they also cannot disclaim their "participat[ion]" in this relief. This is why, to avoid interfering with the federal court in *Milligan* and to resolve these claims most efficiently, it makes sense to simply pause this matter in FINRA so the *Milligan* court can first address certification. That is all Merrill Lynch asks. And, if the *Milligan* court declines to certify the class, or certifies a class that permits Claimants to opt out, then Claimants will then be free to pursue their claims in FINRA.

### I. Because *Milligan* Seeks Certification of a Mandatory Class Under Rule 23(b)(1), Claimants' Purported Notice Under FINRA Rule 13204 Is Not Yet Effective.

Merrill Lynch's motion asks only for a temporary pause of these proceedings until the *Milligan* court can decide whether that case will proceed as a **mandatory** class action under Rule 23(b)(1). If it does, this means *Milligan* class members—including Claimants—**cannot opt-out**. *See* Mot. at 2, 4-5. And, therefore, to allow these arbitrations to proceed before the *Milligan* court can make this determination will not only interfere with the federal court proceeding, but also could result in the parties and this Panel's efforts in this matter being unnecessary and potentially wasteful.

As the Supreme Court put it, "[c]lasses certified under [Rule 23(b)(1)] share the most traditional justifications for class treatment—that individual adjudications would be *impossible or unworkable*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011) (emphasis added). Claimants overlook the purposes of Rule 23(b)(1), which is designed to protect *both* plaintiffs *and* defendants in these types of class actions. Specifically, Rule 23(b)(1) **requires** a mandatory class where a defendant would be trapped in the "inescapable legal quagmire of not being able to comply with one [] judgment without violating the terms of another." 2 Newberg & Rubenstein on Class Actions, § 4:7 (6th ed.). Courts routinely recognize that the purpose of Rule 23(b)(1)(A) is "to protect defendants," while Rule 23(b)(1)(B) is primarily to protect plaintiffs. *See, e.g.*, *Van Gemert v. Boeing Co.*, 259 F. Supp. 125, 130 (S.D.N.Y. 1966). But, "clearly all litigants as well as the courts benefit from consistency in the adjudication of claims of individual class members." *Ingles v. City of New York*, 2003 WL 402565, at *7 (S.D.N.Y. Feb. 20, 2003). Indeed, the whole point of a Rule 23(b)(1) class is that allowing opt-outs would create the very concerns that warrant class treatment under that Rule in the first place.

Here, if a Rule 23(b)(1) class is certified, it would mean Merrill Lynch is entitled to the protection Rule 23(b)(1) provides, which includes resolving the central legal question here—whether the WealthChoice Plan and the "Equity Plan" ("Plans") are governed by ERISA—in a single forum, with the outcome binding on *all* Plan participants equally, including Claimants. In fact, not once does the Opposition dispute that if the court certifies *Milligan* under Rule 23(b)(1), they in fact would be members of that class and, therefore, also would be bound by the outcome of the court's judgment in that case (and its *res judicata* effect).

Likewise, according to Mr. Milligan and Claimants, the relief they seek cannot be resolved differently, especially insofar as they demand the Plans be declared "ERISA Plans" and an order requiring Merrill Lynch to reform terms of the Plans and then pay Claimants' benefits pursuant to ERISA. Indeed, this is the very reason Mr. Milligan purports to seek a Rule 23(b)(1) class. *See Milligan* Compl. ¶¶ 56, 58. Right or wrong, it is the nature of this central claim that differentiates this scenario. If Claimants and Mr. Milligan are right, this is precisely why a Rule 23(b)(1) class exists.

Shubhangi Nangunoori
December 2, 2024
Page 3

This is why Claimants may not ignore the established law surrounding Rule 23(b)(1) by simply asserting that they "will not participate" in "any recovery that may result from" *Milligan*, as their Opposition declares. If Mr. Milligan is successful in obtaining the relief he seeks (which also mirrors the relief Claimants seek in FINRA), then he also alleges that such relief *must* apply across the board to the Plan and all participants. Most notably, Mr. Milligan seeks an order requiring the reformation of the Plan to comply with ERISA and, once reformed, the payment of benefits pursuant to the as-reformed Plan. Claimants seek the same. *See* SOC ¶¶ 56-60. They cannot now represent that they "will not participate" in such relief, when they *must be* bound by such an order. And, if a Rule 23(b)(1) class is certified, they also will be bound by the *res judicata* effect of such a ruling—whether they filed a "notice" in FINRA or not. Indeed, Claimants' Opposition does not even dispute that if *Milligan* is ultimately certified under Rule 23(b)(1), they **will be** members of that class and they **will be** bound by the outcome in that case.

Simply put, Claimants' notices are ineffective at this stage. They have no basis for asserting that they "will not" participate in the *Milligan* class, before that court has even decided certification. Merrill Lynch is not trying to force Claimants out of FINRA or impede anyone's right to arbitrate. All Merrill Lynch is asking is that the FINRA matters be paused for now, so the *Milligan* court can decide whether these Claimants even have the *option* of litigating separately. To proceed otherwise would be inefficient, time-consuming, and potentially harmful to Merrill Lynch. If it ultimately prevails in *Milligan*, and a Rule 23(b)(1) class was certified, then it is entitled to have that outcome apply equally to all class members. If, on the other hand, the *Milligan* court declines to certify a Rule 23(b)(1) class, Claimants and anyone else who prefers to arbitrate may do so.

