# Morgan Lewis

**Anahi Cruz**
Associate
+1.213.612.7336
anahi.cruz@morganlewis.com

January 22, 2024

VIA DR PORTAL

Steven H. Gentry
Edward James Weiss
Marc Weitz
c/o Shubhangi Nanhunoori, Case Administrator
FINRA Dispute Resolution Services
300 South Grand Avenue
Suite 1700
Los Angeles, California 90071

Re: **Notice to Panel of Motion to Stay** – Dewees et. al. v. Merrill, Lynch, Pierce, Fenner & Smith, Incorporated, Case No. 24-02157

We write on behalf of Respondent Merrill, Lynch, Pierce, Fenner & Smith, Incorporated (CRD No. 7691) ("Merrill Lynch" or "Respondent") to alert the Panel to Merrill Lynch's Motion to Stay that was filed prior to the arbitrator appointments in this case. We request that the Initial Pre-Hearing Conference ("IPHC") scheduled for February 13, 2025, be adjourned until the Panel decides Merrill Lynch's pending Motion.

By way of background, on December 2, 2024, Merrill Lynch submitted a Combined Answer and Motion to Stay in this matter pursuant to FINRA Rules 13203 and 13204. *See* Exhibit A (Combined Answer and Motion to Stay). In the Motion, we requested that the Panel pause in this case from proceeding, at least temporarily, in the FINRA forum pending a ruling on the motion for class certification in a first-filed class action in federal court, *Milligan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.*, No. 3:24-cv-00440 (W.D.N.C.). Therein, we also requested a stay of <u>all</u> case deadlines. The Motion was then referred to the arbitrators who would ultimately be appointed in this case. (*See* Exhibit B). We ask that the Panel decide the Motion to Stay prior to holding the IPHC. An adjournment of the IPHC will promote efficiency and avoid unnecessary expenditure of resources by both parties and the Panel, as an IPHC would be unnecessary at this time if the Panel grants a stay.

We appreciate your attention to this matter, and please let us know if we can provide any additional information regarding this request.

**Morgan, Lewis & Bockius LLP**

600 Brickell Avenue
Suite 1600
Miami, FL 33131-3075
United States
T +1.305.415.3000
F +1.305.415.3001

EXHIBIT
M

January 22, 2024
Page 2

Respectfully submitted,

*/s/ Anahi Cruz*

Anahi Cruz
Enclosures Exhibits A and B
cc: All Counsel of Record

# EXHIBIT A

# Morgan Lewis

**Anahi Cruz**
Associate
+1.213.612.2500
Anahi.Cruz@morganlewis.com

December 2, 2024

**VIA DR PORTAL**

Shubhangi Nangunoori
Case Administrator
FINRA Dispute Resolution Services
300 South Grand Avenue
Suite 1700
Los Angeles, California 90071

Re: <u>Jeffrey A. DeWees, et al., vs. Merrill Lynch Pierce Fenner & Smith Inc., Case No. 24-02157</u>

Dear Ms. Nangunoori:

We write on behalf of Respondent Merrill, Lynch, Pierce, Fenner & Smith, Incorporated (CRD No. 7691) ("Merrill Lynch") with respect to the above-captioned matter. As outlined below, Merrill Lynch respectfully requests, pursuant to Rules 13203 and 13204, that this case be paused from proceeding, at least temporarily, in the FINRA forum. This relief is warranted in these unique circumstances because—as the Statement of Claim concedes—this arbitration is a copycat of claims that have been pending for months against Merrill Lynch in a first-filed class action in federal court, *Milligan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.*, No. 3:24-cv-00440 (W.D.N.C.). A temporary stay of this arbitration will not foreclose Claimants from pursuing their claims. Rather, Merrill Lynch asks only that these proceedings be held in abeyance to allow the *Milligan* court the opportunity to determine whether these Claimants are part of a mandatory class action from which they cannot opt out.

