**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KELLY MILLIGAN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | Civil Action No. 3:24-cv-00440 KDB-DCK |
| Plaintiff, | |
| -against- | Judge Kenneth D. Bell |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., BANK OF AMERICA CORP., and JOHN/JANE DOE 1, THE SENIOR VICE PRESIDENT–HUMAN RESOURCES GLOBAL BANKING AND GLOBAL WEALTH AND INVESTMENT MANAGEMENT ADMINISTRATION AT BANK OF AMERICA CORP., | Magistrate Judge David Keesler |
| Defendants, | |
| and | |
| JEFFREY DeWEES, REINHOLD WIGAND, JAY TAMKOC, WILLIAM SCHELLEN-BERG, MATTHEW MENDOZA, LUKE McKELVY and ALON HAIM, | |
| Proposed Intervenor-Plaintiffs. | |

**MEMORORANDUM OF LAW IN SUPPORT OF PROPOSED**
**<u>INTERVENOR-PLAINTIFFS' MOTION TO INTERVENE</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

    I.      FACTUAL AND PROCEDURAL HISTORY ....................................................... 4

        A.  INTERVENOR-PLAINTIFFS ......................................................................... 4

        B.  CONTRACTUAL AND REGULATORY OBLIGATION TO ARBITRATE
            THIS DISPUTE ................................................................................................ 9

        C.  MERRILL LYNCH'S ONGOING ATTEMPTS TO THWART
            ARBITRATIONS TO WHICH IT HAS SUBMITTED ................................. 11

    II.     LEGAL STANDARD ........................................................................................... 19

    III.    ARGUMENT ......................................................................................................... 20

# **TABLE OF AUTHORITIES**

## **Cases Cited**

*Dorman v. Charles Schwab Corp.,*
780 F. App'x 510, 513–14 (9th Cir. 2019) .............................................................................. 10, 21

*In re Telectronics Pacing Sys., Inc.,*
221 F.3d 870, 881 (6th Cir. 2000) ...................................................................................... 20, 21

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
552 U.S. 248, 256 (2008) ............................................................................................................ 22

*Rutherford County v. Bond Safeguard Ins. Co.,*
No. 1:09-cv-292, 2009 WL 6543659, at *4 (W.D.N.C. Dec. 3, 2009) ........................................ 20

*Securities and Exchange Commission v. Creative Capital Consortium, LLC,*
2015 WL 4077451 at *2 (S.D. Fla 2015) .................................................................................... 20

*Shafer v. Morgan Stanley,*
No. 20 CIV. 11047 (PGG), 2023 WL 8100717 (S.D.N.Y. 2023) ........................................ *passim*

*Smith v. Bd. of Directors of Triad Mfg., Inc.,*
13 F.4th 613, 620 (7th Cir. 2021) ......................................................................................... 21, 22

*Tolbert v. RBC Capital Mkts. Corp.,*
759 F.3d 619, 625 (5th Cir. 2014) ................................................................................................ 5

*U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.,*
349 F. Supp. 2d 934, 940 (D. Md. 2004) ................................................................................... 21

*Volvo Grp. N. Am., LLC v. Truck Enterprises, Inc.,*
No. 7:16-CV-00025, 2016 WL 1453061, at *3 (W.D. Va. Apr. 13, 2016) ........................... 20, 23

*Waste Management, Inc., v. Residuos Industriales Multiquim, S.A.,*
372 F. 3d 339, 342 (5th Cir. 2004) ............................................................................................ 23

*Wilson v. Safelite Grp., Inc.,*
930 F.3d 426, 434-435 (6th Cir. 2019) ........................................................................................ 5

## **Rules Cited**

9 U.S.C. § 3 ............................................................................................................... 1, 3, 22, 23
FINRA Rule 13204 ............................................................................................................. *passim*
FINRA Rule 13200 ...................................................................................................... 10, 11
FINRA Rule 2263 ........................................................................................................... 10
FINRA Rule 2010 ........................................................................................................... 10

i

FINRA Rule IM-13000 ................................................................................... 10, 11

FINRA Rule 13303 ....................................................................................... 11

FINRA Rule 13308 ....................................................................................... 11

Fed. R. Civ. Pro. Rule 23 ....................................................................... *passim*

Proposed Intervenor-Plaintiffs Jeffrey DeWees, Luke McKelvy, William Schellenberg, Jay Tamkoc, Alon Haim, Matthew Mendoza, and Reinhold Wigand ("Intervenor-Plaintiffs") move to intervene as of right to file the accompanying motion to stay these proceedings pursuant to 9 U.S.C. § 3 or, in the alternative, to (i) vacate the January 16, 2025 Order staying all non-summary judgment proceedings and (ii) stay Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corp.'s (collectively "Merrill") Motion for Summary Judgment pending Named Plaintiff Kelly Milligan's motion for class certification, if any ("Proposed Motion").

## PRELIMINARY STATEMENT

Intervenor-Plaintiffs are former Merrill Lynch advisors and claimants in the arbitration *DeWees et al v. Merrill Lynch*, Financial Industry Regulatory Authority ("FINRA") No. 24-02157 (the "FINRA Arbitration"), asserting claims for more than $2 million in commissions deferred under two defined contribution ERISA plans and forfeited by Merrill in violation of Section 203 of the Employment Retirement Income Security Act ("ERISA"). Named Plaintiff has brought claims under one of these plans, the WealthChoice Contingent Award Plan ("WealthChoice Plan") (together "WealthChoice Claims"), in this putative class action.

Merrill and Intervenor-Plaintiffs—as well as every other putative member of the proposed class—are obligated to submit their disputes to FINRA arbitration. This firm is aware of 32 other FINRA arbitrations between Merrill and at least 240 former Merrill financial advisers asserting ERISA claims for commissions forfeited under the WealthChoice Plan.[1] Merrill has filed an "answer" and post-dispute Uniform Submission Agreement agreeing to submit these claims and its defenses to FINRA arbitration in at least some and likely all of them.

---

[1] Including two between Merrill and 25 former Merrill advisers represented by undersigned counsel (together the "FINRA Arbitrations"). Undersigned counsel alone represents more than seventy other former Merrill advisors who intend to file ERISA claims, including WealthChoice Claims, in FINRA. Lax Dec ¶ 18.

Despite this, since at least December 2, 2024 Merrill has filed motions to the Director of FINRA Dispute Resolution "respectfully ask[ing] that this matter be temporarily stayed, pending a ruling on the motion for certification in *Milligan*" in at least the three FINRA Arbitrations in which this firm is counsel and, according to Merrill, dozens more. *See* Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 8. To undersigned counsel's knowledge, the Director has denied them all, but Merrill has continued to pursue stays "pending a ruling on the motion for certification in *Milligan*" with FINRA panels as late as the day before this filing. Merrill has represented that at least some of these panels have granted its motion to "allow the *Milligan* court the opportunity to determine whether these Claimants are part of a mandatory class action from which they cannot opt out." *Id.* at 1.

Merrill did not disclose to the Director or FINRA panels that no motion for class certification has been filed in this Action. After it filed its January 14 Joint Motion to stay all non-summary judgment proceedings, including any putative motion for class certification, and Judge Keesler so ordered it on January 16, Merrill did not disclose that it had ensured the Court would not have the "opportunity to determine whether" any of at least 240 FINRA claimants "are part of a mandatory class action." Since January 16, Merrill has continued to affirmatively represent, in writing, that "[a]ll Merrill Lynch is asking is to allow the *Milligan* court to resolve a motion to certify a Rule 23(b)(1) class before Claimants' arbitration proceeds." *Id.* at 6.

