**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

KELLY MILLIGAN, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED,

          Plaintiff,

          -against-

MERRILL LYNCH, PIERCE, FENNER &
SMITH INC., BANK OF AMERICA CORP.,
and JOHN/JANE DOE 1, THE SENIOR VICE
PRESIDENT–HUMAN RESOURCES
GLOBAL BANKING AND GLOBAL
WEALTH AND INVESTMENT
MANAGEMENT ADMINISTRATION AT
BANK OF AMERICA CORP.,

          Defendants,

and

JEFFREY DeWEES, REINHOLD WIGAND,
JAY TAMKOC, WILLIAM SCHELLEN-
BERG, MATTHEW MENDOZA, LUKE
McKELVY and ALON HAIM,

          Proposed Intervenor-Plaintiffs.

Civil Action No. 3:24-cv-00440
KDB-DCK

Judge Kenneth D. Bell

Magistrate Judge David Keesler

**MEMORORANDUM OF LAW IN SUPPORT OF
PROPOSED INTERVENOR-PLAINTIFFS'
MOTION TO STAY PENDING ARBITRATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

PRELIMINARY STATEMENT ................................................................................... 1

    I.     FACTUAL AND PROCEDURAL HISTORY ....................................... 1

        A.  THE FINRA ARBITRATION CLAIMS AND NAMED PLAINTIFF'S CLAIMS ..................................................................................... 1

        B.  CONTRACTUAL AND REGULATORY OBLIGATION TO ARBITRATE ...................................................................................... 6

    II.    STANDARD OF REVIEW ................................................................. 10

    III.   ARGUMENT ...................................................................................... 12

        A.  THIS ACTION SHOULD BE STAYED PENDING FINRA ARBITRATIONS ........................................................................... 12

        B.  THE COURT SHOULD VACATE THE JANUARY 16 ORDER AND STAY ALL PROCEEDINGS PENDING A MOTION FOR CLASS CERTIFICATION, IF ANY ......................................................... 18

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases Cited

*Adkins v. Lab. Ready, Inc.,*
303 F.3d 496, 500 (4th Cir. 2002) ........................................................................... 11, 12

*Am. Heart Disease Prevention Found., Inc. v. Hughey,*
106 F.3d 389 (4th Cir. 1997) ......................................................................................... 12

*Daniel v. Stericycle Inc.,*
No. 3:20-CV-655-RJC-DCK, 2021 WL 8054177 (W.D.N.C. Nov. 24, 2021) ........................... 12

*Dorman v. Charles Schwab Corp.,*
780 F. App'x 510, 513–14 (9th Cir. 2019) ............................................................... 8, 20

*Medical Search Consultants, LLC v. Pasture Gate Holdings, Inc.,*
1:23-cv-00118, 2023 WL 8532400 (W.D.N.C. 2023) ................................................. 15

*Shafer v. Morgan Stanley,*
No. 20 CIV. 11047 (PGG), 2023 WL 8100717 (S.D.N.Y. 2023) ........................................ *passim*

*Smith v. Bd. of Directors of Triad Mfg., Inc.,*
13 F.4th 613, 620 (7th Cir. 2021) ..................................................................... 11, 12, 20

*Tolbert v. RBC Capital Mkts. Corp.,*
759 F.3d 619, 625 (5th Cir. 2014) ...................................................................................... 3

*United States v. Bankers Ins. Co.,*
245 F.3d 315, 325 (4th Cir. 2001) ................................................................................. 8, 12

*U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.,*
349 F. Supp. 2d 934, 940 (D. Md. 2004) ..................................................................... 11, 15

*Waste Management, Inc., v. Residuos Industriales Multiquim, S.A.,*
372 F. 3d 339, 342 (5th Cir. 2004) ............................................................................... 11, 14

*Wilson v. Safelite Grp., Inc.,*
930 F.3d 426, 434-435 (6th Cir. 2019) ............................................................................... 3

## Rules Cited

9 U.S.C. § 3 ........................................................................................................... *passim*
FINRA Rule 13200 ...................................................................................................... 6, 8
FINRA Rule 2263 ............................................................................................................. 7
FINRA Rule 2010 ............................................................................................................. 7
FINRA Rule IM-13000 ................................................................................................. 7, 8
Fed. R. Civ. Pro. Rule 23 ......................................................................................... *passim*

i

Proposed Intervenor-Plaintiffs Jeffrey A. DeWees, Luke Roy McKelvy, William S. Schellenberg, Jay Tamkoc, Alon Haim, Matthew D. Mendoza, and Reinhold Wigand (collectively "Intervenor-Plaintiffs") hereby submit their Memorandum of Law in support of their Proposed Motion to stay this Action pursuant to 9 U.S.C. § 3 (the Federal Arbitration Act) or, in the alternative, vacate the January 16, 2025 Order staying all non-summary judgment proceedings, stay Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corp.'s (collectively "Merrill Lynch") Motion for Summary Judgment and all other proceedings in this Action stayed pending Named Plaintiff Kelly Milligan's motion for class certification, if any.

## PRELIMINARY STATEMENT

For the reasons set forth below and in Intervenor-Plaintiffs' Motion to Intervene, a stay of this proceeding is mandatory under 9 U.S.C. § 3 and should apply to the entire proceeding pending the FINRA Arbitration. In the alternative, to protect the interests of both Intervenor-Plaintiffs, the hundreds of parties to FINRA arbitrations with Merrill Lynch and the unknown number of putative members of this proposed but as yet un-pursued mandatory class action, the January 14, 2025 Order should be vacated and this action stayed pending Named Plaintiff's motion to certify, if any.

## I. FACTUAL AND PROCEDURAL SUMMARY[1]

## A. THE FINRA ARBITRATION CLAIMS AND NAMED PLAINTIFF'S CLAIMS

Merrill Lynch is a broker-dealer and FINRA member firm. *See* Doc 1 (Compl.) ¶ 13; Doc 25 (Answer) ¶ 13. *See also* Lax Dec ¶ 8, Ex. E (Merrill Lynch FINRA CRD Report).