### II. Claimants' Opposition Misrepresents and Misstates FINRA Rules Through its Purported "Notice."

FINRA Rule 13204 expressly prohibits arbitrating class and collective action claims. FINRA Rules are structured this way for a reason, as they protect the ability of associated persons and members alike to resolve class action claims in courts, which have "developed the procedures and expertise for managing [them]." *Id.* (quoting 59 FR 22032-01, 22033, 1994 WL 150066 (Apr. 28, 1994)). Mr. Milligan filed his complaint, and then these 32 Claimants (and counting) filed copycat claims in FINRA to circumvent the class action. So, the only relevant question now is how to proceed most efficiently and appropriately, given that Merrill Lynch faces identical claims in multiple forums.

Rule 13204 also gives an associated person two options with respect to class action claims. First, the associated person can pursue such claims in court—either directly (as Mr. Milligan did), or by simply remaining a member of a "certified **or putative** class action." Rule 13204(a)(4) (emphasis added) (prohibiting compelling arbitration against any member of a "certified or putative class action"). Second, an associated person who is a member of a certified or putative class may bring such claims in FINRA, but only *after* providing a valid notice that they have opted out and "will not participate in the class action or in any recovery that may result" therefrom. Rule 13204(a)(2).

Claimants here attempt to take the second route, by baldly stating in their Opposition that "Claimants hereby provide notice." Specifically, Claimants' counsel makes a boilerplate statement "that Claimants will not participate" in *Milligan*, "or in any recovery that may result in the class action," collectively on behalf of all seven Claimants in this case, purporting to disclaim each of these Claimant's interests in the *Milligan* class action. Putting aside whether a single, combined "notice" is valid for each individual Claimant, or whether a statement buried within an opposition letter is a valid notice, they cannot make this representation to FINRA at this time, because they *do not know* if they

Shubhangi Nangunoori
December 2, 2024
Page 4

"will" or "will not" even have the choice to "participate" in the class in *Milligan*. That is Merrill Lynch's whole point—and why simply awaiting the *Milligan* court's determination of class certification would be more appropriate and efficient.

The entirety of Claimants' Opposition rests on the belief that they have "met the requirements of FINRA Rule 13204(a)(2)." In fact, they do not even try to address a single other argument, stating that "Claimants will not be addressing any" of the issues Merrill Lynch put forward in their Motion. However, this in no way confronts the basis for Merrill Lynch's request in its Motion or the reasons why the relief it seeks would be more efficient and practical. Merrill Lynch is not contending that this Panel is *required* or forced by Rule 13204 to stay this matter, but rather respectfully submits that doing so is the fairest and most efficient approach under the circumstances. And those circumstances include the fact that Claimants' purported "notice" is premature in this context, because they cannot yet disclaim their participation in the *Milligan* class action or in the relief the plaintiff seeks in that case. This is why, to avoid interfering with the court in *Milligan* and to resolve these claims most efficiently, it makes sense to pause this matter so the *Milligan* court can address certification.

### III.     FINRA Rules Do Not Preclude Motions To Stay.

Claimants also assert that Merrill Lynch's Motion to Stay is improper under FINRA Rules because it is not "contemplate[d] or permit[ted] . . . at this stage of the proceedings." However, Claimants do not cite any basis for this assertion. To the contrary, the FINRA Rules do not categorically prohibit motions to stay either, nor do they impose any rigid timing restrictions that would preclude such motions at this stage. Arbitrators in FINRA proceedings have inherent discretion to manage the arbitration process, including ruling on motions like this one when appropriate under the circumstances—as here, where there is a risk of inconsistent decisions. A motion to stay is not inconsistent with the framework and purpose of FINRA arbitrations and serves to safeguard procedural efficiency and fairness—two of the core principals underlying FINRA's arbitration system. Accordingly, Respondent respectfully requests that this stay be granted.

*     *     *     *

To reiterate, Merrill Lynch is not seeking to preclude anyone from arbitrating in FINRA or to force any Claimant into federal court. Rather, as a matter of prudence and efficiency, Merrill Lynch only asks for a temporary pause in these FINRA proceedings so that the *Milligan* court can first determine whether that case will proceed as a mandatory class action under Rule 23(b)(1). If it does, class members—including Claimants—will *not have* the ability to "opt out" of that class, whether they file a notice in FINRA or not. Claimants' Opposition rests on only this argument. Because Merrill Lynch has proven why that argument fails, that a Motion to Stay is not precluded under FINRA Rules, and Claimants have left Merrill Lynch's arguments outlined in its December 2, 2024 correspondence wholly unaddressed, Merrill Lynch respectfully requests that the Panel grant its motion and temporarily stay this matter.

Thank you for your attention to this request, and please let us know if we can provide any additional information to aid your review.

Shubhangi Nangunoori
December 2, 2024
Page 5

Sincerely,

*/s/ Anahi Cruz*

Anahi Cruz


cc: All Counsel of Record