Merrill Lynch further requests that all existing response deadlines in this matter be stayed temporarily, pending the outcome of Merrill Lynch's request herein. Specifically, Merrill Lynch requests that this Motion be decided before Respondent is required to answer the Statement of Claim. To the extent Merrill Lynch must respond to Claimants' Statement of Claim, Merrill Lynch denies all claims. Merrill Lynch further maintains that neither the WealthChoice Contingent Award Plan nor the equity-based awards issued through restricted stock units ("RSUs") (together, the "Plans") qualify as "employee benefit pension plans" under the Employee Retirement Income Security Act ("ERISA") and that Claimants' ancillary claims either fail to state a claim, are barred by the applicable statute of limitations, and/or are preempted by ERISA (should Claimants prevail in establishing that either Plan is subject to ERISA in the first place). Further, if the Motion to Stay is denied or this matter otherwise proceeds, Merrill Lynch reserves its right to file a full and robust answer at the appropriate time.

Additionally, the Statement of Claim filed in this matter is substantively identical to Statements of Claims filed by the same counsel in at least two other multi-claimant matters filed in FINRA: *Ruben,*

Morgan, Lewis & Bockius LLP

300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
United States
☎ +1.213.612.2500
📠 +1.213.612.2501

*et al. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 24-02400, and *Foltz, et al. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 24-02310. Like these other matters, Claimants here assert various claims under ERISA based on the same factual allegations underpinning the first-filed class action in *Milligan*. *See* Ex. A (*Ruben* and *Foltz* SOCs). Combined, these three matters now include 32 Claimants asserting identical claims (and seeking identical relief) to those already being pursued on their behalf in the *Milligan* class action.

For the reasons outlined in below, we respectfully request that this matter be paused from proceeding, at least temporarily, in the FINRA forum. We appreciate your attention to this matter and would be happy to meet with you and counsel for Claimants to discuss Merrill Lynch's request.

### I. Background: The *Milligan* Federal Court Litigation and Plaintiff's Request to Certify a Mandatory Class Under Federal Rule of Civil Procedure 23(b)(1) and (2).

On April 30, 2024, a former Merrill Lynch financial advisor ("FA"), Kelly Milligan, filed a class action complaint in the U.S. District Court for the Western District of North Carolina against Merrill Lynch and its parent company, Bank of America Corp. Ex. B, *Milligan* Compl. Like Claimants, Mr. Milligan alleges that the WealthChoice Plan is actually an "employee pension benefit plan" under ERISA, 29 U.S.C. § 1002(2)(A)(ii). He further claims that if the Plan is a "pension plan" governed by ERISA, certain of its terms are unlawful under that statute's vesting, anti-forfeiture, and other provisions.

Based on this core allegation, Mr. Milligan seeks, on behalf of a putative class, several forms of relief under ERISA. This includes asking the District Court to award declaratory and equitable relief, including (1) a declaration that the Plan "violate[s] ERISA's vesting and anti-forfeiture rules," Ex. B ¶ 64(a); (2) an injunction "requiring Defendants to remedy their past violations of ERISA's vesting rules, including reversing all past forfeitures [allegedly] caused by" the purported ERISA violations, *id.* ¶ 64(b); and (3) an "accounting," "surcharge," disgorgement, and entry of an "equitable lien," among other equitable relief, *id.* ¶¶ 64(c)–(f).

Moreover, Mr. Milligan seeks an order requiring Bank of America and Merrill Lynch to "reform" the Plan's terms and, once modified, to enforce his and other putative class members' purported rights to payment of past awards under its modified terms. *Id.* ¶¶ 65-80. Finally, Mr. Milligan alleges that, if the Plan is subject to ERISA, Merrill Lynch was a Plan fiduciary, breached the duties it would owe participants under ERISA, and therefore should "restore" alleged "losses" to the Plan. *Id.* ¶¶ 71-80.

Mr. Milligan claims the Plan operates similarly for all Merrill Lynch FAs. He therefore asserts his claims on behalf of a putative class that, as defined, includes all seven Claimants in this matter: "All former Merrill Lynch financial advisors who forfeited deferred compensation in the WealthChoice Contingent Award Plan from April 30, 2018, until the date of judgment[.]" Ex. B ¶ 53.