At the same time, Merrill did not disclose to Judge Keesler on the Joint Motion to Stay, and has never disclosed to the Court, that (i) there are more than thirty FINRA arbitrations between Merrill and hundreds of former Merrill financial advisors in the putative class asserting WealthChoice Claims; (ii) Merrill and its financial advisors have a contractual and regulatory obligation to submit their disputes to FINRA arbitration, Merrill has recognized that obligation in numerous filings outside this Court, and Merrill has filed post-dispute Uniform Submission

Agreements _specifically submitting the WealthChoice Claims and its defenses to FINRA arbitration_; (iii) Merrill has argued outside this Court that the WealthChoice Claims turn on "the very same underlying legal issue" as its Motion for Summary Judgment, which Merrill has argued outside this Court would, if granted, "resolve the central dispute underpinning Claimant's claims" (_Id._ at 5-6); or (iv) Merrill has unsuccessfully moved the Director of FINRA Dispute Resolution, and has or is currently moving numerous FINRA panels, to indefinitely "pause" dozens of FINRA arbitrations with hundreds of former Merrill financial advisors and putative class members "pending a ruling on the motion for certification in _Milligan_."

A stay of these proceedings pending the FINRA Arbitration is mandatory under 9 U.S.C. § 3. Intervenor-Plaintiffs' interest in their own WealthChoice Claims and right to arbitrate them with Merrill in an arbitration already begun has been, is being and will continue to be impaired until there is a stay. The arbitration right is not merely protectable but strictly protected by statute, _provided_ there is an "application of one of the parties [to] stay the trial of the action until such arbitration has been had." _See_ 9 U.S.C. § 3. Intervenor-Plaintiffs have a manifest and immediate interest in making that application, and it is fair to say that the existing parties do not adequately represent it.

Intervenor-Plaintiffs' interest is also not the only one at stake. Named Plaintiff's failure to move to certify what are, in reality, claims for individual monetary damages on individual accounts under a defined contribution plan that cannot be certified under Rule 23(b)(1); Merrill's efforts to "pause" the FINRA arbitrations; and the Joint Motion to Stay have made Merrill's one-way Motion for Summary Judgment a matter of urgent interest for Intervenor-Plaintiffs and every putative member of the proposed class, many of whom likely have no knowledge of this Action and none of whom have received or will receive notice before a ruling that, in the view of both Merrill and putative class counsel, will be dispositive of the WealthChoice Claims so long as it is in Merrill's

favor. Doc 63 (Joint Motion to Stay all non-summary judgment proceedings) ¶¶ 4, 7.

Coming prior to class certification, a ruling in Merrill's favor will not be formally binding on putative members of the proposed class, but this formality will not save any putative class member's practical right to arbitrate. No existing party to the Action represents this interest and Merrill, at least, has taken affirmative steps, in FINRA and this Court, to impede it in the frank hope of extinguishing it: "[T]here is no valid reason to allow Claimants to pursue identical claims in FINRA at the same time a putative class action is pending that may resolve those very same claims on their behalf." *Id.* at 6; *see* 24-25, *infra*.

The Motion to Intervene should be granted.

## I.     FACTUAL AND PROCEDURAL HISTORY

### A.     INTERVENOR-PLAINTIFFS

Intervenor-Plaintiffs are former Merrill financial advisors who generated revenue for Merrill by providing investment advice and other services to their clients and earned a percentage of revenue on a fixed, formulaic and non-discretionary commission basis. Lax Dec ¶ 4, Ex. A (FINRA Statement of Claim) 1, ¶¶ 3-9, 21. Merrill took involuntary deferrals from Intervenor-Plaintiffs' commissions under the WealthChoice Plan and Bank of America Corporation Equity Plan ("Equity Plan"). *Id.* at ¶¶ 22-26. Commissions deferred under the WealthChoice Plan were allocated to "accounts notionally invested through Merrill Lynch's investment platform." *Id.* at ¶ 24. Commissions deferred under the Equity Plan were "converted to a RSU equivalent to one share of Bank of America common stock and convertible to either cash or common stock after 'vesting.'" *Id.* at ¶ 25. Following Intervenor-Plaintiffs' voluntary terminations, Merrill unlawfully purported to forfeit their deferred commissions in violation of Section 203 of ERISA and state law. *Id.* at ¶¶ 27-28, 59, 66-69, 70-107.

The WealthChoice Plan and Equity Plan are defined contribution ERISA Plans. *Id.* at ¶¶

29-47.  *See, e.g.*, *Shafer v. Morgan Stanley*, No. 20 CIV. 11047 (PGG), 2023 WL 8100717, 2-7, 15-20 (S.D.N.Y. 2023), *recons Shafer v. Stanley,* 2024 WL 4697235, at *15 (S.D.N.Y. Nov. 5, 2024) (rejecting arguments materially identical to Merrill's in this case and holding Morgan Stanley's materially identical deferred compensation plans are ERISA plans); *Wilson v. Safelite Grp., Inc.*, 930 F.3d 426, 434-435 (6th Cir. 2019); *Tolbert v. RBC Capital Mkts. Corp.*, 759 F.3d 619, 625 (5th Cir. 2014).  Merrill's purported forfeiture of Intervenor-Plaintiffs' deferred commissions under the WealthChoice Plan and Equity Plan violated ERISA § 203.  *See* Lax Dec ¶ 4, Ex. A (FINRA Statement of Claim) ¶¶ 48-51.[2]

### FINRA Arbitration Claims

On October 7, 2024, Intervenor-Plaintiffs filed the FINRA Arbitration pursuant to the FINRA Code of Arbitration Procedure for Industry Disputes (the "Code") seeking more than $2 million in monetary damages for commissions deferred to individually held accounts under the WealthChoice Plan or individually held RSUs under the Equity Plan ("Equity Claims") and forfeited in violation of ERISA § 203 and state law, as well as equitable relief as to themselves.[3] *See Id.* at ¶¶ 56-107.

On December 3, Merrill filed its Uniform Submission Agreement "hereby submit[ting] the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration

---

[2] Merrill's failure and refusal to timely pay Intervenor-Plaintiffs their commissions following termination violated Sections 201 and 202 of the California Labor Code and Section 17200 and 17202 of the California Business and Professions Code or, with respect to Intervenor-Plaintiff Wigand, Colo. Rev. Stat. Ann. § 8-4-109.  *Id.* at ¶¶ 71-76, 78-80, 86, 90-91. Merrill's deductions from earned commissions under ERISA plans that did not comply with ERISA § 203 violated Sections 221 and 224 of the California Labor Code or, with respect to Intervenor-Plaintiff Wigand, Colo. Rev. Stat. Ann. § 8-4-105 (Colorado Wage Act).  *See Id.* at ¶¶ 77, 87-89.

[3] Intervenor-Plaintiffs also asserted claims for violation of California and Colorado statutes, set forth above, and breach of contract, breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment

in accordance with the FINRA By-Laws, Rules and Code of Arbitration Procedure" on December 3. Lax Dec ¶5, Ex. B (Merrill Uniform Submission Agreement). On December 2, Merrill formally answered Intervenor-Plaintiffs but, as set forth below, simultaneously moved the Director of FINRA Dispute Resolution to indefinitely "pause" the FINRA Arbitration "pending a ruling on the motion for certification in *Milligan*." *See* Lax Dec ¶ 6, Ex. C (Merrill Combined Answer and Motion to Stay) 8.