Each of the Intervenor-Plaintiffs was at all relevant times a financial advisor and associated

---

[1] To reduce duplication, this summary sets forth those facts directly relevant to the requirements of 9 U.S.C. § 3. Intervenor-Plaintiffs otherwise incorporate by reference the factual and procedural overview set forth by the Motion to Intervene. All citations are to the Lax Declaration submitted in support of the Motion to Intervene and Proposed Motion.

person of Merrill Lynch. *See* Lax Dec ¶ 4, Ex. A (FINRA Statement of Claim) ¶¶ 2-9; ¶ 9, Ex. F (Intervenor-Plaintiffs' CRD Reports).

Named Plaintiff Kelly Milligan and the members of the putative class were at all relevant times financial advisors and associated persons of Merrill Lynch. *See* Doc 1 (Compl.) ¶ 53; Doc 25 (Answer) ¶¶ 5, 11, 53; Doc 41-32 (MSJ Ex. 4 "Milligan BrokerCheck Report") at 4.

On October 7, 2024, Intervenor-Plaintiffs filed the FINRA Arbitration under the FINRA Code of Arbitration Procedure for Industry Disputes (the "Code") claiming more than $2 million in monetary damages for purported forfeitures of deferred commissions under the WealthChoice Contingent Award Plan ("WealthChoice Plan") and Bank of America Corporation Equity Plan ("Equity Plan"). *See DeWees et al v. Merrill Lynch*, FINRA No. 24-02157 (the "FINRA Arbitration"), FINRA Statement of Claim at Lax Dec Dec ¶ 4, Ex. A. Intervenor-Plaintiffs allege that each Intervenor-Plaintiff generated revenue for Merrill Lynch by providing investment advice and other services to his clients and earned a percentage of revenue on a fixed, formulaic and non-discretionary commission basis. *See Id.* at 1, ¶¶ 3-9, 21. Merrill Lynch took involuntary deferrals from Intervenor-Plaintiffs' commissions under the WealthChoice Plan and allocated them to "accounts notionally invested through Merrill Lynch's investment platform." *Id.* at ¶¶ 22-26.[2] Following Intervenor-Plaintiffs' voluntary terminations, Merrill Lynch purported to forfeit their deferred commission under the Cancellation Rule. *Id.* at ¶¶ 27-28, 59, 66-69, 70-107.

The WealthChoice Plan and Equity Plan are defined contribution ERISA Plans. *Id.* at ¶¶ 21-47. *See, e.g.*, *Shafer v. Morgan Stanley*, No. 20 CIV. 11047 (PGG), 2023 WL 8100717, 2-7, 15-20 (S.D.N.Y. 2023), *recons denied Shafer v. Stanley,* 2024 WL 4697235, at *15 (S.D.N.Y.

---

[2] Commissions deferred under the Equity Plan were "converted to a RSU equivalent to one share of Bank of America common stock and convertible to either cash or common stock after 'vesting.'" *Id.* at ¶ 25.

Nov. 5, 2024) (rejecting arguments materially identical to Merrill Lynch's in this case and holding Morgan Stanley's materially identical deferred compensation plans are ERISA plans); *Wilson v. Safelite Grp., Inc*., 930 F.3d 426, 434-435 (6th Cir. 2019); *Tolbert v. RBC Capital Mkts. Corp*., 759 F.3d 619, 625 (5th Cir. 2014). Merrill Lynch's purported forfeiture of Intervenor-Plaintiffs' deferred commissions under the WealthChoice Plan and Equity Plan violated ERISA § 203. *Id.* at ¶¶ 4, 48-51.

Intervenor-Plaintiffs assert claims for commissions deferred to individually held WealthChoice Plan accounts ("WealthChoice Claims") and Equity Plan RSUs ("Equity Claims") and purportedly forfeited in violation of ERISA § 203, California Labor Code §§ 201, 202, 221 and 224, California Business and Professions Code §§ 17200 and 17202 and Colo. Rev. Stat. Ann. §§ 8-4-105 and 8-4-10, breach of contract, breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment. *See Id.* at ¶¶ 56-107. Intervenor-Plaintiffs seek monetary damages; a declaration "that with respect to Merrill Lynch advisors" the WealthChoice Plan and Equity Plan are ERISA plans, the Cancellation Rule violates ERISA, and deferral of commissions into the violative WealthChoice Plan and Equity Plan violated ERISA, <u>for the purpose of establishing constructive trust</u> over the amounts withheld, with penalties, interest and attorneys' fees, "for the benefit of Claimants" (¶54, i-iv); and injunctive relief <u>as to themselves</u>. *See Id.* at ¶¶ 56-107.

This Action was filed on April 30, 2024 "as a class action under Rule 23 of the Federal Rules of Civil Procedure" and defined the putative class as:

> All former Merrill Lynch financial advisors who forfeited deferred compensation in the WealthChoice Contingent Award Plan from April 30, 2018, until the date of judgement because of the Cancellation Rule. Excluded from the Class are Defendants and any individuals who are subsequently determined to be fiduciaries of the WealthChoice Contingent Award Plan.

Doc 1 (Compl.) ¶ 53. In his Complaint, Named Plaintiff alleges:

2.      Commissions are based on the revenue generated by client investment activities. Defendants automatically allocate a portion of commissions in the WealthChoice Contingent Award Plan (the "Plan"). **The commissions are allocated to individual Plan accounts for each FA.** Under the relevant Plan award agreements, commissions "vest" in eight years. Merrill Lynch causes FAs to forfeit the value in their Plan accounts if they leave Merrill Lynch before these vesting dates (the "Cancellation Rule").

5.      Plaintiff worked as an FA at Merrill Lynch and, when he left Merrill Lynch, Defendants invoked the Cancellation Rule to deny him the deferred compensation that he earned under the FA Deferred Compensation Program.