Significantly, Mr. Milligan seeks to certify this class under Federal Rule of Civil Procedure 23(b)(1)(A) and/or 23(b)(1)(B). Ex. B ¶ 58. Under Rule 23(b)(1)(A), a class may be certified where separate, individual actions "would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class"—here, Merrill Lynch. A class under Rule 23(b)(1)(B) may be appropriate if separate actions would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Given these standards for obtaining certification under Rule 23(b)(1), participation in such a class is **mandatory.** That is, class members cannot "opt out" or pursue their claims (or obtain remedies) individually or in another forum. Indeed, allowing such "opt outs" would defeat the purpose of Rule 23(b)(1)'s mandatory participation, because separate actions could result in contradictory and "incompatible standards of conduct." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016). As the Supreme Court put it, "[c]lasses certified under [Rule 23(b)(1)] share the most traditional justifications for class treatment—that individual adjudications would be **impossible or unworkable.**" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011) (emphasis added). According to some courts, this concern is particularly salient in ERISA cases, where an alleged plan fiduciary "must apply uniform standards to a large number of [alleged] beneficiaries." *Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, 2020 WL 5518600, at *10 (C.D. Cal. Sept. 14, 2020); *see also Amchem Products Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (Rule 23(b)(1) often applies "when a party is obligated by law to treat the members of a class in a like manner.").

## II. Claimants' Statement of Claim Mirrors the Milligan Complaint.

This is no debate that Claimants here copied and pasted allegations from *Milligan* into their Statement of Claim. In fact, they admit doing so, in arguing that *Milligan* is not properly pursued in federal court.[1] Their Statement of Claim is based on the same factual allegations and seeks the same relief as Mr. Milligan seeks on behalf of Claimants in the class action. Indeed, even a cursory comparison of the *Milligan* complaint to the Statement of Claim shows that, aside from background facts about Claimants, the claims are copycats of the *Milligan* class action. For example:

| *Milligan* Complaint (Ex. B) | *DeWees* Statement of Claim (Ex. C) |
|---|---|
| "FAs' deferred compensation in the Plan is not a 'bonus'" (¶ 47). | "Neither plan is a 'bonus program.'" (¶ 44). |
| "… an FA must be employed by Merrill Lynch on the Vesting Date to receive his or her deferred compensation. If an FAs employment ends before that date, Defendants invoke the Cancellation Rule and cancel the FA's Account Balance so that the FA never received his or her deferred compensation." (¶ 24). | "The Plans purport to "cancel" an advisor's earned commissions in the event of "all other terminations" prior to the vesting date (the 'Cancellation Rule'). After each Claimant left Merrill Lynch, Merrill Lynch purported to cancel and failed to pay commissions Claimants had earned performing services for their clients[.]" (¶ 27). |

---

[1] This is simply wrong. Claimants ignore FINRA Rule 13204, which expressly prohibits arbitrating "[c]lass action claims" in FINRA—precisely what Mr. Milligan has filed in federal court. The Rule also prohibits Merrill Lynch from "enforc[ing] any arbitration agreement against a member of a certified or *putative class action* with respect to any claim that is subject of the certified or *putative class action*." *Id.* 13204(a)(4) (emphasis added). As such, Claimant's baseless accusations—including by calling Merrill Lynch's supposed failure to compel Mr. Milligan to arbitration "inexplicabl[e]," "brazen," and "willful bad faith"—only reflects a fundamental misunderstanding of FINRA's rules.

Shubhangi Nangunoori
December 2, 2024
Page 4

| | |
|---|---|
| "The Cancellation Rule also does not apply if an FA's employment ends because of a 'Workforce Reduction, Divestiture or Disability...'" (¶ 26). | "The Plans provide, for example, that advisors whose employment terminates due to Workforce Reduction, Divestiture, Change of Control or Disability are paid in accordance with the specific award's payment schedule[.]"(¶ 42). |
| "The Plan is a 'plan, fund or program' under ERISA because it identifies the intended benefits—deferred compensation—using an objective formula (i.e., a percentage) that determines how FAs earn benefits." (¶ 32). | "Each Plan is a "plan, fund or program" under ERISA because it identifies the intended benefits—earned commissions that are deferred for a period of years up to a decade—using a detailed, objective formula." (¶ 33). |

More problematic still, however, is that the *Milligan* complaint and the Statement of Claim seek the **same relief**—including a declaration that the Plan is a "pension plan" subject to ERISA and an order requiring Merrill Lynch to reform or modify the Plan terms. For example, Count I of the *Milligan* complaint and Count I of the Statement of Claim seek the same equitable relief. Ex. B ¶ 64; *DeWees* SOC ¶ 54. The same goes for the claims asking that the Plan be reformed, as shown below:

| ***Milligan* Complaint (Ex. B)** | ***DeWees* Statement of Claim (Ex. C)** |
|---|---|
| "Plaintiff and the Class are entitled…to require Defendants to comply with the vesting and anti-forfeiture requirements in ERISA." (¶ 68). | "Merrill Lynch should be ordered to comply with the vesting and anti-forfeiture requirements in ERISA[.]" (¶ 60). |
| "Plaintiffs and the Class are entitled to recover their vested benefits, enforce their rights to the payment of their past vested benefits, and clarify their rights to vested benefits under the Plan." (¶ 70). | "ERISA . . . authorizes a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (¶ 58). |