On December 18, the Director denied Merrill's Motion and proceeded with the Arbitration pursuant to the Code. Lax Dec ¶7, Ex. D (FINRA Order). Plaintiff-Intervenors and Merrill engaged in FINRA's rank-and-strike process and a three-member FINRA arbitration panel was duly appointed (the "FINRA Panel"). As of the date of this filing, Merrill continues to pursue its motion to "pause" the FINRA Arbitration "pending a ruling on the motion for certification in *Milligan*" with the FINRA Panel and has apparently filed identical motions in numerous other FINRA arbitrations, including two in which this firm is counsel. *See* 13, *infra*.[4]

***The Putative Class Action***

This Action was filed on April 30, 2024, "as a class action under Rule 23 of the Federal Rules of Civil Procedure" and defined the putative class as:

> All former Merrill Lynch financial advisors who forfeited deferred compensation in the WealthChoice Contingent Award Plan from April 30, 2018, until the date of judgement because of the Cancellation Rule. […]

Doc 1 (Compl.) ¶ 53. In his Complaint, Named Plaintiff alleges:

> 2. Commissions are based on the revenue generated by client investment activities. Defendants automatically allocate a portion of commissions in the

---

[4] On October 25, 2024 and November 7, 2024, 25 former Merrill advisors brought ERISA and other claims against Merrill in two other FINRA arbitrations (together "FINRA Arbitrations").[4] *See* Lax Dec ¶ 17. Merrill filed Uniform Submission Agreements and identical motions to "pause" those Arbitrations. *Id.* On February 13, Merrill represented to the FINRA Panel and Intervenor-Plaintiffs' counsel that it is in at least <u>32</u> FINRA arbitrations involving WealthChoice Claims filled by at least 240 former Merrill advisors. *Id.* at ¶ 19.

WealthChoice Contingent Award Plan (the "Plan"). **The commissions are allocated to individual Plan accounts for each FA.** Under the relevant Plan award agreements, commissions "vest" in eight years. Merrill Lynch causes FAs to forfeit the value in their Plan accounts if they leave Merrill Lynch before these vesting dates (the "Cancellation Rule").

5. Plaintiff worked as an FA at Merrill Lynch and, when he left Merrill Lynch, Defendants invoked the Cancellation Rule to deny him the deferred compensation that he earned under the FA Deferred Compensation Program.

6. Plaintiff seeks an Order from the Court under ERISA § 502(a)(3) declaring that the Plan is subject to ERISA and that the Cancellation Rule violates ERISA's vesting and anti- forfeiture requirements. **He seeks the payment of his and the other class members' deferred compensation that was wrongfully forfeited.**

21. FAs have **individual, notional Plan accounts** for each award they receive, i.e., they have an account for each year's deferred compensation. **FAs can invest their accounts in notional investments, like in a 401(k) plan, with the value of their accounts tracking the performance of the selected investments**. 2018 Award Agreement, § 1.

*Id.* at ¶¶ 2, 5, 6, 21 (emphasis added); Doc (Answer) ¶¶ 21, 24-25. The WealthChoice Plan is a defined contribution plan. *See* ERISA § 3(34); *Shafer*, 2023 at *23 (S.D.N.Y. 2023).

Named Plaintiff asserts a claim for forfeiture of deferred commissions in individual WealthChoice Plan accounts in violation ERISA § 203 (also "WealthChoice Claims") and purports to seek on behalf of the WealthChoice Plan and/or the putative class (i) "a full range of equitable relief under ERISA § 502(a)(3)" (Count I) including reformation of the WealthChoice Plan (Count II, ¶¶ 67-68) and restoration of each putative class member's forfeited deferred commissions by John/Jane Doe 1 for breach of fiduciary duty under ERISA § 502(a)(2) (Count III) and (ii) recovery of each putative class member's forfeited deferred commissions under ERISA § 502(a)(1)(B) (Count II, ¶¶ 69-70). *See* ¶¶ 61-80; 19-21 ("Relief"). In the April 30, 2024 Complaint, Named Plaintiff alleges "certification is warranted" under one of Rule 23(b)(1)(A) or (B), (b)(2) or (b)(3). *See* Doc 1 (Compl.) ¶¶ 58-59. Paragraphs 58 and 59 parroting the requirements of b(1)(A), b(1)(B) and b(2) are to date the entire record on certification of a mandatory class.

Intervenor-Plaintiffs are former Merrill "financial advisors who forfeited deferred compensation in the WealthChoice Contingent Award Plan" after April 30, 2018 "because of the Cancellation Rule" (*see Id.*; 6, *supra*) and are therefore putative members of the proposed class. However, Intervenor-Plaintiffs assert claims on their own behalf, seek monetary damages only for themselves, and seek equitable relief intended to ascertain or secure their own commissions.[5] *Compare Id.* at ¶¶ 61-80, 19-21 (Relief) *with* Lax Dec ¶ 4, Ex. A (FINRA Statement of Claim) ¶¶ 52-69, 29-30 (Relief). Intervenor-Plaintiffs alleged facts regarding the Equity Plan and asserted Equity Plan Claims that are not asserted in the operative Complaint, admitted or alleged by Merrill's Answer, or otherwise referred to anywhere in the record prior to Named Plaintiff's January 6, 2025 Motion to Amend, which the parties jointly moved to stay on January 14. *See Id.* at 2-3, 29-30, ¶¶ 22-28, 34, 42, 54.

Merrill filed an Answer on July 12, 2024, denying the substantive allegations of the Complaint and denying "that Plaintiff can satisfy the requirements for class certification under any theory" and "that class action treatment is appropriate." Doc 25 (Answer) ¶¶ 1, 53-60. Merrill asserted arbitration as an affirmative defense (*see Id.* at 20) but has otherwise been able to remain silent on arbitration and class certification because Named Plaintiff has not filed a motion to certify in the intervening nine months.

On September 30, Merrill filed its Motion for Summary Judgment on the "threshold issue resolvable on undisputed facts: is the Bank of America WealthChoice Contingent Award Plan ('Plan') a 'pension plan' under the Employee Retirement Income Security Act ('ERISA'), 29

---

[5] Including their request for a declaration "that with respect to Merrill Lynch advisors" the WealthChoice Plan and Equity Plan are ERISA plans, the Cancellation Rule violates ERISA, and deferral of commissions into the violative WealthChoice Plan and Equity Plan violated ERISA, for the purpose of establishing constructive trust over the amounts withheld, penalties, interest and attorneys' fees "for the benefit of Claimants." Lax Dec ¶ 4, Ex. A (FINRA Statement of Claim) ¶ 54(i-iv).

U.S.C. § 1002(2)(A)?" and sought to dismiss the case.  Doc 41-1.[6]  Despite his own assertion that "[it] is particularly true [that cross-motions for summary judgment should be entertained after a decision on class certification] in this case which involves a single plan with a single sponsor and, therefore, class certification should be routine under Rule 23 (b)(1)" (*Id.*) (citing *Berry v. Wells Fargo & Co.*, 2018 WL 9989754, at *11), Merrill's reported production of "809 pages of records plus an Excel spreadsheet containing approximately 78,000 lines of data" on September 29 and supplemental production sometime prior to November 11 (Doc 51 (Joint Motion for Briefing Schedule) 2-3), and the limited discovery that would be necessary to move to certify in this case, Named Plaintiff did not move to certify.