6.      Plaintiff seeks an Order from the Court under ERISA § 502(a)(3) declaring that the Plan is subject to ERISA and that the Cancellation Rule violates ERISA's vesting and anti- forfeiture requirements. **He seeks the payment of his and the other class members' deferred compensation that was wrongfully forfeited.**

21. FAs have **individual, notional Plan accounts** for each award they receive, i.e., they have an account for each year's deferred compensation. **FAs can invest their accounts in notional investments, like in a 401(k) plan, with the value of their accounts tracking the performance of the selected investments**. 2018 Award Agreement, § 1.

*Id.* at ¶¶ 2, 5, 6, 21 (emphasis added); Doc (Answer) ¶¶ 21, 24-25).

Named Plaintiff asserts a claim to recover, as monetary damages or in disgorgement, deferred commissions in individually held WealthChoice Plan accounts forfeited in violation ERISA § 203 (also "WealthChoice Claims") and purports to seek on behalf of the WealthChoice Plan and/or the putative class (i) "a full range of equitable relief under ERISA § 502(a)(3)" (Count I) including reformation of the WealthChoice Plan (Count II, ¶¶ 67-68) and restoration of each putative class member's forfeited deferred commissions by John/Jane Doe 1 for breach of fiduciary duty under ERISA § 502(a)(2) (Count III) and (ii) recovery of each putative class member's forfeited deferred commissions under ERISA § 502(a)(1)(B) (Count II, ¶¶ 69-70). *See* ¶¶ 61-80; 19-21 ("Relief").

In the April 30, 2024 Complaint, Named Plaintiff alleges "certification is warranted" under one of Rule 23(b)(1)(A) or (B), (b)(2) or (b)(3). *See* Doc 1 (Compl.) ¶¶ 58-59. Paragraphs 58 and

59 parroting the requirements of b(1)(A), b(1)(B) and b(2) are to date the entire record on certification of a mandatory class. A motion to certify has not been filed and, following Merrill Lynch and Named Plaintiff's January 14, 2025 Joint Motion to Stay, so ordered on January 16,[3] cannot be filed until <u>after</u> this Court rules on Merrill Lynch's Motion for Summary Judgment. *See* Doc 63 (Joint Motion to Stay). In its various motions to "pause" the FINRA Arbitrations, Merrill Lynch has repeatedly represented to FINRA that Merrill Lynch's Motion for Summary Judgment "that ERISA does not govern the WealthChoice Plan…the very same underlying legal issue Claimants now raise here" "may resolve [Intervenor-Plaintiffs'] very same claims on their behalf." Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 5-6. Merrill Lynch and Named Plaintiff agreed in their Joint Motion to Stay that a ruling for Merrill Lynch on the applicability of ERISA "would end the lawsuit" and getting to such "items" as "mov[ing] for class certification" of the putative mandatory class "will have been unnecessary." Doc 63 ¶¶ 4, 6-7. *See* Mtn. to Intervene 15-19.

Intervenor-Plaintiffs are former Merrill Lynch "financial advisors who forfeited deferred compensation in the WealthChoice Contingent Award Plan" after April 30, 2018 "because of the Cancellation Rule" and are therefore putative members of the proposed class. As set forth below, however, Merrill Lynch and Intervenor-Plaintiffs, like every member of the putative class, have a contractual and regulatory "mandatory and non-waivable obligation to arbitrate disputes," including this one; Intervenor-Plaintiffs and Merrill Lynch have <u>actually submitted</u> the WealthChoice Claims and all defenses, counterclaims and third-party claims to arbitration in a further <u>post-dispute</u> written arbitration agreement; and Merrill Lynch has <u>actually submitted</u> to at

---

[3] Merril Lynch did not disclose the existence of, its written submission to or its attempts to "pause" the FINRA Arbitrations "pending a ruling on the motion for certification in *Milligan*" to Judge Keesler, just as it has <u>still</u> not disclosed the January 16 stay to FINRA. *See* Mtn. to Intervene, 17-20.

least two other FINRA arbitrations with 25 former Merrill Lynch advisors involving the same WealthChoice Claims, among others (together the "FINRA Arbitrations"). *See* Lax Dec ¶ 18 (attesting to FINRA arbitrations in the personal knowledge of counsel, who represents claimants in these arbitrations; there likely are or will be additional arbitrations brought by other firms). This firm alone represents 103 former Merrill Lynch advisors who have filed or intend to file FINRA arbitrations asserting WealthChoice Claims and other claims against Merrill Lynch. *See Id.*

On February 13, Merrill Lynch represented that there are at least 32 other FINRA arbitrations brought by at least 240 former Merrill Lynch advisers asserting WealthChoice Claims, at least some of which Merrill Lynch claimed to have successfully "paused" "pending a ruling on the motion for certification in *Milligan.*"

## B. CONTRACTUAL AND REGULATORY OBLIGATION TO ARBITRATE

As a condition of its membership in FINRA and license to do business in the securities markets of the United States, Merrill Lynch agreed "to comply with the federal securities laws, the rules and regulations thereunder…FINRA By-Laws, and all rulings, orders, directions and decisions issued…under the [FINRA] Rules." Lax Dec ¶ 10, Ex. G (FINRA By-Laws) Art. V: Application for Registration. This includes the obligation to submit all disputes with associated persons to arbitration under the Code:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> - Members;
> - Members and Associated Persons; or
> - Associated Persons

FINRA Rule 13200 "Required Arbitration."[4]   The Code defines "Associated Person" as "[a]

---

[4] All provisions of the FINRA Code cited herein are submitted herewith at Exhibit H to the Lax Declaration.

natural person who is registered or has applied for registration under the Rules of FINRA…"

(FINRA Rule 13100(r)),

As a condition of their securities licenses, Intervenor-Plaintiffs, Named Plaintiff and all putative class members were also required to agree to submit all disputes to arbitration:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Form U4 "Uniform Application for Securities Industry Registration or Transfer," Section 15(A), at Lax Dec ¶ 12, Ex. I. Merrill Lynch was required to provide an associated person with a written acknowledgment of an amendment to the Form U4:

> The Form U4 contains a predispute arbitration clause. It is in item 5 of Section 15A of the Form U4. You should read that clause now. Before signing the Form U4, you should understand the following:
>
> (1) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

FINRA Rule 2263 "Arbitration Disclosure to Associated Persons Signing or Acknowledging Form U4").