Taken together, it is obvious that, aside from a few definitional changes and stylistic tweaks, the *Milligan* complaint and the Claimants' Statement of Claim before FINRA are substantively similar—in terms of their factual allegations, their core ERISA claims, and their requested relief.[2]

### III. A Temporary Stay is Warranted, Pending A Class Certification Ruling in *Milligan*.

#### A. Mr. Milligan's Preexisting Request for a Mandatory Class Under Rule 23(b)(1) Warrants a Stay of This Proceeding.

The circumstances here justify staying this proceeding in FINRA until the court has an opportunity to resolve class certification in *Milligan*. Under Rule 13204, "[a]ny claim that is based upon the same facts and law, and involves the same defendants as in a . . . putative class action, shall not be arbitrated under the Code[.]" FINRA Rule 13204(a)(2) (emphasis added). This Rule clearly applies

---

[2] Claimants also assert statutory and common law claims that are not present in *Milligan*. But as discussed below (§ III.C), these claims are based on the same facts and are stated in the alternative to Claimant's core ERISA claims. They should not alter the Panel's decision on Merrill Lynch's request.

here. There is no legitimate dispute that Claimants assert claims in FINRA "based upon the same facts and law" as those asserted against Merrill Lynch in *Milligan*. Again, they concede as much. Nor do any of the exceptions to this Rule apply. Claimants have not filed any "notice" that they "will not participate in the class action or in any recovery that may result from the class action," Rule 13204(a)(2)(B), nor have they "withdrawn from the class according to any conditions set by the court," *id.* 13204(a)(2)(A). Rule 13204(a), therefore, precludes Claimants' pursuit of this arbitration.

Merrill Lynch acknowledges that Claimants may try to capitalize on Rule 13204's exceptions. But it is premature to do so. FINRA should not allow Claimants to circumvent a previously filed class action through an "opt out" that may not even exist in *Milligan* itself. That is, the *Milligan* court has not yet reached the very determination required to know whether Claimants will even **have** an ability to opt out of the *Milligan* class, as contemplated by Rule 13204(a)(2)'s express terms. As discussed, Mr. Milligan seeks to certify a class under Rule 23(b)(1), from which participants cannot exclude themselves. If this class is certified, Claimants will be subject to the outcome in *Milligan*—regardless of what they might submit in FINRA. While no class has been certified today, the first-filed *Milligan* action should be allowed to reach the certification stage first, before this arbitration proceeds.

Any other approach could lead to absurd results. Multiple decisionmakers (the *Milligan* court, and this arbitration panel) could potentially reach contradictory conclusions on the core legal issues that Mr. Milligan contends are common to this matter—including whether the Plan is an ERISA "pension plan" and, if so, what relief to award. *Spano v. The Boeing Co.*, 633 F.3d 574, 577 (7th Cir. 2011) (cases may be "treated as a mandatory class action under Rule 23(b)(1), either because individual treatment risked the establishment of inconsistent standards of conduct for the defendants, Fed. R. Civ. P. 23(b)(1)(A), or because individual cases would, as a practical matter, be dispositive of the claims of nonparties, Fed. R. Civ. P. 23(b)(1)(B)"); *see also Dukes*, 564 U.S. at 361.

This risk matters. Put simply, the Plans either are "pension plans" under ERISA, or they are not. They cannot be both. For example, a FINRA panel may decide the Plans are "pension plans" governed by ERISA. But the *Milligan* court might later find—on behalf of a class that *includes Claimants*—that the Plans are not governed by ERISA, confirming that no "reformation" of their terms is needed and no equitable or Plan-wide relief is warranted. These rulings would stand in direct conflict with one another, and Merrill Lynch could not comply with both. Merrill Lynch would be forced to ignore one of these rulings to comply with the other. And its actions will impact thousands of current and former FAs, not only Claimants. If *Milligan* is certified under Rule 23(b)(1), that Rule is designed to avoid potentially conflicting outcomes like these, and instead bind all class members to a single result.