On January 14, Named Plaintiff moved jointly with Merrill to stay all proceedings in the case other than Merrill's one way Motion for Summary Judgment, foreclosing any possibility that he will move for class certification prior to a ruling.  *See* Doc 61, 63.

## B.  CONTRACTUAL AND REGULATORY OBLIGATION TO ARBITRATE THIS DISPUTE

Merrill is a broker-dealer and FINRA member firm.  *See* Doc 1 (Compl.) ¶ 13; Doc 25 (Answer) ¶ 13 .  *See also* Lax Dec ¶ 8, Ex. E (Merrill Lynch FINRA CRD Report).

Each of the Intervenor-Plaintiffs was at all relevant times a financial advisor and associated

---

[6] Despite his initial (and correct) contention the previous month that "[a]s a general matter, 'the determination of class status is to be made before the decision on the merits,'" Named Plaintiff took no action apparent on the record beyond stipulating to a briefing schedule and filing an opposition on December 6.  *See* Doc 35 (Rule 26(f) Certification) 4 (quoting *Nance v. Union Carbide Corp.*, 540 F.2d 718, 723 n.9 (4th Cir.1976), vacated in part on other grounds, 431 U.S. 952 (1977*)* and citing *Muhammad v. Giant Food Inc.*, 108 Fed. Appx. 757, 763 (4th Cir. 2004) ("district courts should rule on class certification requests before ruling on a summary judgment motion or otherwise ruling on the merits of the claims").  Evidently due to his (incorrect) assumption that "[b]ecause of the one-way intervention doctrine, Plaintiffs are precluded from moving for summary judgment before class certification" even after a defendant moves for summary judgment on the same issue, Named Plaintiff did not cross-move for summary judgment. *See Id.* at 4-5.

person of Merrill.  *See* Lax Dec ¶ 4, Ex.  A (FINRA Statement of Claim) ¶¶ 2-9; ¶ 9, Ex. F (Intervenor-Plaintiffs' CRD Reports).

Named Plaintiff Kelly Milligan and the members of the putative class were at all relevant times financial advisors and associated persons of Merrill.  *See* Doc 1 (Compl.) ¶ 53; Doc 25 (Answer) ¶¶ 5, 11, 53; Doc 41-32 (MSJ Ex. 4 "Milligan BrokerCheck Report") at 4.

As a condition of its membership in FINRA and license to do business in the securities markets of the United States, Merrill agreed to arbitrate pursuant to the Code.  *See* Lax Dec ¶ 10, Ex. G (FINRA By-Laws) Art. V: Application for Registration.  The Code requires Merril to submit all disputes with associated persons to arbitration.  FINRA Rule 13200 "Required Arbitration."[7] As a condition of their securities licenses, Intervenor-Plaintiffs, Named Plaintiff and all putative class members were also required to agree to submit all disputes to arbitration.  Lax Dec ¶ 12, Ex. I. (Form U4 "Uniform Application for Securities Industry Registration or Transfer," Section 15(A) at 16).  Merrill was required to provide an associated person with a written disclosure that the "Form U4 contains a predispute arbitration clause […] in item 5 of Section 15A of the Form U4" any time he or she signed or acknowledged any amendment to the Form U4.  FINRA Rule 2263 "Arbitration Disclosure to Associated Persons."

It is a violation of FINRA Rule 2010 (Standards of Commercial Honor and Principles of Trade) "for a member to require associated persons to waive the arbitration of disputes contrary to the provisions of the Code of Arbitration Procedure" (FINRA Rule IM-13000) and failure of either

---

[7] All provisions of the FINRA Code cited are provided at Exhibit H to the Lax Declaration.  A claim for benefits under ERISA is arbitrable in FINRA (*see Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513–14 (9th Cir. 2019)) ("As every circuit to consider the question has held, ERISA contains no congressional command against arbitration, therefore an agreement to arbitrate ERISA claims is generally enforceable"), including a claim for individual monetary damages purported to be asserted under ERISA § 502(a)(2) or § 502(a)(3) (*see Shafer*, 2023 WL at 23-28 (S.D.N.Y. 2023).

a member firm or associated person to submit to FINRA arbitration is sanctionable up to suspension or expulsion from the securities industry. *See* FINRA By-Laws, Art. XIII. FINRA has made clear that "FINRA's arbitration rules are not default rules. **FINRA Rule 13200 specifically states that industry disputes must be arbitrated at FINRA**, except as otherwise provided in the Industry Code" and "[t]hrough IM-13000, FINRA has made clear to **member firms and associated persons that they have the mandatory and non-waivable duty to arbitrate disputes**, and (with certain exceptions) to arbitrate them before FINRA." Lax Dec ¶ 13, Ex. J (Regulatory Notice 16-25) at 6 (emphasis added).

Intervenor-Plaintiffs executed and filed their Uniform Submission Agreements on October 7, 2024 and, as set forth above, Merrill on December 3, 2025. Lax Dec ¶ 5, Ex. B.

### C. MERRILL LYNCH'S ONGOING ATTEMPTS TO THWART ARBITRATIONS TO WHICH IT HAS SUBMITTED

On December 2, 2024, prior to the appointment of a FINRA panel, Merrill submitted what it styled a "Combined Answer and Motion to Stay" to the Director of FINRA Dispute Resolution. *See* Lax Dec ¶ 6, Ex. C (Merrill Combined Answer and Motion to Stay). Merrill conceded that it is required to arbitrate Plaintiff-Intervenors' claims against it in FINRA. *See Id.* at 1, 2, 4, 5, 6, 7, 8. For this reason, while purporting to unilaterally "reserve its right to file a full and robust answer at the appropriate time" in violation of FINRA Rule 13303(a), Merrill attempted to avoid a default by formally answering the FINRA Statement of Claim "[t]o the extent Merrill Lynch must respond to Claimants' Statement of Claim, Merrill Lynch denies all claims" (*Id.* at 1) "with a general denial" in violation of FINRA Rules 13303(a) and 13308(b).

Merrill simultaneously requested that the Director "pause" the Arbitration "temporarily" pending this Court's decision on class certification:

> As outlined below, Merrill Lynch respectfully requests, pursuant to Rules 13203 and 13204, that this case be paused from proceeding, at least temporarily, in the FINRA

forum. This **relief is warranted in these unique circumstances because**—as the Statement of Claim concedes—**this arbitration is a copycat of claims that have been pending for months against Merrill Lynch in a first-filed class action in federal court**, *Milligan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.*, No. 3:24-cv-00440 (W.D.N.C.). A temporary stay of this arbitration will not foreclose Claimants from pursuing their claims. Rather, Merrill Lynch **asks only that these proceedings be held in abeyance** to allow the *Milligan* court **the opportunity to determine whether these Claimants are part of a mandatory class action from which they cannot opt out**.

***

The circumstances here justify staying this proceeding in FINRA until the court has **an opportunity to resolve class certification in *Milligan***. Under Rule 13204, "[a]ny claim that is based upon the same facts and law, and involves the same defendants as in a . . . putative class action, shall not be arbitrated under the Code**[.]**" FINRA Rule 13204(a)(2) (emphasis added)**.** This Rule clearly applies here. There is no legitimate dispute that **Claimants assert claims in FINRA "based upon the same facts and law" as those asserted against Merrill Lynch in *Milligan***. Again, they concede as much. Nor do any of the exceptions to this Rule apply. **Claimants have not filed any "notice" that they "will not participate in the class action or in any recovery that may result from the class action," Rule 13204(a)(2)(B), nor have they "withdrawn from the class according to any conditions set by the court," *id.* 13204(a)(2)(A).** Rule 13204(a), therefore, precludes Claimants' pursuit of this arbitration.