It is a violation of FINRA Rule 2010 (Standards of Commercial Honor and Principles of Trade) "for a member to require associated persons to waive the arbitration of disputes contrary to the provisions of the Code of Arbitration Procedure" (FINRA Rule IM-13000) and the failure of either a member firm or associated person to submit to FINRA arbitration is sanctionable up to suspension or expulsion from the securities industry. *See* Lax Dec ¶ 10, Ex. G (FINRA By-Laws) at Art. XIII. In Regulatory Notice 16-25 (2016), FINRA emphasized to member firms and

associated persons that "FINRA's arbitration rules are not default rules. **FINRA Rule 13200 specifically states that industry disputes must be arbitrated at FINRA**, except as otherwise provided in the Industry Code." FINRA RN 16-25 (emphasis added), at Lax Dec ¶ 13, Ex. J at 6 (emphasis added). "Through IM-13000, FINRA has made clear to **member firms and associated persons that they have the mandatory and non-waivable duty to arbitrate disputes**, and (with certain exceptions) to arbitrate them before FINRA." *Id.* (emphasis added). FINRA specifically warned member firms and associated persons against violating or seeking to abrogate FINRA Rule 13200. *Id.*

A claim for benefits under ERISA is arbitrable in FINRA (*see Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513–14 (9th Cir. 2019)) ("As every circuit to consider the question has held, ERISA contains no congressional command against arbitration, therefore an agreement to arbitrate ERISA claims is generally enforceable"), including a claim for individual monetary damages purported to be asserted under ERISA § 502(a)(2) or § 502(a)(3) (*see Shafer*, 2023 WL at 23-28 (S.D.N.Y. 2023). *See also United States v. Bankers Ins. Co.*, 245 F.3d 315, 325 (4th Cir. 2001) (holding that as "[s]tatutory civil claims are subject to the arbitration process" the United States was bound to arbitrate claims brought under the False Claims Act).

On December 3, 2024, Merrill Lynch executed and filed its FINRA Uniform Submission Agreement "submit[ting] the present matter in controversy… to arbitration in accordance with the FINRA By-Laws, Rules and Code of Arbitration Procedure" on December 3:

**FINRA ARBITRATION Submission Agreement**

In the Matter of the Arbitration Between

_____

     Name(s) of Claimant(s)

Jeffrey A. Dewees
Alon Haim
Luke Roy McKelvy
Matthew D. Mendoza
William A. Schellenberg
Jay Tamkoc
Reinhold Wigand

                                  24-02157

     Name(s) of Respondent(s)

Merrill Lynch Pierce Fenner & Smith Inc.

_____

1.  The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

2.  The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3.  The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of FINRA Dispute Resolution Services or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4.  The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

---

5.  The parties hereto have signed and acknowledged the foregoing Submission Agreement.

| /s/ Anahi Cruz (Attorney for Respondent) | 12/03/2024 |
|---|---|
| Merrill Lynch Pierce Fenner & Smith Inc. | Date |
| State Capacity if other than individual (e.g., executor, trustee, corporate officer) | |

Lax Dec ¶ 5, Ex. B (Merrill Lynch FINRA Uniform Submission Agreement).  Intervenor-Plaintiffs

filed their own Uniform Submission Agreements on October 7, 2024.  *See* Lax Dec ¶ 5, Ex. B.

     One day prior to filing its Uniform Submission Agreement, Merrill Lynch filed a

9

"Combined Answer and Motion to Stay" to the Director of FINRA Dispute Resolution. *See* Lax Dec ¶ 6, Ex. C (Merrill Lynch Combined Answer and Motion to Stay). In anticipation of the Uniform Submission Agreement it would file the next day, Merrill Lynch conceded on nearly every page of its Answer and Motion that it is required to arbitrate Plaintiff-Intervenors' claims against it in FINRA. *See Id.* at 1, 2, 4, 5, 6, 7, 8. Merrill Lynch simultaneously moved the Director to "pause" the Arbitration "temporarily" pending this Court's "ruling on the motion for certification in *Milligan*," representing that the claims in *Milligan* and the FINRA Arbitration are "identical" and that "[a]ll Merrill Lynch is asking is to allow the Milligan court to resolve a motion to certify a Rule 23(b)(1) class before Claimants' arbitration proceeds." *See Id.* at 1, 4-6, 8.

The Director denied Merrill Lynch's "pause" on December 18. *See* Lax Dec ¶ 7, Ex. D. Despite this, and its January 14 Joint Motion to Stay so ordered on January 16, Merrill Lynch continues to pursue it with the FINRA Panel (*see* Lax Dec ¶ 16, Ex. M (Merrill Lynch January 22, 2025 Notice to Panel of Motion to Stay)) and in at least two other FINRA Arbitrations (*See Id.* at ¶ 17). In its December 2 Combined Answer and Motion to Stay, Merrill Lynch declared that its request for a "pause" would apply to any arbitration filed in FINRA asserting ERISA claims against it. *See Id.* at ¶ 6, Ex. C (Merrill Lynch Combined Answer and Motion to Stay) 2, 6-7.

On February 13, Merrill Lynch represented that it has filed motions to "pause" to the Director and FINRA panels in some or all of more than thirty other FINRA arbitrations with at least 240 other former Merrill Lynch employees asserting WealthChoice Claims. *See Id.* at ¶ 19. These facts are set forth more fully by Intervenor-Plaintiffs' accompanying Motion to Intervene. *See* MOL on Motion to Intervene I(C).

## II.    STANDARD OF REVIEW

The Federal Arbitration Act requires a district court to stay its proceedings on any issue referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon **any issue referrable to arbitration under an agreement in writing for such arbitration**, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall**, upon application of **one of the parties** stay the trial of the action **until such arbitration has been had in accordance with the terms of the agreement**. . . .