Indeed, the *Milligan* case presses forward. Any stay applied to this matter would be limited. The *Milligan* court has entered an aggressive schedule, with a deadline for completing all discovery by April 4, 2025. Not only that, but as Claimants acknowledge in their Statement of Claim, Merrill Lynch filed a motion for summary judgment in *Milligan* on September 30, 2024. This motion asks the district court to dismiss Mr. Milligan's claims with prejudice because there is no genuine dispute of material fact preventing it from holding that ERISA does not govern the WealthChoice Plan. That is the very same underlying legal issue Claimants now raise here—or, in their own words, "the dispositive question in every one of these disputes with every unnamed putative class member." SOC ¶ 14. Plaintiff's deadline to respond to Merrill Lynch's motion is December 6, 2024, and Merrill Lynch's reply is due on December 20, 2024. Therefore, this motion will be fully briefed within weeks, further underscoring that any stay issued by the Panel would be temporary. Should the motion be granted in Merrill Lynch's favor, there would no longer be a pending class action and, therefore, Rule 13204 would no longer apply and Claimants may then continue to pursue their claims in FINRA.

On these specific facts, Merrill Lynch's request should be granted, and this arbitration stayed temporarily, to allow the *Milligan* court an opportunity to determine class certification or, if sooner, to resolve the central dispute underpinning Claimant's claims at summary judgment. If the *Milligan* court does not certify a mandatory class, or if the summary judgment motion is granted, this matter can proceed (either because no class is certified at all or, if a Rule 23(b)(3) class is certified, assuming Claimants opt out of the *Milligan* class and/or submit any requisite notice under Rule 13204(a)(2)). But if the *Milligan* court certifies a mandatory class under Rule 23(b)(1) and the summary judgment motion is denied, Claimants here would already be members of that certified class and, therefore, would be pursuing the same claims in *Milligan* as they now seek to pursue here. Either way, there is no valid reason to allow Claimants to pursue identical claims in FINRA at the same time a putative class action is pending that may resolve those very same claims on their behalf.

### B. The Panel Should Not Countenance Claimants' Efforts to Circumvent FINRA's Prohibition on Class Arbitrations.

As an independent basis for a stay, Claimants' Statement of Claim, along with the other two *Milligan* copycat SOCs, effectively seek an end-run around FINRA's express prohibition against arbitrating class claims. *See* Rule 13204(a)(1) ("Class action claims may not be arbitrated under the Code."). This too warrants granting Merrill Lynch's request, as Claimants' arbitration strategy only reinforces why it is essential to defer these matters temporarily, until the *Milligan* court can determine whether to certify the Rule 23(b)(1) class.

Taken together, these combined FINRA matters are tantamount to a new class or collective action. They consolidate claims of 32 individual Claimants (and counting), assert identical factual allegations, bring the same legal claims, and seek the same relief against Merrill Lynch. But Rule 13204 exists for the express purpose of avoiding this type of large-scale aggregation of claims before FINRA.

In 1992, the SEC's order first approving the prohibition on class arbitration made clear that class and collective action proceedings do not belong in arbitration for two main reasons. First, "the judicial system has already developed the procedures to manage" such claims, whereas arbitrating them "would be difficult, duplicative and wasteful," and "class actions are better handled by the courts." *Order Approving Proposed Rule Change*, 57 Fed. Reg. 52659-02, 52660, 1992 WL 316267 (Nov. 4, 1992); *see also Order Approving Proposed Rule Change*, 59 Fed. Reg. 22032-01, 22033, 1994 WL 150066 (Apr. 28, 1994) (approving same rule for claims by an associated person, noting "courts have developed the procedures and expertise for managing class actions").

Second, the SEC intended to protect and preserve access to the courts for class and collective action claims—for both associated persons and FINRA members. *See id.* ("The Commission also believes that access to the courts for class action litigation should be preserved for associated persons and member firms[.]"); *see also* Fed. Reg. 52659-02, at 52661 (stating that without access for class actions, "both investors and broker-dealers have been put to the expense of wasteful, duplicative litigation. The new rule ends this practice.").