Merrill Lynch acknowledges that Claimants may try to capitalize on Rule 13204's exceptions. But it is premature to do so. **FINRA should not allow Claimants to circumvent a previously filed class action through an "opt out" that may not even exist in *Milligan* itself.** That is, the *Milligan* court **has not yet reached the very determination required to know** whether Claimants will even *have* an ability to opt out of the *Milligan* class, as contemplated by Rule 13204(a)(2)'s express terms. As discussed, Mr. Milligan seeks to certify a class **under Rule 23(b)(1), from which participants cannot exclude themselves.** If this class is certified, Claimants will be subject to the outcome in *Milligan*—regardless of what they might submit in FINRA. **While no class has been certified today**, the first-filed *Milligan* action **should be allowed to reach the certification stage first**, before this arbitration proceeds.

*Id.* at 1, 4-5 (emphasis added).[8]

---

[8] FINRA Rule 13204(a) bars class arbitration.  For the express purpose of preventing "a double recovery" (*Id* at 8),  a claim "based upon the same facts and law, and [that] involves the same defendants as in a court-certified class action or a putative class action, shall not be arbitrated under the Code**, unless** the party bringing the claim files with FINRA one of the following: (A) a copy of a notice filed with the court…that the party will not participate in the class action or in any recovery that may result, or has withdrawn from the class according to any conditions set by the court; or (B) a notice that the party will not participate in the class action or in any recovery that may result from the class action."  *See* FINRA Rule 13204(a)(2) (emphasis added).

Merrill declared that its request for a "pause" would apply to both the FINRA Arbitration and to any ERISA claim filed against it in FINRA pursuant to Merrill's admitted contractual and regulatory obligation to arbitrate and <u>actual submission</u> to FINRA arbitration. *See Id.* at 2, 6-7. Merrill subsequently filed materially identical Combined Answers and Motions to Stay in at least two other FINRA Arbitrations brought by 25 former Merrill financial advisors, most recently on December 30, 2024, and has represented that it has filed numerous others. <u>All</u> repeat Merrill's representations that "this relief is warranted" and "justif[ied]" (*Id.*) by <u>this Court's proceedings</u>: (i) "this arbitration is a copycat of claims that have been pending for months against Merrill Lynch in a first-filed class action in federal court" and are "'based upon the same facts and law' as those asserted against Merrill Lynch in *Milligan*" and (ii) "Merrill Lynch asks only that these proceedings be held in abeyance to allow the *Milligan* court the opportunity to determine whether these Claimants are part of a mandatory class action." *Id.* at 1, 4-5 (quoting FINRA Rule 13204(a)(2)). Neither is true.

As the basis of its various motions to indefinitely "pause" the FINRA arbitrations Merrill has represented and is continuing to represent:

> [Intervenor-Plaintiff's] Statement of Claim is based on the **same factual allegations and seeks the same relief** as Mr. Milligan seeks on behalf of Claimants in the class action. Indeed, **even a cursory comparison of the Milligan complaint to the Statement of Claim shows that, aside from background facts about Claimants, the claims are copycats of the Milligan class action.** [***]

> More problematic still, however, is that the **Milligan complaint and the Statement of Claim seek the same relief**—including a declaration that the Plan is a "pension plan" subject to ERISA and **an order requiring Merrill Lynch to reform or modify the Plan terms**. For example, **Count I of the Milligan complaint and Count I of the Statement of Claim seek the same equitable relief.** Ex. B ¶ 64; DeWees SOC ¶ 54. The same goes for the claims asking that the Plan be reformed, as shown below: [***]

*See* Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 2-4 (Merrill's "example" charts omitted, though the charts themselves establish that Merrill's counsel is fully aware that her

representations to FINRA are false (*see Id.* at 3-4)).[9] Merrill has omitted the Complaint from every motion it is has filed with FINRA. As set forth above, Intervenor-Plaintiffs assert claims on their own behalf, seek monetary damages only for themselves, and seek equitable relief intended to ascertain or secure their own monetary damages.[10] Intervenor-Plaintiffs assert claims under the Equity Plan, not even the existence of which is alleged in this case. *Id.*

In its December 2 Combined Answer and Motion, and every subsequent motion to "pause" the FINRA arbitrations, Merrill invoked "a ruling on the motion for certification in *Milligan*"—to the Director of FINRA Dispute Resolution and Merrill's regulator—eighteen times,[11] closing with this:

> **To be clear**, this request does not aim to **prevent Claimants from pursuing their claims against Merrill Lynch**. Instead, it is aimed solely at ensuring that any outcome—whether in Merrill Lynch's favor or not—avoids forcing Merrill Lynch into the untenable position of having to comply (and necessarily not comply) with potentially conflicting orders. **All Merrill Lynch is asking is to allow the *Milligan* court to resolve a motion to certify a Rule 23(b)(1) class** before Claimants' arbitration proceeds, thus avoiding this problem. And in either event, **Claimants will still be able to pursue their claims**. Indeed, **once decided**, Claimants will either have

---

[9] Merrill's assertion that Intervenor-Plaintiffs filed "claims asking that the Plan be reformed," for example, is "shown below" in a chart containing two paragraphs Merrill has ripped from Count II of the FINRA Statement of Claim expressly seeking "recovery of benefits." *Compare Id.* at 4, second chart *with* Lax ¶ 4, Ex. A (FINRA Statement of Claim) 20-21 (Count II), ¶¶ 58-60. Intervenor-Plaintiffs do not seek, and could not seek, reformation of either Plan.

[10] Including their request for a declaration for the purpose constructive trust "for the benefit of Claimants." *See* Lax Dec ¶ 4, Ex. A (FINRA Statement of Claim) ¶ 54. Regardless, putative class claims for equitable relief under ERISA § 502(a)(3) are arbitrable. *Shafer*, 2023 WL at *27.

[11] *See Id.* at, *e.g.*, 1, *supra*, 4 ("staying this proceeding in FINRA until the court **has an opportunity** to resolve class certification in *Milligan*"), 5 (" "[w]hile no class has been certified today, the first-filed *Milligan* action should be **allowed to reach the certification stage first**, before this arbitration proceeds"), 6 ("this arbitration [should be] stayed **temporarily, to allow the Milligan court an opportunity** to determine class certification"; "it is essential to **defer these matters temporarily, until the Milligan court can determine** whether to certify the Rule 23(b)(1) class"), 7 ("**until the Milligan court can resolve that issue**, Claimants here necessarily could not be 'excluded from' or 'elect[] not to participate' in the Milligan class, 'according to conditions set by the court.'"; "allowing these claims to advance before **the Milligan court even has a chance** to rule on class certification would subvert Rule 13204's second purpose, by **undermining Mr. Milligan's right to bring his class claims in federal court**") (emphasis added); 8.

to participate in *Milligan*, as class members (**if certification is granted**), or be free to pursue their individual claims with FINRA (**if certification is denied**).