9 U.S.C. 3 (emphasis added).

"Here, as in other contexts, the use of the word 'shall' creates an obligation impervious to judicial discretion. That plain statutory text requires a court to stay the proceeding. Indeed, this Court previously noted that the use of 'shall' in neighboring sections of the FAA created a mandatory obligation that left no place for the exercise of discretion by a district court. The same is true here. When § 3 says that a court 'shall ... stay' the proceeding, the court must do so*." Smith v. Spizzirri,* 601 U.S. 472, 476 (2024) (resolving circuit split on district court's discretion to dismiss rather than stay under Section 3 in case in which entire class action ultimately stayed pending arbitration of certain claims). *See also Adkins v. Lab. Ready, Inc*., 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory.").

 "The grammatical structure of this sentence would seem to make clear that *any* of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement." *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F. 3d 339, 342 (5th Cir. 2004) (emphasis original). *See U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 940 (D. Md. 2004) (intervenor "clearly entitled to [a] stay" when claims subject to arbitration agreement).

"When arbitration is likely to settle questions of fact pertinent to nonarbitrable claims, considerations of judicial economy and avoidance of confusion and possible inconsistent results

... militate in favor of staying the entire action. In such cases, the stay can apply to parties who may play no role in the arbitration." *Am. Heart Disease Prevention Found., Inc. v. Hughey*, 106 F.3d 389 (4th Cir. 1997) (internal quotation and citation omitted).

## III. ARGUMENT

### A. THIS ACTION SHOULD BE STAYED PENDING FINRA ARBITRATIONS

It is indisputable that these proceedings must be stayed as to Intervenor-Plaintiffs. Merrill Lynch and Intervenor-Plaintiffs have a contractual and regulatory obligation to arbitrate the WealthChoice Plan Claims, Merrill Lynch and Intervenor-Plaintiffs have both executed and filed <u>post-dispute</u> agreements specifically submitting the WealthChoice Plan Claims and all defenses, counterclaims and third-party claims to FINRA arbitration, and Merrill Lynch and Intervenor-Plaintiffs are in arbitration. *See* I, *supra.* A stay is mandatory. *Bankers*, 245 F.3d at 319 (4th Cir. 2001) ("If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay."). *See also* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. at 476; *Adkins*, 303 F.3d at 500 (4th Cir. 2002); *Daniel v. Stericycle Inc.*, No. 3:20-CV-655-RJC-DCK, 2021 WL 8054177 at *7 (W.D.N.C. Nov. 24, 2021), report and recommendation adopted, No. 320CV00655RJCDCK, 2022 WL 987341 (W.D.N.C. Mar. 31, 2022) (staying class and collective action as to putative class members bound to arbitrate claims).

A stay limited to the seven Intervenor-Plaintiffs is clearly inadequate to protect even their own arbitration rights. While there are other claims, including the Equity Claims, beyond Intervenor-Plaintiffs' WealthChoice Claims asserted in the FINRA Arbitration, the WealthChoice Claims are the only claims asserted here. These claims, according to Merrill Lynch, are "based upon the same facts and law asserted against Merrill Lynch in *Milligan*" and turn on "the very same underlying legal issue" before the Court on Merrill Lynch's Motion for Summary Judgment

that "ERISA does not govern the WealthChoice Plan." Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 5.

Merrill Lynch and Named Plaintiff have arranged things so that the Court is certain to decide the case on the merits—if, and only if, it decides the case in Merrill Lynch's favor—prior to mandatory class certification, a motion for mandatory class certification or any allegation or argument relating to mandatory class certification since Named Plaintiff filed Paragraphs 58 and 59 of its Complaint ten months ago:

> 4. To conserve party and judicial resources, the Parties wish to **stay all proceedings except for Defendants' pending motion for summary judgment.** If granted, **this motion would end the lawsuit** (pending any appeal).

> 6. Other tasks remain as well. The parties need to depose various fact and expert witnesses, including Plaintiff, Defendants' corporate witness(es), and any experts. **Plaintiff intends to move for class certification**. The Parties may also need to file discovery motions related to document productions and deposition topics.

> 7. If Defendants' motion for summary judgment is granted after the parties have undertaken the above efforts, then none of those items will have been necessary, and the Parties and possibly the Court will have wasted resources and incurred unnecessary costs. The **Parties prefer that the Court stay the case except for the summary judgment motion**, and if that motion is denied, then the Court can reset the remaining deadlines and the case can resume.

*Id.* at ¶¶ 3-4 (emphasis added).

On the current schedule, if this proceeding is stayed only as to Intervenor-Plaintiffs they will remain putative members of the proposed mandatory class at the time summary judgment is decided. That a ruling in Merrill Lynch's favor will not formally bind them simply because the proposed mandatory class—of which Merrill Lynch asserts they are members dozens of times in its eight-page Combined Answer and Motion to Stay—was not certified when the Court "resolve[d] the central dispute underpinning Claimant's claims at summary judgment" will not preserve their arbitration rights. As the Fifth Circuit has explained:

> Given the binding effect of a federal judgment, as well as the factual similarities in

> [the plaintiff's] asserted claims, the ICC arbitrator would necessarily be strongly influenced to follow the court's determination. That is, [the party to the arbitration's] liability will incontrovertibly be seriously affected by the court's determination of [the party to the litigation's] liability.

*Waste Management, Inc., v. Residuos Industriales Multiquim, S.A.*, 372 F. 3d 339, 342 (5th Cir. 2004) (emphasis in original) (holding that a stay under 9 U.S.C. § 3 should apply to an entire action and all parties to it, including non-parties to an arbitration agreement).