These dual purposes undergirding Rule 13204 are also why associated persons and FINRA members cannot enforce an arbitration agreement "against a member of a certified ***or putative*** class action with respect to any claim that is the subject of the certified ***or putative*** class action," until the court either denies certification or decertifies an existing class, or the class member is excluded from, or elects not to participate in, the class "according to conditions set by the court." Rule 13204(a)(4) (emphases added). Put simply, Rule 13204 seeks to preserve access to the courts for class action

claims for all members of the class, at least until a court can resolve certification. Indeed, until the *Milligan* court can resolve that issue, Claimants here necessarily could not be "excluded from" or "elect[] not to participate" in the *Milligan* class, "according to conditions set by the court."

Here, Claimants are trying to avoid both the letter and spirit of Rule 13204, including its prohibition on arbitrating class or collective claims. Worse, they exacerbate the flaws in their approach by trying to disguise it, by splintering their claims into multiple Statements of Claim (including this matter) on behalf of 7-14 former FAs at a time. Claimants presumably rely on Rule 13312(a), which would allow multiple parties to join "claims together in the same arbitration if the claims contain common questions of law or fact" and "arise out of the same transaction or occurrence." But this carbon-copy Statement of Claim does not advance either of the two purposes for Rule 13204, noted above. It still would require the collective adjudication of these claims in FINRA, necessitating inefficient and duplicative efforts. If anything, their piecemeal approach makes matters worse, because it will burden multiple FINRA panels and, in doing so, only increase the odds of inconsistent and contradictory rulings. Moreover, allowing these claims to advance before the *Milligan* court even has a chance to rule on class certification would subvert Rule 13204's second purpose, by undermining Mr. Milligan's right to bring his class claims in federal court. Instead, Claimants are trying to sidestep the *Milligan* class action entirely and, potentially, even jump ahead of it to secure a resolution before the *Milligan* court can rule. Worse, Claimants here expressly try to undermine Mr. Milligan's ability to pursue class action claims in court, by claiming he should not even be allowed to pursue those claims. As explained (at 3 n.1), Claimants are simply wrong in asserting that Merrill Lynch has "[i]nexplicably" failed to seek to compel Mr. Milligan's claims to arbitration in FINRA. It cannot do so.

The Panel should not permit Claimants to exploit Rule 13312 to pursue a *de facto* class action, particularly given the complete overlap with the *actual* (and first-filed) *Milligan* class action.

### C. Claimants' Ancillary Claims Should Also Be Stayed.

In addition to their core ERISA claims, Claimants have also asserted a variety of common law and statutory claims. These include claims for breach of fiduciary duty, violation of the California Labor Code, violation of the Colorado Wage Act, breach of contract and the implied covenant of good faith and fair dealing, conversion, and unjust enrichment. *See* Ex. C ¶¶ 61-107 (*DeWees* Statement of Claims). Given Claimants' ERISA claims, along with the duplicative claims pending in *Milligan*, the stay should be enacted on these ancillary claims. The reason is straightforward: if the *Milligan* court finds the Plan is an ERISA pension plan, as Claimants and Mr. Milligan contend, all of these claims are preempted by ERISA. *See* 29 U.S.C. § 1144; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983) (ERISA's "pre-emptive scope [is] as broad as its language.").

Each of these ancillary claims is premised on the exact same facts that allegedly support Claimants' ERISA claims. Claimants do not allege any other facts independent of the Plans to support these claims. *See generally* Ex. C. Rather, the Statement of Claim focuses exclusively on the reasons why Claimants believe the Plans are alleged pension plans under ERISA. *See id*.

Against this backdrop, and if the *Milligan* court determines an ERISA pension benefit plan exists (it should not), there is no reasonable dispute that these claims will be preempted by ERISA. Indeed, ERISA expressly "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). And this preemptive effect reaches "all common

law causes of action that relate to an employee benefit plan." *Antell v. United Healthcare Ins. Co. of New York*, 2012 WL 13042822, at *1 (S.D.N.Y. Mar. 16, 2012).[3]

It would be inequitable to allow Claimants to proceed on these ancillary claims—**all** premised on misconduct related to alleged ERISA pension plans—and then, if successful, obtain a double recovery if relief is awarded to the class in *Milligan*. The proceeding should thus be stayed entirely.

### D. A Stay Will Not Prejudice Claimants.

As it stands, Claimants' ERISA claims are tolled pending the outcome of the *Milligan* court's decision on a motion to certify a class. Under *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Therefore, Claimants will not be prejudiced by the granting of this request.