Therefore, Merrill Lynch respectfully asks that this matter be temporarily stayed, **pending a ruling on the motion for certification in *Milligan***. Merrill Lynch further requests that its deadline to respond to the Statement of Claim is stayed, pending the outcome of this request.

Lax Dec ¶ 6, Ex. C (emphasis added) (Combined FINRA Answer and Motion to Stay) 8.

Nowhere in Merrill's Answer and Motion to Stay, subsequent filings in the Arbitration and filings in other FINRA Arbitrations did Merrill disclose that Named Plaintiff has not filed a motion to certify the class, that Merrill opposes class certification, or that Named Plaintiff and Merrill had already, as of December 2, 2025, effectively agreed to try this case to summary judgment before the "Milligan court even has a chance to rule on class certification."  To the contrary:

Indeed, **the Milligan case presses forward**.  Any stay applied to this matter **would be limited**. The Milligan court has **entered an aggressive schedule, with a deadline for completing all discovery by April 4, 2025**.

*Id.* at 5 (emphasis added).  As discussed below, Merrill proceeded to acknowledge for the first time, at the bottom of page five of its brief, that it has a motion for summary judgment pending before this Court, but even then misrepresented these proceedings:

Merrill Lynch's request should be granted, **and this arbitration stayed temporarily, to allow the Milligan court an opportunity to determine class certification** or, **if sooner**, to resolve the central dispute underpinning Claimant's claims at summary judgment.

Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 5-6 (emphasis added).

On December 12, Intervenor-Plaintiffs filed notice with the Director pursuant to FINRA Rule 13204(a)(2):

Claimants hereby provide notice, pursuant to FINRA Rule 13204(a)(2), that they will not participate in the class action or in any recovery that may result from the class action [*Miligan*].

As Claimants have met the requirements of FINRA Rule 13204(a)(2), Claimants respectfully request that the Director **deny Merrill Lynch's "motion to stay" in its**

**entirely** and **refer any dispute to the Panel pursuant to FINRA Rule 13204 (a)(3)**.

Lax Dec ¶ 14, Ex. K (December 12, 2024 Notice) (emphasis added).

On December 17, Merrill filed a "reply in further support of" its Answer and Motion to Stay, representing again that "Merrill Lynch's motion asks only for a temporary pause of these proceedings until the *Milligan* court can decide whether that case will proceed as a ***mandatory*** class action under Rule 23(b)(1). If it does, this means *Milligan* class members—including Claimants— ***cannot opt-out***. *See* Mot. at 2, 4-5." *See* Lax Dec ¶ 15, Ex. L (emphasis original).

On December 18, the Director duly denied Merrill's requested "pause:

> Absent the parties' written agreement to stay, or a court order, this matter will proceed in accordance with FINRA's Code of Arbitration Procedure.  However, FINRA will refer this issue to the duly appointed panel for further consideration.

Lax Dec ¶ 7, Ex. D (FINRA Order).  Over Merrill's objection, FINRA subsequently conducted its standard rank and strike process, appointed the FINRA Panel, forwarded the parties' pleadings to the Panel, and otherwise proceeded with the Arbitration "in accordance with FINRA's Code of Arbitration Procedure."

On January 6, 2025, Named Plaintiff moved to amend his Complaint to assert a new claim the that the Equity Plan violates ERISA § 203 and numerous paragraphs of allegations relating to the Equity Plan and monetary damages, styled as "equitable relief" under ERISA § 502(a)(3) likely to be in the tens or hundreds of millions of dollars. *See* Doc 62 (Mtn. to Amend Compl.); Doc 62-2 (Proposed Amended Complaint (Redline)) ¶¶ 2, 22, 23, 25, 27, 29, 31, 33, 36, 38, 39, 66, 82, 84, 94. Prior to the Motion to Amend, neither party had alleged that the Equity Plan existed, referred to the Equity Plan, alleged any fact relating to the Equity Plan, or submitted the Equity Plan documents anywhere in the record, including on Merrill's Motion for Summary Judgment. Notwithstanding this, and that the Motion to Amend was timely filed on the deadline to amend the pleadings pursuant to the Case Management Order (*see* Doc 36, I (B)), Named Plaintiff

volunteered in his brief that "none of these changes impacts Defendants' pending motion for summary judgment." Doc 62-3

On January 14, Merrill and Named Plaintiff jointly moved "to stay this case except for Defendants' pending motion for summary judgment (ECF No. 41), until the Court issues its ruling on such motion." Doc 63 (Joint Motion to Stay), 1. The Joint Motion to Stay was filed three and a half months after Merrill filed its Motion for Summary Judgment and three months after "the parties proposed a stipulated schedule for certain additional discovery and the remaining briefing on Defendants' motion" and the Court entered it. *Id.* at ¶¶ 1-2. In the third paragraph, and first substantive sentence, of the Joint Motion, Merrill and Named Plaintiff offered this explanation for their "motion to stay this case":

> 3. In seeking leave, **Plaintiff stated that "none of these changes [in the proposed amended complaint] impacts Defendants' pending motion for summary judgment."** (ECF No. 62-3). Defendants **do not consent to the proposed amendment** and intend to preserve all rights and arguments in opposition to Plaintiff's motion. **However, Defendants agree it is unnecessary to brief and resolve that motion** at this time, because **if the Court grants Defendants' pending summary judgment motion** then any efforts undertaken by the parties and/or this Court in **resolving Plaintiff's motion for leave would have been unnecessary and wasteful.**

> 4. To conserve party and judicial resources, the Parties wish to **stay all proceedings except for Defendants' pending motion for summary judgment.** If granted, **this motion would end the lawsuit** (pending any appeal).

> 6. Other tasks remain as well. The parties need to depose various fact and expert witnesses, including Plaintiff, Defendants' corporate witness(es), and any experts. **Plaintiff intends to move for class certification**. The Parties may also need to file discovery motions related to document productions and deposition topics.

> 7. If Defendants' motion for summary judgment is granted after the parties have undertaken the above efforts, then none of those items will have been necessary, and the Parties and possibly the Court will have wasted resources and incurred unnecessary costs. The Parties prefer that the Court stay the case except for the summary judgment motion, and if that motion is denied, then the Court can reset the remaining deadlines and the case can resume.

*Id.* at ¶¶ 3-4 (emphasis added). Merrill did not disclose the FINRA arbitrations or its many motions

to "pause" them ostensibly "pending a ruling on the motion for certification" to Judge Keesler and has never disclosed them to the Court.

On January 16, Judge Keesler so ordered the Joint Motion to Stay. Doc 64. On January 22, 2025, Merrill submitted what it styled a "Notice to Panel of Motion to Stay" to the FINRA Panel, representing that:

> In the Motion, we requested that **the Panel** pause in [sic] this case from proceeding, at least temporarily, in the FINRA forum pending a ruling on **the motion for class certification** in a first-filed class action in federal court, *Milligan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, et al., No. 3:24-cv-00440 (W.D.N.C.). Therein, we also requested a stay of all case deadlines. The **Motion was then referred to the arbitrators** who would ultimately be appointed in this case. (See Exhibit B).

Lax Dec ¶ 16, Ex. M (Merrill Notice to Panel of Motion to Stay) 1 (emphasis added). Leaving aside that neither of these things is true,[12] Merrill's "Notice to Panel of Motion to Stay" effectively resubmitted its December 2 Combined Answer and Motion, without correction or revisions of its representations of the proceedings in this Court, and <u>expressly requests</u> an indefinite "pause" on the same ground that this Court should first rule on "the motion for class certification" without disclosing that Merrill had moved for, and received, a stay of all proceedings other than its own one-way Motion for Summary Judgment, including "the motion for class certification" that has never been filed.