Merrill Lynch, the party seeking to ensure it will obtain the ruling on a one-way summary judgment motion prior to a motion to certify, has recognized and is recognizing this reality in dozens of FINRA arbitrations with hundreds of actual claimants urging the opposite result:

> [A]s Claimants acknowledge in their Statement of Claim, Merrill Lynch filed a motion for summary judgment in Milligan on September 30, 2024. This motion asks the district court to dismiss Mr. Milligan's claims with prejudice because there is no genuine dispute of material fact preventing it from holding that **ERISA does not govern the WealthChoice Plan. That is the very same underlying legal issue Claimants now raise here—or, in their own words, "the dispositive question in every one of these disputes with every unnamed putative class member." SOC ¶ 14. […]**

> On these specific facts, **Merrill Lynch's request should be granted, and this arbitration stayed temporarily, to allow the Milligan court an opportunity** to determine class certification or, **if sooner**, **to resolve the central dispute underpinning Claimant's claims at summary judgment.** If the Milligan court does not certify a mandatory class, or if the summary judgment motion is granted, this matter can proceed (either because no class is certified at all or, if a Rule 23(b)(3) class is certified, assuming Claimants opt out of the Milligan class and/or submit any requisite notice under Rule 13204(a)(2)). But if the Milligan court certifies a mandatory class under Rule 23(b)(1) and the summary judgment motion is denied, Claimants here would already be members of that certified class and, therefore, would be pursuing the same claims in Milligan as they now seek to pursue here. Either way, **there is no valid reason to allow Claimants to pursue identical claims in FINRA at the same time a putative class action is pending that may resolve those very same claims on their behalf.**

Lax Dec ¶ 6, Ex. C (Combined FINRA Answer and Motion to Stay) 5 (emphasis added). Merrill Lynch has repeated and expanded upon this argument during a prehearing conference with least the FINRA Panel, urging the FINRA Panel stay, and arguing that the stay will last only a few

months, because a motion for summary judgment is pending, likely to go to oral argument in March, and, should this Court resolve summary judgment in its favor, it will resolve the dispositive question in the FINRA Arbitration.

That the FINRA Arbitration, and numerous others, will be "seriously affected by" if the Court rules on the Motion for Summary Judgment prior to certification is not only "incontrovertibl[e]" but uncontroverted. Merrill Lynch has frankly admitted it, and in at least two different instances has urged the Director of FINRA Dispute Resolution or the FINRA Panel to stay the FINRA Arbitration <u>on the basis</u> that the ruling on summary judgment will "seriously affect[]" its liability in the FINRA Arbitration. The FAA requires the opposite. *See, e.g, U.S. ex rel. MPA Const., Inc.*, 349 F. Supp. at 939 ("As a general matter, one of the primary reasons why federal law favors arbitration is to resolve cases more quickly and efficiently."); *Medical Search Consultants, LLC v. Pasture Gate Holdings, Inc.*, 1:23-cv-00118, 2023 WL 8532400, at *4 (W.D.N.C. 2023) ("The relevant state and federal statutes contemplate staying litigation in favor of arbitration, not the other way around.") (internal quotation and citation omitted).

Merrill Lynch's intention to use a ruling by this Court to effectively evade its admitted obligation to arbitrate and actual submission to numerous FINRA arbitrations with hundreds of putative class members it has not disclosed to the Court is also evident from its conduct of the litigation. *See generally* Mtn. to Intervene, 15-19. In its December 17, 2024 "Reply" in support of its December 2 Combined Answer and Motion to Stay, Merrill Lynch represented:

> Merrill Lynch's motion asks only for a temporary pause of these proceedings until the *Milligan* court can decide whether that case will proceed as a ***mandatory*** class action under Rule 23(b)(1). If it does, this means *Milligan* class members— including Claimants—***cannot opt-out***. *See* Mot. at 2, 4-5. And, therefore, **to allow these arbitrations to proceed before the *Milligan* court can make this determination will not only interfere with the federal court proceeding,** but also could result in the parties and this Panel's efforts in this matter being unnecessary and potentially wasteful.

As the Supreme Court put it, "[c]lasses certified under [Rule 23(b)(1)] share the most traditional justifications for class treatment—that individual adjudications would be *impossible or unworkable*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011) (emphasis added). **Claimants overlook the purposes of Rule 23(b)(1), which is designed to protect *both* plaintiffs *and* defendants in these types of class actions.** Specifically, Rule 23(b)(1) *requires* a mandatory class where a defendant would be trapped in the "inescapable legal quagmire of not being able to comply with one [] judgment without violating the terms of another." 2 Newberg & Rubenstein on Class Actions, § 4:7 (6th ed.). Courts routinely recognize that the purpose of Rule 23(b)(1)(A) is "to protect defendants," while Rule 23(b)(1)(B) is primarily to protect plaintiffs. *See, e.g.*, *Van Gemert v. Boeing Co.*, 259 F. Supp. 125, 130 (S.D.N.Y. 1966). But, "clearly all litigants as well as the courts benefit from consistency in the adjudication of claims of individual class members." *Ingles v. City of New York*, 2003 WL 402565, at *7 (S.D.N.Y. Feb. 20, 2003). Indeed, the whole point of a Rule 23(b)(1) class is that allowing opt- outs would create the very concerns that warrant class treatment under that Rule in the first place.

Here, **if a Rule 23(b)(1) class is certified**, it would mean **Merrill Lynch is entitled to the protection Rule 23(b)(1) provides**, which includes **resolving the central legal question here—whether the WealthChoice Plan and the "Equity Plan" ("Plans") are governed by ERISA**—in a single forum, with the outcome binding on *all* Plan participants equally, including Claimants. In fact, not once does the Opposition dispute that if the court certifies *Milligan* under Rule 23(b)(1), they in fact would be members of that class and, therefore, also would be bound by the outcome of the court's judgment in that case (and its *res judicata* effect).

Lax Dec ¶ 15, Ex. 1 (December 17, 2024 Reply) (emphasis added). Nowhere in this brief, and only in two byzantine paragraphs of its Combined Answer and Motion to Stay, did Merrill Lynch address its pending Motion for Summary Judgment, and nowhere at all in any submission to the Director or the FINRA panels did Merrill Lynch disclose that no motion to certify had even been filed.