Ultimately, if a class is certified under Rule 23(b)(1), Claimants will have to participate in the *Milligan* action; if not, they are free to proceed in FINRA. This too warrants granting Merrill Lynch's request, as any contrary ruling would "result in a needless multiplicity of actions," which is exactly what Fed. R. Civ. P. 23 "and the tolling rule of *American Pipe* were designed to avoid." *China Agritech v. Michael H. Resh*, 584 U.S. 732, 739 (2018) (quoting *Am. Pipe Const. Co.*, 414 U.S. at 351).

\* \* \* \*

To be clear, this request does not aim to prevent Claimants from pursuing their claims against Merrill Lynch. Instead, it is aimed solely at ensuring that any outcome—whether in Merrill Lynch's favor or not—avoids forcing Merrill Lynch into the untenable position of having to comply (and necessarily not comply) with potentially conflicting orders. All Merrill Lynch is asking is to allow the *Milligan* court to resolve a motion to certify a Rule 23(b)(1) class **before** Claimants' arbitration proceeds, thus avoiding this problem. And in either event, Claimants will still be able to pursue their claims. Indeed, once decided, Claimants will either have to participate in *Milligan*, as class members (if certification is granted), or be free to pursue their individual claims with FINRA (if certification is denied).

Therefore, Merrill Lynch respectfully asks that this matter be temporarily stayed, pending a ruling on the motion for certification in *Milligan*. Merrill Lynch further requests that its deadline to respond to the Statement of Claim is stayed, pending the outcome of this request.

Thank you for your attention to this request, and please let us know if we can provide any additional information to aid your review.

---

[3] *See also, e.g., Geller v. Cnty. Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir. 1996) ("[A] common law fraud claim for misconduct arising from the administration of an [alleged] ERISA plan may be preempted."); *Leventhal v. MandMarblestone Grp. LLC*, 2019 WL 1953247, at *7, (E.D. Pa. May 2, 2019) (stating "breach of contract claims are preempted when the contract breached is considered an employee benefit plan under ERISA"); *Rehab. Inst. of N. Jersey, Inc. v. Home Depot, Inc.*, 2012 WL 5944658, at *2 (D.N.J. Nov. 27, 2012) ("In this lawsuit, the claims for unjust enrichment and breach of the covenant of good faith have a connection with an ERISA plan, and are therefore preempted by ERISA.").

Shubhangi Nangunoori
December 2, 2024
Page 9

Sincerely,

_/s/ Anahi Cruz_

Anahi Cruz


Enclosures Exhibits A - C
cc: All Counsel of Record

# EXHIBIT B



| | |
|---|---|
| **TO:** | Anahi Cruz, Esq.<br>Barry R. Lax, Esq. |
| **From:** | Cheryl S Abuan<br>Senior Case Specialist |
| **Subject:** | FINRA Dispute Resolution Services Arbitration Number 24-02157<br>Jeffrey A. Dewees, Luke Roy Mckelvy, William A. Schellenberg, et al. vs. Merrill Lynch Pierce Fenner & Smith Inc. |
| **Date:** | December 18, 2024 |

This office is in receipt of the parties' submissions relative to Respondent's Motion to Stay dated December 2, 2024.

Absent the parties' written agreement to stay, or a court order, this matter will proceed in accordance with FINRA's Code of Arbitration Procedure. However, FINRA will refer this issue to the duly appointed panel for further consideration.

If you have any questions, please do not hesitate to contact me at 213-613-2664 or by email at Cheryl.Abuan@finra.org.


CSA:csa:LC53A
idr: 02/18/2020

RECIPIENTS:
Anahi Cruz, Esq., Morgan, Lewis & Bockius LLP, 300 South Grand Avenue, Twenty-Second Floor, Los Angeles, CA 90071
On Behalf Of: Merrill Lynch Pierce Fenner & Smith Inc.

Barry R. Lax, Esq., Lax & Neville LLP, 350 Fifth Avenue, Suite 4640, New York, NY 10118
On Behalf Of: Jeffrey A. Dewees; Alon Haim; Luke Roy McKelvy; Matthew D. Mendoza; William A. Schellenberg; Jay Tamkoc; Reinhold Wigand

Investor protection. Market integrity.   FINRA Dispute Resolution Services   300 South Grand Avenue   t 213 613 2680
West Regional Office   Suite 1700   www.finra.org
Los Angeles, CA
90071-3135