During the February 13 Initial Prehearing Conference, Merrill reiterated its representation

---

[12] The Director ruled on Merrill's 13204 motion that the Intervenor-Plaintiffs' Arbitrable Claims "**shall not be arbitrated** under the Code" of Arbitration Procedure when he ordered that "absent the parties' written agreement to stay, or a court order, this matter will proceed in accordance with accordance FINRA's Code of Arbitration Procedure" and appointed the FINRA Panel. Intervenor-Plaintiffs expressly requested referral of "any dispute to the Panel pursuant to FINRA Rule 13204(a)(3)," which requires the Director to "refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel." As set forth below, while notice under 13204(a)(2)(B) satisfies the Code regardless, whether the Equity Claims are, as Merrill has repeatedly represented to FINRA, part of this class action is, at a minimum, "disputed."

that it was "only" seeking a stay "pending a ruling on the motion for certification in *Milligan*" and went further by insisting it was only talking about a delay of a few months. Merrill also disclosed to the Panel but never to this Court that there are approximately 32 FINRA arbitrations brought by approximately 240 former Merrill advisers asserting WealthChoice Claims, at least some of which Merrill claimed to have successfully "paused" "pending a ruling on the motion for certification in *Milligan.*" Finally, Merrill conceded that nothing in the Code requires or even authorizes the FINRA Panel to stay the FINRA Arbitration but argued that the Panel should either stay it anyway or set the schedule for the arbitration twice as far in the future so that this Court can rule on certification of a mandatory class. *See* Lax Dec ¶ 20. After Intervenor-Plaintiffs informed the FINRA Panel of the January 16 Order staying all proceedings in this Court other than Merrill's Motion for Summary Judgment and other factual and legal deficiencies in Merrill's December 2, 2024 Motion, Merrill argued that it should be permitted to file a revised brief to "update the Panel" on "new developments" in this Action. *Id.* at ¶ 21.

The FINRA Panel continued the Initial Prehearing Conference and gave Merrill the "opportunity to file a proper motion on notice," with briefs due on February 27, March 10 and March 17. *Id.* at ¶ 22

## II.     LEGAL STANDARD

On timely motion, "the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). "The Court of Appeals for the Fourth Circuit has provided three inquiries for courts to make in determining whether to allow intervention as of right: (1) an interest sufficient to merit intervention; (2) that without intervention, its interest may be impaired; and (3) that the present

litigants do not adequately represent its interests. *Rutherford County v. Bond Safeguard Ins. Co.*, No. 1:09-cv-292, 2009 WL 6543659, at *4 (W.D. N. Car. Dec. 3, 2009) *citing Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

"To establish the right to intervene, "[a]n applicant must establish that he has a 'significantly protectable' interest in the proceeding." *Volvo Grp. N. Am., LLC v. Truck Enterprises, Inc.*, No. 7:16-CV-00025, 2016 WL 1453061, at *3 (W.D. Va. Apr. 13, 2016) (*quoting Donaldson v. United States*, 200 U.S. 517, 531 (1971)).

> An applicant must also demonstrate that the denial of his motion to intervene would impair or impede his ability to protect his interest in the proceeding. To meet this burden, the applicant must establish that he would suffer a 'practical disadvantage' if it were not allowed to intervene. . . . But he does not have 'to go so far as to show that collateral estoppel or res judicata principles would affect any later action that may be brought.

*Id.* (internal citation omitted). "When faced with a motion to intervene, the court should err on the side of inclusiveness. 'Liberal intervention,' the Fourth Circuit has instructed, 'is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and just due process.'" *Id.* (*quoting Hill v. W. Elec. Co.* 672 F.2d 381, 385-86 (4th Cir. 1982)).

### III.    ARGUMENT

The Motion to Intervene is timely. *See* I(C), *supra*. *See, e.g., Telectronics,* 221 F.3d at 882 (holding that in mandatory class action, a motion to intervene is timely even if filed after certification and notice of settlement); *Securities and Exchange Commission v. Creative Capital Consortium, LLC*, 2015 WL 4077451 at *2 (S.D. Fla 2015). Regardless, neither Merrill nor Named Plaintiff can possibly claim prejudice. In this putative mandatory class action, no motion for class certification has been filed or will be filed in the foreseeable future and all proceedings other than Merrill's Motion for Summary Judgment are indefinitely stayed.

Intervenor-Plaintiffs are—against their will—putative members of the proposed Rule 23(b)(3) opt-out class and Rule 23(b)(1)(A), (b)(1)(B) or (b)(2) mandatory class. *See* 7, *supra*. Simultaneously, Intervenor-Plaintiffs are actively arbitrating their ERISA claims[13] with Merrill in the FINRA Arbitration. Merrill has admitted it is bound to submit this dispute with Intervenor-Plaintiffs (and all putative members of the proposed class) to FINRA arbitration and expressly, affirmatively and specifically submitted the WealthChoice Plan Claims to arbitration before the FINRA Panel in a <u>post-dispute</u> Uniform Submission Agreement. Lax Dec ¶ 5, Ex. B.

On these already extraordinary facts, Intervenor-Plaintiffs would have the right to intervene under Rule 24(a)(2). *See U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 940 (D. Md. 2004) (holding that an intervening party is "clearly entitled to [a] stay" when its dispute is subject to a mandatory arbitration clause); *In re Telectronics Pacing Sys., Inc.,* 221 F.3d 870, 881 (6th Cir. 2000). As set forth more fully by the Proposed Motion, Intervenor-Plaintiffs' ERISA claims are arbitrable. *See Dorman*, 780 F. App'x at 513–14 (9th Cir. 2019); *Smith v. Bd. of Directors of Triad Mfg., Inc*., 13 F.4th 613, 620 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable. […] So the FAA applies with full force to claims under ERISA.") (collecting cases) (internal citations omitted). Intervenor-Plaintiffs' ERISA WealthChoice Claims are arbitrable notwithstanding Named Plaintiff's as-yet unpursued allegations of a mandatory class. *See* Lax Dec ¶ 7, Ex. D (FINRA Order); ¶ 20. Intervenor-Plaintiffs' ERISA WealthCoice Claims are arbitrable notwithstanding Named Plaintiff's attempt to disguise claims for individual monetary damages caused by individual forfeitures of individual ERISA plan accounts under an ERISA defined contribution

---

[13] Both WealthChoice Plan Claims Named Plaintiff purports to bring on behalf of the WealthChoice Plan and the putative class and Equity Plan Claims that Named Plaintiff asserted for the first time five weeks ago on the Motion to Amend he immediately moved to stay.

plan as a plan-wide ERISA § 502(a)(2) claim for breach of fiduciary duty. *See Shafer*, 2023 WL at 24-27 (S.D.N.Y. 2023). *See also LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 256 (2008); *Smith*, 13 F.4th at 622 (7th Cir.).