On January 14, 2025, Merrill Lynch and Named Plaintiff jointly moved to stay, without disclosing the pending FINRA arbitrations or that Merrill Lynch had, by its own representation, filed dozens of motions to stay on the express basis of obtaining a ruling on certification of a mandatory class. <u>After</u> January 14, Merrill Lynch continued to file its December 17 Reply, including with the FINRA Panel, and to reiterate these representations in pursuit of the same

relief—a stay pending a motion to certify a mandatory class that would "entitle[] [Merrill Lynch] to the protection of Rule 23(b)(1) [], which includes resolving the central legal question here— whether the WealthChoice Plan and the "Equity Plan" ("Plans") are governed by ERISA."[5]

Merrill Lynch has made the strategic choice to file for summary judgment prior to class certification and Named Plaintiff, for whatever reason, has facilitated it by failing to move to certify and consenting to the Joint Motion to stay. Merrill Lynch has then gone into FINRA and used the prospect of the certification of a mandatory class to attempt to halt dozens of ongoing arbitrations. That is because, as the Fifth Circuit observed and Merrill Lynch has argued to FINRA, a ruling by this Court that "resolve[s] the central dispute underpinning Claimant's claims at summary judgment" while Intervenor-Plaintiffs remain putative members of the mandatory class will be all Merrill Lynch needs to "strongly influence[]" the FINRA panels "to follow the court's determination" with none of the very significant risks to Merrill Lynch of class certification, which Merrill Lynch, of course, is on record opposing. *See* Doc 25 (Answer) ¶¶ 1, 53-60

One of these risks is the very high likelihood that a motion to certify a mandatory class would be denied, as discussed below. A stay limited to the seven Intervenor-Plaintiffs will also do nothing to protect the more than 240 putative class members already in FINRA arbitrations with Merrill Lynch, the more than 70 putative class members who intend to file FINRA arbitrations against Merrill Lynch, or the rest of the putative class, who have no notice of this Action, their putative membership in a potential class action, Merrill Lynch's Motion for Summary Judgment, or the risk to both their substantive rights under ERISA and their right to arbitrate in FINRA. Under the current schedule, these rights would be effectively disposed of without the barest

---

[5] This, too, was a flat misrepresentation, as the Equity Plan has not even been alleged in the Complaint in this case.

examination of the certifiability of the putative class under Rule 23(b)(1).

A stay of these proceedings in their entirety pending the FINRA Arbitration is necessary to protect the rights of Intervenor-Plaintiffs and other putative members of the proposed class who have submitted or intend to submit their ERISA claims to FINRA arbitration, and at least leaves the absent and unknowing putative members of the proposed class better off than they are now. On the other hand, at present the only actual party other than Merrill Lynch that will be affected by a stay pending arbitration is Named Plaintiff, who does not and, in the foreseeable future, will not represent the putative mandatory class and whose apparent interest in Merrill Lynch's one-way, pre-certification motion for summary judgment is overwhelmingly outweighed by the interest of at least 240 actual parties to more than thirty FINRA arbitrations.

Pursuant to 9 U.S.C. § 3, the Motion to Stay these proceedings in their entirety pending the FINRA Arbitration should be granted.

## B. THE COURT SHOULD VACATE THE JANUARY 16 ORDER AND STAY ALL PROCEEDINGS PENDING A MOTION FOR CLASS CERTIFICATION, IF ANY

At a minimum, the issue of mandatory class certification should be taken up now, prior to the Motion for Summary Judgment, to resolve the numerous issues raised by Merrill Lynch's motions to stay and the more than thirty FINRA arbitrations with more than 240 putative members of the proposed class to which Merrill Lynch has, without disclosing their existence to the Court, submitted the WealthChoice Claims and its defenses. It will also prevent Merrill Lynch, if it intends to oppose the certification of a mandatory class as it indicates in its Answer, from continuing to use the prospect of a motion to certify a mandatory class that it has indefinitely delayed and ultimately opposes in the FINRA arbitrations, including those it represents it has successfully moved their panels to "pause."

In the event the Court is not prepared to stay these proceedings in their entirety pending

the FINRA Arbitration, Intervenor-Plaintiffs respectfully request, in the alternative, that the Court vacate the January 16 Order and stay all proceedings, including Merrill Lynch's Motion for Summary Judgment, pending a motion for class certification, if any.

While Named Plaintiff has not filed a motion for class certification, and, in the event the Court grants this alternative relief, Intervenor-Plaintiffs would seek the Court's leave file a opposition to a motion, if any, when filed, Intervenor-Plaintiffs will briefly address the substantial obstacles to class certification.

It is apparent on the face of the Complaint that Named Plaintiff's claims, however styled and under whatever provision of ERISA they are brought, are claims for individual monetary damages for individual forfeitures in individually held accounts under a defined contribution plan:

> 2.    Commissions are based on the revenue generated by client investment activities. Defendants automatically allocate a portion of commissions in the WealthChoice Contingent Award Plan (the "Plan"). **The commissions are allocated to individual Plan accounts for each FA.** Under the relevant Plan award agreements, commissions "vest" in eight years. Merrill Lynch causes FAs to forfeit the value in their Plan accounts if they leave Merrill Lynch before these vesting dates (the "Cancellation Rule").

> 5.    Plaintiff worked as an FA at Merrill Lynch and, when he left Merrill Lynch, Defendants invoked the Cancellation Rule to deny him the deferred compensation that he earned under the FA Deferred Compensation Program.

> 6.    Plaintiff seeks an Order from the Court under ERISA § 502(a)(3) declaring that the Plan is subject to ERISA and that the Cancellation Rule violates ERISA's vesting and anti- forfeiture requirements. **He seeks the payment of his and the other class members' deferred compensation that was wrongfully forfeited.**

*See* Doc 1 (Compl.) ¶¶ 2, 5, 6, 21 (emphasis added). *See also* Answer ¶¶ 21, 24-25; Mtn. to Intervene, 5-8.