Named Plaintiff may dispute that the WealthChoice Claims are arbitrable or that 9 U.S.C. § 3 requires a stay of all proceedings, but he cannot colorably dispute that Intervenor-Plaintiffs have an interest in intervening to <u>raise</u> arbitrability and the ongoing FINRA arbitrations between Merrill and at least <u>240</u> putative members of the proposed class with the Court. No party to this Action has disclosed even the existence of the FINRA arbitrations to the Court, even after the Joint Motion to Stay made their existence indisputably material to the Court. Named Plaintiff would be adverse to Intervenor-Plaintiffs on arbitrability and certification of a mandatory class even if he and putative class counsel had not made decisions in litigation that directly necessitated this Motion. Here, Named Plaintiff and class counsel failed to move for class certification class counsel considered "routine under Rule 23 (b)(1)" for nine months, four of them after Merrill filed a one-way motion for summary judgment, before moving to indefinitely stay <u>all</u> proceedings, including any putative motion to certify, for the <u>purpose</u> of ensuring Merrill's Motion for Summary Judgment—on what the parties describe as the dispositive issue on the putative class claims—is decided first. *See* 8, *supra*.

The issues Intervenor-Plaintiffs move to put before the Court are the arbitrability of the putative class claims, a mandatory stay under 9 U.S.C. § 3, vacating the January 16 Order granting the Joint Motion to stay these proceedings, and staying Merrill's Motion for Summary Judgment at least until the Court has ruled on class certification. Named Plaintiff and his counsel do not and cannot adequately represent Intervenor-Plaintiffs' interests in any of them.

Merrill cannot dispute that the WealthChoice Claims are arbitrable. Merrill has submitted them to arbitration. Merrill cannot dispute that Intervenor-Plaintiffs have a clear and immediate

interest in intervening to protect their arbitration rights and (finally) raise class certification with the Court. Merrill has spent two and a half months vigorously adding to it. Merrill cannot dispute that "denial of [Plaintiff-Intervenors'] motion to intervene would impair or impede his ability to protect his interest." Merrill has spent two and a half months representing to FINRA that they cannot opt-out and cannot notice that they will not participate in any recovery. Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 4-5; Ex. L (Merrill Reply ISO Answer and Motion to Stay) 1-2.

Given the foregoing, Merrill's one-way Motion for Summary Judgment is a matter of urgent interest for Intervenor-Plaintiffs and, for that matter, every putative member of the proposed class, many of whom likely have no knowledge of this Action and none of whom have received or will receive notice before a ruling that, in the view of both Merrill and putative class counsel, will be dispositive of the WealthChoice Claims. Coming prior to class certification, a ruling in Merrill's favor will not be formally binding on putative members of the proposed class, but this formality will not save any putative class member's practical right to arbitrate. "An [applicant to intervene as of right] does not have 'to go so far as to show that collateral estoppel or res judicata principles would affect any later action that may be brought'" (*see Volvo*, 2016 WL at *3) because, as the Fifth Circuit has explained:

> Given the binding effect of a federal judgment, as well as the factual similarities in [the plaintiff's] asserted claims, the ICC arbitrator would necessarily be strongly influenced to follow the court's determination. That is, [the party to the arbitration's] liability will incontrovertibly be seriously affected by the court's determination of [the party to the litigation's] liability.

*Waste Management, Inc., v. Residuos Industriales Multiquim, S.A.*, 372 F. 3d 339, 342 (5th Cir. 2004) (emphasis in original) (holding that a stay under 9 U.S.C. § 3 should apply to an entire action and all parties to it, including non-parties to an arbitration agreement).

In its various motions to FINRA, Merrill, too, has explained the "incontrovertibl[e]" effect

of summary judgment in its favor on Intervenor-Plaintiffs'—and all putative class members' other

than Kelly Milligan—WealthChoice Claims and arbitration rights:

> [A]s Claimants acknowledge in their Statement of Claim, Merrill Lynch filed a motion for summary judgment in Milligan on September 30, 2024. This motion asks the district court to dismiss Mr. Milligan's claims with prejudice because there is no genuine dispute of material fact preventing it from holding that **ERISA does not govern the WealthChoice Plan. That is the very same underlying legal issue Claimants now raise here—or, in their own words, "the dispositive question in every one of these disputes with every unnamed putative class member." SOC ¶ 14. […]**

> On these specific facts, Merrill Lynch's request should be granted, and this arbitration stayed temporarily, to allow the Milligan court an opportunity to determine class certification or, **if sooner**, to r**esolve the central dispute underpinning Claimant's claims at summary judgment.** If the Milligan court does not certify a mandatory class, or if the summary judgment motion is granted, this matter can proceed (either because no class is certified at all or, if a Rule 23(b)(3) class is certified, assuming Claimants opt out of the Milligan class and/or submit any requisite notice under Rule 13204(a)(2)). But if the Milligan court certifies a mandatory class under Rule 23(b)(1) and the summary judgment motion is denied, Claimants here would already be members of that certified class and, therefore, would be pursuing the same claims in Milligan as they now seek to pursue. Either way, **there is no valid reason to allow Claimants to pursue identical claims in FINRA at the same time a putative class action is pending that may resolve those very same claims on their behalf.**

Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 5 (emphasis added).

Even if Merrill had not taken numerous steps—many of them indisputably deceptive—for

the admitted purpose of securing a ruling on summary judgment it may then use against putative

class members in arbitration, this is the paradigmatic case in which intervention is necessary to

protect the rights and interests of third-parties.

For the foregoing reasons, the Intervenor-Plaintiffs have satisfied the elements of Fed. R.

Civ. P. 24(a)(2).[14] The Intervenor-Plaintiffs respectfully request that the Court (1) grant the Motion

---

[14] In the alternative, Intervenor-Plaintiffs should be permitted to intervene pursuant to Rule 24(b)(3). "In general, on timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(3). There can be no dispute that this Action and the FINRA Arbitration share common issues of fact and law (*see* 5, *supra*) and that Intervenor-Plaintiffs' interests in this Action

and allow them to intervene pursuant to Fed. R. Civ. P 24(a)(2) or 24(b)(3); (2) grant the Proposed

Motion; and (3) grant such further relief as the Court deems just and proper.

Dated: February 14, 2024

**Teague Campbell Dennis & Gorham, LLP**

_/s/Jacob Wellman_
Jacob Wellman
PO Box 19207
Raleigh, NC  27619
Telephone: 919.719.4734
Email:  JWellman@teaguecampbell.com
_Local Counsel to Proposed_
_Intervenor-Plaintiffs_

**Lax & Neville, LLP**

_/s/ Barry R. Lax_
Barry R. Lax
350 Fifth Ave. Suite 4640
New York, NY 10118
Telephone: 212-696-1999
Email: blax@laxneville.com
_Attorneys for Proposed_
_Intervenor-Plaintiffs_

---

diverge from Named Plaintiffs' and Merrill's (_see_ 22, 23, _supra_).  Merrill and Named Plaintiff, who have together created the circumstances necessitating intervention, will not be prejudiced by the Court's consideration of certification and arbitrability issues, both for Intervenor-Plaintiffs' interests and those of the <u>unrepresented</u> putative class members who have no notice of these proceedings, prior to ruling on what Merrill and Named Plaintiff have represented to the Court is the dispositive issue in this case.

## CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE

I, Barry R. Lax, an attorney, certify, as required by the Court's June 18, 2024 Order in *In re Use of Artificial Intelligence*, No. 3:24-mc-104 (W.D.N.C), that:

1- No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw and Lexis; and

2- Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Barry R. Lax*_____

Barry R. Lax, Esq.

## CERTIFICATE OF SERVICE

I, Jacob Wellman, an attorney, hereby certify that on February 14, 2025, a copy the foregoing document was filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/Jacob Wellman*
Jacob Wellman, Esq.