First, there is no question that these claims are individually arbitrable and therefore not certifiable under Rule 23(b)(1), even if brought in the guise of plan-wide claims for breach of fiduciary duty under ERISA § 502(a)(2):

Here, **Plaintiffs have not alleged that the Compensation Committee – the alleged fiduciary – mismanaged plan assets or otherwise "impair[ed] [their] value"** (LaRue, 552 U.S. at 256), such as by **making imprudent or conflicted investment decisions, or by incurring unnecessary administrative costs.**

Plaintiffs instead **"seek the restoration of all deferred compensation that was illegally deemed forfeited by Defendants." (Am. Cmplt. (Dkt. No. 58) ¶ 117) Any such forfeited compensation, however, would be equivalent to "the balance of [each] individual's account" – which ERISA defines as an "accrued benefit" in an "individual account plan." ERISA § 3(23), codified at 29 U.S.C. § 1002(23). The relief Plaintiffs seek in their § 502(a)(2) breach of fiduciary cause of action is thus redundant of their claim for benefits under § 502(a)(1),** in which they seek to "recover their vested benefits [and] enforce their rights to the payment of their past vested benefits ... after reformation [of the plan to comply with ERISA's anti-forfeiture rules]." (Am. Cmplt. (Dkt. No. 58) ¶ 107; see Russell 473 U.S. at 147 (explaining that ERISA provides for "an action pursuant to § 502(a)(1)(B) to recover accrued benefits").

\*\*\*

The Amended Complaint's Third Cause of Action for breach of fiduciary duty is a disguised claim for benefits; while actually bringing a claim under § 502(a)(1)(B), Plaintiffs invoke the procedural safeguards associated with a claim under § 502(a)(2). But because Plaintiffs have not alleged "losses to the plan," they are not, in fact, proceeding in a representative capacity, and are therefore not entitled to the procedural safeguards available under § 502(a)(2).

\*\*\*

Having failed to allege a true § 502(a)(2) claim, Plaintiffs will not be heard to complain that claims under § 502(a)(2) are non-arbitrable.

*Shafer*, 2023 WL at \*24-6 (S.D.N.Y. 2023), *reconsideration denied*, No. 20 CIV. 11047 (PGG), 2024 WL 4697235 (S.D.N.Y. Nov. 5, 2024). The is even clearer in the case of equitable claims. *See Id.* (holding that the Supreme Court has held that "§ 502(a)(3) authorizes lawsuits for individual relief. And the case law indicates that plaintiffs who bring putative class actions alleging § 502(a)(3) claims may nevertheless be required to arbitrate their claims individually) (internal quotation and citation omitted). *See also See Dorman*, 780 F. App'x at 513–14 (9th Cir. 2019) (same); *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable. [...] So the FAA applies with full force to claims under ERISA." and finding plaintiff's claim was not arbitrable specifically because it was not a disguised fiduciary claim for benefits in a defined

contribution plan) (collecting cases) (internal citations omitted).

In its brief on summary judgment, Merrill Lynch wrongly describes *Shafer*, which determined Morgan Stanley's deferred compensation plans were ERISA plans and rejected defenses materially identical to Merrill Lynch's, as an "outlier" and then criticized it primarily on the ground that it decided an issue that was arbitrable:

> Shafer, however, is not precedent in this Court; addressed the ERISA issue in clear dicta; is wrongly decided and an obvious outlier amidst the wealth of authority cited herein; involved materially different facts; and is pending a fully briefed motion to reconsider. See No. 1:20-cv-11407-PGG, Dkt. 88 (Dec. 5, 2023). Among other problems, the Shafer court addressed the ERISA-plan issue in deciding a motion to compel arbitration, without a record (or even full briefing), and in doing so decided the merits of the parties' central dispute— despite ***compelling arbitration*** of that very question. Id. at *16-20. And, although the Second Circuit recently denied Morgan Stanley's petition for a writ of mandamus, it did so "without prejudice to renewal if the district court fails to act on the reconsideration motion within a reasonable time." *Morgan Stanley v. Shafer*, Civ. App. No. 24-1485, Order (2d Cir. Aug. 27, 2024).

Doc 41-1 (MOL ISO Mtn. for Summary Judgment) 24, fn 7 (emphasis original).

Second, one reason class plaintiffs occasionally disguise claims for monetary damages as class-wide equitable and ERISA § 502(a)(2) claims for breach of fiduciary duty is that monetary damages are generally not certifiable under Rule 23(b)(1) and are certainly not certifiable as ERISA claims the facts here. *See, e.g., Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 184 (D. Mass. 2009); *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 621 (C.D. Cal. 2009); *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 621 (C.D. Cal. 2009).

## CONCLUSION

Intervenor-Plaintiffs respectfully request that the Court stay this Action in its entirety pending the FINRA Arbitration pursuant to 9 U.S.C. § 3 or, in the alternative, vacate the January 16, 2025 Order and stay Merrill Lynch's Motion for Summary Judgment and all other proceedings pending Named Plaintiff Kelly Milligan's motion for class certification, if any.

Dated: February 14, 2024

**Teague Campbell Dennis & Gorham, LLP**

*/s/Jacob Wellman*
Jacob Wellman
PO Box 19207
Raleigh, NC  27619
Telephone: 919.719.4734
Email:  JWellman@teaguecampbell.com
*Local Counsel to Proposed*
*Intervenor-Plaintiffs*

**Lax & Neville, LLP**

*/s/ Barry R. Lax*
Barry R. Lax
350 Fifth Ave. Suite 4640
New York, NY 10118
Telephone: 212-696-1999
Email: blax@laxneville.com
*Attorneys for Proposed*
*Intervenor-Plaintiffs*

## CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE

I, Barry R. Lax, an attorney, certify, as required by the Court's June 18, 2024 Order in *In re Use of Artificial Intelligence*, No. 3:24-mc-104 (W.D.N.C), that:

1- No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw and Lexis; and

2- Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Barry R. Lax*_____

Barry R. Lax, Esq.

**<u>CERTIFICATE OF SERVICE</u>**

I, Jacob Wellman, an attorney, hereby certify that on February 14, 2025, a copy the foregoing document was filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/Jacob Wellman*
Jacob Wellman, Esq.
