UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| KELLY MILLIGAN,<br>ON BEHALF OF HIMSELF AND<br>ALL OTHERS SIMILARLY SITUATED,<br><br>                Plaintiff,<br><br>      vs.<br><br>MERRILL LYNCH, PIERCE, FENNER &<br>SMITH INC., BANK OF AMERICA CORP.,<br>and JOHN/JANE DOE 1, THE SENIOR VICE<br>PRESIDENT–HUMAN RESOURCES<br>GLOBAL BANKING AND GLOBAL<br>WEALTH AND INVESTMENT<br>MANAGEMENT ADMINISTRATION AT<br>BANK OF AMERICA CORP.,<br><br>                Defendants. | Civil Action No. 3:24-cv-00440-KDB-DCK<br><br>Judge Kenneth D. Bell<br>Magistrate Judge David Keesler<br><br><br><br><br><br>CLASS ACTION |

**PLAINTIFF'S RESPONSE BRIEF IN
<u>OPPOSITION TO MOTION TO INTERVENE</u>**

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | ARGUMENT | 4 |
| | A. The motion to intervene is procedurally defective. | 4 |
| | B. The motion to intervene is untimely. | 5 |
| | C. The Proposed Intervenors have not established a right to intervene under Rule 24(a). | 9 |
| | D. Proposed Intervenors should not be allowed to intervene under Rule 24(b). | 13 |
| IV. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Cases**

*Alt v. U.S. E.P.A.*,
   758 F.3d 588 (4th Cir. 2014) .................................................................................... 5, 6, 7

*Bethune Plaza, Inc. v. Lumpkin*,
   863 F.2d 525 (7th Cir. 1988) ............................................................................................ 10

*Houey v. Carolina First Bank*,
   890 F. Supp. 2d 611 (W.D.N.C. 2012) ............................................................................ 14

*Lloyd v. J.P. Morgan Chase & Co.*,
   791 F.3d 265 (2d Cir. 2015) .............................................................................................. 11

*Scardelletti v. DeBarr*,
   265 F.3d 195 (4th Cir. 2001) .............................................................................................. 6

*Scott v. Bond*,
   734 Fed. App'x 188 (4th Cir. 2018) ........................................................................... 6, 7, 8

*SEC v. Creative Cap. Consortium LLC*, No. 08-cv-81565,
   2015 WL 4077451 (S.D. Fla. July 6, 2015) ...................................................................... 8

*Smith v. Pennington*,
   352 F.3d 884 (4th Cir. 2003) ............................................................................................ 13

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) .............................................................................................. 9

*Thomas v. Ford Motor Co.*, No. 5:13-01417-JMC,
   2014 WL 1315006 (D.S.C. Mar. 28, 2014) ........................................................ 7, 10, 13, 14

*U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*,
   349 F. Supp. 2d 934 (D. Md. 2004) ................................................................................. 12

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*,
   372 F.3d 339 (5th Cir. 2004) ..................................................................................... 10, 11

*Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531 HB,
   2013 WL 4857687 (S.D.N.Y. Sept. 11, 2013) ................................................................. 11

**Statutes**

29 U.S.C. § 1002(2)(A)(ii) ...................................................................................................... 1, 2

**Rules**

Fed. R. Civ. P. 23(b)(1)(A) ............................................................................................... 10

Fed. R. Civ. P. 24(a) ................................................................................................... 5, 14

Fed. R. Civ. P. 24(a)(2) ............................................................................................ 1, 9, 10

Fed. R. Civ. P. 24(b) ....................................................................................................... 14

Fed. R. Civ. P. 24(b)(1) .................................................................................................... 5

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................. 13

Fed. R. Civ. P. 24(b)(3) ................................................................................................... 13

Local Rule 7.1(b) .............................................................................................................. 4

**Other Authorities**

FINRA Rule 13204(a)(4) .................................................................................... 3, 8, 9, 11

Fed. R. Civ. P. 23(b)(1)(A) ............................................................................................... 10

Fed. R. Civ. P. 24(a) ................................................................................................... 5, 14

Fed. R. Civ. P. 24(a)(2) ............................................................................................ 1, 9, 10

Fed. R. Civ. P. 24(b) ....................................................................................................... 14

Fed. R. Civ. P. 24(b)(1) .................................................................................................... 5

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................. 13

Fed. R. Civ. P. 24(b)(3) ................................................................................................... 13

Local Rule 7.1(b) .............................................................................................................. 4

**Other Authorities**

FINRA Rule 13204(a)(4) .................................................................................... 3, 8, 9, 11

Plaintiff Kelly Milligan files this response in opposition to the motion to intervene (ECF 66-68) filed by Jeffrey DeWees, Luke McKelvy, William Schellenberg, Jay Tamkoc, Alon Haim, Matthew Mendoza, and Reinhold Wigand (collectively, the "Proposed Intervenors").[1]

## I. INTRODUCTION

Proposed Intervenors seek to intervene in this case out of concern that Defendants might win their pending motion for summary judgment. ECF 41. The risk of that is low.[2] Nevertheless, Proposed Intervenors worry that an unfavorable ruling will impact their arbitration claim, given that they copied Plaintiff's complaint.[3] *Compare* ECF 1, *with* ECF 67-1. That might sound like a protectable interest under Rule 24, which provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). But Proposed Intervenors do not seek to participate in this case. Nor do they identify any new or better arguments that Plaintiff could have asserted to oppose summary judgment. Rather, Proposed Intervenors want to halt this case, so that they may conduct their later-filed arbitration first. They have no right to do that.

---

[1] References to ECF __ at __ are to the page numbers assigned by the ECF system.

[2] As shown in Plaintiff's opposition brief, ECF 53, Merrill Lynch's deferred-compensation plan is an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A)(ii) because it "results in a deferral of income" extending "to the termination of covered employment or beyond."

[3] Proposed Intervenors acknowledge that an adverse summary-judgment decision "prior to class certification" would not be binding on them. ECF 68 at 8. Nor could it ever be. If this Court grants Defendants' pending motion for summary judgment on Plaintiff's individual claims, then there will be no action to certify as a class action. Indeed, the parties' joint motion to stay all proceedings other than summary judgment was premised on this very point: that if summary judgment is granted, "this motion would end the lawsuit" and class certification proceedings "will have been unnecessary." ECF 63 ¶¶ 4, 7.

1

In the alternative, Proposed Intervenors seek to force Plaintiff to move for class certification now (and the Court to rule on certification now), before the Court decides Defendants' motion for summary judgment. *See* ECF 70 at 21. But in doing so, Proposed Intervenors advocate a procedure detrimental to their interests *and those of other putative class members*: If the Court were to certify a class and then grant summary judgment to Defendants, that ruling would bind all class members. The current sequencing better protects putative class members by ensuring they will not be bound by a decision in Defendants' favor on the threshold ERISA question.

To the extent Proposed Intervenors wish to oppose a future motion for class certification, intervention now is premature and speculative and will not become ripe unless and until (1) the Court denies the motion for summary judgment and (2) Plaintiff moves to certify a class that includes Proposed Intervenors.

The motion to intervene should be denied.

## II.  BACKGROUND

On April 30, 2024, Plaintiff Kelly Milligan initiated this putative class-action lawsuit against Defendants. ECF 1. The proposed class comprises former Merrill Lynch financial advisors who had their deferred compensation in the WealthChoice Contingent Award Plan forfeited between April 30, 2018, and the date of judgment due to a plan provision (the "Cancellation Rule") that Plaintiff contends violates ERISA.[4] *Id*. ¶ 53. Plaintiff alleges that the plan constitutes an "employee pension benefit plan" under ERISA. ECF 1 ¶ 3; *see also* 29 U.S.C. § 1002(2)(A)(ii). Plaintiff filed suit in this district because the plan documents provide that any dispute arising

---

[4] On January 6, 2025, Milligan moved to amend his complaint to include a related plan. ECF 62.

2

Case 3:24-cv-00440-KDB-DCK   Document 76   Filed 02/28/25   Page 6 of 20

thereunder shall be conducted "solely in the courts of Mecklenburg County, North Carolina, or the federal courts for the United States for the Western District of North Carolina." ECF 1 ¶ 10.

On October 7, 2024, six months after Plaintiff commenced this action, Proposed Intervenors filed a FINRA arbitration claim that, like Plaintiff's claim here, alleges Merrill Lynch's deferred-compensation plan is subject to ERISA. *DeWees v. Merrill Lynch Pierce Fenner & Smith Inc.*, No. 24-02157 (FINRA); ECF 68 at 9; ECF 67, Lax Decl., ¶ 4; ECF 67-1, FINRA Statement of Claim. They did so despite the plan's forum-selection provision and even though FINRA's Code of Arbitration Procedure for Industry Disputes expressly states that any claim "based upon the same facts and law, and involves the same defendants as in . . . a putative class action . . . shall not be arbitrated," unless the parties bringing the claim provide notice that they will not participate in the class action or in any recovery that may result from the class action. FINRA Rule 13204(a)(4). On December 12, 2024, Proposed Intervenors (claimants in the arbitration) filed a notice with the FINRA director stating they would not participate in the class action or any recovery from it. ECF 68 at 19-20; ECF 67, Lax Decl. ¶ 14; ECF 67-11, Claimants' Dec. 12, 2024 Notice. FINRA then referred the issue to the arbitration panel appointed to hear their claims. ECF 68 at 20; ECF 67, Lax Decl. ¶ 7; ECF 67-4, FINRA Dec. 12, 2024 Notice. Thus, the panel will decide whether Proposed Intervenors' claims are arbitrable, despite the existence of this putative class action.

Meanwhile, Merrill Lynch answered Plaintiff's complaint on July 12, 2024, ECF 25, and on September 30, 2024, moved for summary judgment on Plaintiff's claims on the basis that ERISA does not apply. ECF 41. After conducting discovery targeted to that issue, Plaintiff filed his opposition brief on December 6, 2024. ECF 53. Merrill Lynch filed its reply on December 30, 2024, ECF 60, and the motion is set for hearing on March 4, 2025. On January 14, 2025, Plaintiff

3

and Merrill Lynch jointly moved to stay all other deadlines in this case, ECF 63, which the Court granted on January 16, 2025, ECF 64.

On February 14, 2024, Proposed Intervenors filed their motion to intervene and their proposed motion to stay this action pending their own arbitration. In both motions, Proposed Intervenors represented that they conferred with counsel for the parties. That is not correct; at a minimum, they did not confer with counsel for Plaintiff.

### III. ARGUMENT

Frustrated with Merrill Lynch's efforts to stay their arbitration, Proposed Intervenors instead seek to stay this case—a lawsuit filed six months before their arbitration claim. Their motion is procedurally defective, untimely, and fails to satisfy Rule 24. It should be denied.

### A. The motion to intervene is procedurally defective.

As a threshold matter, the motion to intervene should be denied for failing to comply with Local Rule 7.1(b). That rule requires civil motions to "show that counsel have conferred and attempted in good faith to resolve areas of disagreement, or describe the timely attempts of the movant to confer with opposing counsel." The rule exempts only dispositive motions, motions where the non-moving party is unrepresented, and motions for extension of time to file responsive pleadings. A motion to intervene falls into none of these exceptions. Although Proposed Intervenors aver that their attorneys "consulted with counsel for the parties" before filing their motion, that is not correct. Counsel for Proposed Intervenors did not confer with counsel for Plaintiff before filing.[5] Under Local Rule 7.1(b), a "motion that fails to show that the parties have properly conferred or attempted to confer may be summarily denied." The Court should deny the motion on this basis alone.

---

[5] Evidently, they did not confer with counsel for Defendants either. *See* ECF 75.

4

B.  **The motion to intervene is untimely.**

The Court should also deny the motion to intervene because it is untimely. *See* Fed. R. Civ. P. 24(a) & 24(b)(1) (requiring "timely motion"). Proposed Intervenors seek to intervene principally to stay Plaintiff's action while they pursue their own claims in arbitration. *See* ECF 70 at 15-21. Plaintiff filed this case on April 30, 2024, more than six months before Proposed Intervenors filed copycat claims in arbitration. They cannot now complain that Plaintiff's first-filed case should be stayed,[6] when they could have made that argument, however meritless, the day they filed their own arbitration demands. "Such deliberate forbearance understandably engenders little sympathy." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014).

The parties' more recent agreement to defer further discovery and class certification until after the Court rules on Defendants' motion for summary judgment (should the Court deny it) did not trigger some new intervention right. ECF 64. To the contrary, by agreeing to sequence the summary judgment motion before his motion for class certification, Plaintiff has *protected* the interests of the putative class (including Proposed Intervenors) because an adverse summary judgment decision would bind only him, as Proposed Intervenors acknowledge. ECF 68 at 27. As an alternative to staying Plaintiff's case, Proposed Intervenors seek to force Plaintiff to move for class certification now (before the Court rules on Merrill Lynch's summary judgment motion), so that they may oppose it. ECF 70 at 21-24. But if Proposed Intervenors were to succeed in opposing class certification before the Court rules on Merrill Lynch's summary judgment motion, then they would be exactly where they are now—with a pending motion for summary judgment that, if granted, would bind only Plaintiff.

---

[6] Plaintiff separately opposes Proposed Intervenors' motion to stay, in the event the Court allows them to intervene.

5

To determine whether a motion to intervene is timely, courts assess three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591. Each of these factors weighs against intervention.

***First***, Merrill Lynch's motion for summary judgment—filed *before* Proposed Intervenors initiated their FINRA arbitration—is fully briefed, and oral argument is scheduled for March 4, 2025. The parties have invested substantial resources in litigating the threshold ERISA question, completing targeted discovery and filing comprehensive briefs. Proposed Intervenors seek to derail this carefully sequenced litigation at the eleventh hour, long after they became aware of it. *Alt*, 758 F.3d at 591 (the timeliness requirement prevents an intervenor from "derailing a lawsuit within sight of the terminal").

In a class action, a "proposed intervenor should move to intervene as soon as it becomes clear that his interests would no longer be protected by the named class representatives." *Scott v. Bond*, 734 Fed. App'x 188, 191 (4th Cir. 2018) (internal quotation marks omitted). The intervention motion must be made "as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Scardelletti v. DeBarr*, 265 F.3d 195, 203 (4th Cir. 2001), *rev'd on other grounds sub nom.*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Proposed Intervenors claim that Plaintiff is not adequately representing their interests because Plaintiff filed this case in court. ECF 68 at 22. But Proposed Intervenors knew about this case when they filed their FINRA claims.[7] Instead of promptly moving to intervene, they waited

---

[7] On May 21, 2024, three weeks after Plaintiff commenced this action, the law firm representing Proposed Intervenors announced in a blog post that it was pursuing arbitration claims against Merrill Lynch based on the claims asserted by Plaintiff in this case. Lax & Neville LLP, *Lax & Neville LLP Pursuing Unpaid Deferred Compensation Claims Against Merrill*

more than four months to do so. During this time, the parties expended significant resources conducting discovery and briefing the summary judgment motion.

The Fourth Circuit's decision in *Scott* is instructive. In *Scott*, the proposed intervenor knew about the underlying case in which he sought to intervene but nonetheless filed a separate case six months later. *Scott*, 734 Fed. App'x at 194. The Fourth Circuit affirmed the district court's denial of the motion to intervene, finding that "if an intervenor was aware of a parallel case from the outset but pursued a separate suit," a subsequent development in the parallel case does not "justify tardy intervention." *Id*. at 192 (internal quotation marks omitted).

**Second**, intervention would prejudice Plaintiff. Proposed Intervenors want to stay this case indefinitely in favor of their own later-filed FINRA arbitration. Having chosen a different forum, Proposed Intervenors now seek to deny Plaintiff the prompt adjudication of his claims and to prevent the Court from deciding the fully briefed motion for summary judgment. Thus, the entire point of intervention here is delay.[8] *See Alt*, 758 F.3d at 591 (finding delay constituted sufficient prejudice to warrant denying motion to intervene); *see also Thomas v. Ford Motor Co*., No. 5:13-01417-JMC, 2014 WL 1315006, at *5 (D.S.C. Mar. 28, 2014) (denying intervention where proposed intervenors sought to "shut this case down" in favor of their own action, which would

---

*Lynch* (May 21, 2024), www.newyorksecuritieslawyerblog.com/lax-neville-llp-pursuing-unpaid-deferred-compensation-claims-against-merrill-lynch/ ("On April 30, 2024, a class action was filed against Merrill Lynch in the Western District Court of North Carolina to recover the deferred compensation that Merrill Lynch cancelled upon Plaintiffs' voluntary resignation. While we believe there are strong claims against Merrill Lynch for violation of ERISA, we believe that they must be arbitrated at FINRA.").

[8] Alternatively, Proposed Intervenors seek to advance Plaintiff's anticipated motion for class certification before the Court decides Merrill Lynch's motion for summary judgment. Doing so would add unnecessary (and, thus, prejudicial) delay because, as discussed above, the outcome Proposed Intervenors seek (denial of the motion for class certification) would simply return them to the very same position they are now.

"unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties").

Contrary to their suggestion, *Securities and Exchange Commission v. Creative Capital Consortium LLC*, No. 08-cv-81565, 2015 WL 4077451 (S.D. Fla. July 6, 2015), does not support Proposed Intervenors' position. ECF 68 at 20. In *Creative Capital*, a party to a FINRA arbitration moved to intervene in court, claiming that the case's outcome could affect the FINRA panel's decision. The court denied the motion as untimely. *Id*. at *4. In addition to being filed long after the movant knew it had an interest in the lawsuit, the motion to intervene was untimely because it would prejudice the rights of other parties. The court noted that prejudice is "the essence of the timeliness inquiry." *Id*. at *3 (cleaned up). Importantly, the court also rejected the proposed intervenor's argument that it would be adversely affected by the case's outcome in the FINRA proceeding, finding that what effect, if any, the FINRA panel gave to the case's outcome was "not felt before this Court," and weighed against intervention. *Id*.

**Third**, there is no excuse for the Proposed Intervenor's delay. *See Scott*, 734 Fed. App'x at 191 ("[A] movant seeking intervention must provide a plausible justification for a tardy motion to intervene."). As noted above, Proposed Intervenors filed their arbitration claims *after* Merrill Lynch moved for summary judgment, and filed their motion to intervene forty-six days after briefing was complete. Proposed Intervenors also initiated a FINRA arbitration with full knowledge of FINRA's Code of Arbitration Procedure, including Rule 13204(a), discussed below, which explicitly forbids arbitration of claims that are the subject of a pending putative class action. Having elected to proceed in FINRA, Proposed Intervenors cannot now claim prejudice from the natural operation of those very rules they voluntarily embraced many months ago.

### C. The Proposed Intervenors have not established a right to intervene under Rule 24(a).

To intervene as of right under Rule 24(a)(2), a movant must demonstrate: (1) an interest in the subject matter of the litigation; (2) that the protection of this interest would be impaired because of the action; and (3) that the existing parties cannot adequately represent the movant's interests. *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). Proposed Intervenors cannot satisfy this test.

***First***, Proposed Intervenors have no interest in the subject matter of the litigation—at least, not yet. Although Proposed Intervenors have an interest in the *outcome* of Defendants' pending motion for summary judgment, they do not seek to vindicate that interest (e.g., by contributing additional arguments or evidence opposing Defendants' motion); they simply seek to halt this case. To the extent Proposed Intervenors seek to intervene to resist a future motion for class certification, their motion to intervene is unripe and premature. In fact, it is possible the FINRA panel will hear their arbitration *before* any such motion is filed and, thus, that Proposed Intervenors would not be part of the proposed class—mandatory or not.[9]

The motion to intervene is also self-defeating. Proposed Intervenors argue that this case should not be certified as a class action because Plaintiff's claims must be arbitrated individually. ECF 68 at 13-15. Again, however, FINRA Rule 13204(a)(4) provides that claims asserted in a putative class action cannot be compelled to arbitration. And Proposed Intervenor's concern that the summary judgment ruling may influence their arbitration panel, ECF 68 at 23, supports Plaintiff's position that this is exactly the type of case that Rule 23 was designed to address—

---

[9] In this regard, Proposed Intervenors' concerns about their ability to proceed in arbitration, *see* ECF 70 at 17-19, are speculative. As they acknowledge, FINRA referred the question of whether their claims can proceed in arbitration to the appointed arbitration panel. ECF 70 at 13. That panel has not yet ruled on this question. Thus, Proposed Intervenors seek intervention based on a hypothetical impediment to arbitration that may never materialize.

where individual adjudications risk establishing "incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). If Proposed Intervenors are correct that these cases must be decided in individual FINRA arbitrations because they are "claims for individual monetary damages on individual accounts under a defined contribution plan," ECF 68 at 7, then by extension, they cannot logically claim "an interest relating to the property or transaction that is the subject" of this lawsuit required to intervene under Rule 24(a)(2). *Cf. Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988) (concluding that stare decisis effects may satisfy Rule 24(a)(2) when putative intervenor's position "depends on facts specific to the case at hand").

**Second**, Proposed Intervenors have not shown that without intervention, this action may impair or impede their ability to protect their interest. Their interest is in defeating Defendants' pending motion for summary judgment, given the risk that arbitration panels may be influenced by such a decision (even though it would bind only Plaintiff). But Proposed Intervenors do not offer to help defeat the motion; they instead seek to delay the Court from deciding it. In this posture, their position is akin to that of any litigant confronted with the risk of adverse precedent. Such litigants argue, to their own courts (or arbitrators), that the precedent was wrongly decided or otherwise inapplicable, but they are not entitled to prevent another litigant from proceeding with his claim in the name of preventing "bad law." *See, e.g.*, *Thomas*, 2014 WL 1315006, at *5.

*Waste Management, Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339 (5th Cir. 2004), does not support intervention. ECF 68 at 27. In that case, the defendant moved to stay litigation pending the outcome of an arbitration between the plaintiff (the defendant's former parent company) and the defendant's new parent company. Although the defendant did not sign the arbitration agreement, it was entitled to a stay because the plaintiff was essentially seeking to recover the same payment through different legal theories in different forums, with both the

defendant and its parent potentially liable. As a result, the plaintiff's claims against the defendant in litigation were referred to arbitration. *See Waste Mgmt.*, 372 F.3d at 345 (concluding that the plaintiff "only suffered one alleged harm, so the resulting litigation and the arbitration are 'inherently inseparable' from the instant litigation").

Here, in contrast, Plaintiff's claims are *not* referable to arbitration. Proposed Intervenors suggest that Plaintiff may be compelled to arbitrate his claims against Defendants under FINRA's Code of Arbitration Procedure for Industry Disputes. *See* ECF 68 at 13-15, 25-27. But the Code expressly prohibits the arbitration of class claims:

> A member or associated person ***may not enforce any arbitration agreement against a member of a certified or putative class action*** with respect to any claim that is the subject of the certified or putative class action until:
>
> - the class certification is denied;
>
> - the class is decertified;
>
> - the member of the certified or putative class is excluded from the class by the court; or
>
> - the member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

FINRA Rule 13204(a)(4) (emphasis added). None of these conditions precedent has occurred with respect to Plaintiff's claims; thus, neither Merrill Lynch *nor* Proposed Intervenors may compel Plaintiff to arbitrate his claims. As such, they are not referable to arbitration. *See, e.g.*, *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 271 (2d Cir. 2015) ("Since . . . plaintiffs' class and collective action claims are precluded from arbitration by FINRA Rule 13204, they fall outside the scope of the arbitration clause."); *accord Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531 HB, 2013 WL 4857687, at *3 (S.D.N.Y. Sept. 11, 2013).

In addition, Plaintiff alleges Merrill Lynch breached of its fiduciary duty with respect to the deferred compensation plan's administration. This cause of action is specifically related to the Plan and not the terms of Plaintiff's employment at Merrill Lynch. The Plan includes a forum-selection clause that required Plaintiff to bring his case in court:

> For purposes of litigating any dispute that arises directly or indirectly from the relationship of the parties evidenced by this grant or this Agreement, the parties hereby submit to and consent to the exclusive jurisdiction of North Carolina and agree that such litigation shall be conducted solely in the courts of Mecklenburg County, North Carolina or the federal courts for the United States for the Western District of North Carolina, where this grant is made and/or to be performed, and no other courts.

ECF 41-5 at 5, ¶ 9 (2010 WealthChoice Award Agreement for Strategic Premium Award); *see also* ECF 41-6 to 41-15 (Plan award agreements with same forum selection clause). This claim cannot be arbitrated before FINRA.

Proposed Intervenors also rely upon *U.S. ex rel. MPA Construction, Inc. v. XL Specialty Insurance Co.*, 349 F. Supp. 2d 934 (D. Md. 2004), which they cite for the proposition that "an intervening party is 'clearly entitled to [a] stay' when its dispute is subject to a mandatory arbitration clause." ECF 68 at 25. The case is inapposite. It involved a lawsuit by a subcontractor (plaintiff) against the surety (defendant) for nonpayment by the general contractor (intervenor) under a contract that required arbitration. *MPA Constr.*, 349 F. Supp. 2d at 935-36. The court granted permissive intervention under Rule 24(b) and directed the general contractor (intervenor) and subcontractor (plaintiff)—now both parties—to arbitrate their underlying dispute before litigating any remaining disputes with the surety (defendant). *Id.* at 939-43. No such relationship exists among Plaintiff, Defendants, and Proposed Intervenors. There is no underlying dispute between Proposed Intervenors and Plaintiff, and Plaintiff's claims against Defendants are not referable to arbitration.

***Third***, Proposed Intervenors have not shown that Plaintiff cannot adequately represent their interests. Proposed Intervenors bring the same claim as Plaintiff, having copied the Complaint's core allegations. *Compare* ECF 1, *with* ECF 67-1. Here, *Thomas* is instructive. The plaintiffs in that case filed a putative class action alleging that Ford manufactured vehicles with defective electronic throttle control systems causing sudden unintended acceleration. 2014 WL 1315006, at *1. The proposed intervenors—who had filed a similar action—moved to intervene "to prevent [their] interests from being impeded or impaired by the separate prosecution of this case." *Id*. at *3. The district court found that the proposed intervenors failed to overcome the presumption that their interests were adequately represented by the existing plaintiffs. *Id*. at *4. The proposed intervenors and the plaintiff "share[d] the same ultimate goal," having brought the same claims. *Id*. And the proposed intervenors did not show adversity of interest, collusion, or nonfeasance. *Id*.

The same is true here. Proposed Intervenors do not question the quality or thoroughness of Plaintiff's opposition to summary judgment; nor do they identify any legal arguments or evidence that would strengthen that opposition. As noted above, they do not seek to intervene in order to participate in briefing or argument on that motion. They simply want their case heard first. But as *Thomas* demonstrates, that is not a permissible basis for intervention.

### D.     Proposed Intervenors should not be allowed to intervene under Rule 24(b).

Permissive intervention under Rule 24(b) requires the movant to demonstrate both that their claim shares a common question of law or fact with the main action and that intervention will not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(1)(B) & (3). Whether to allow permissive intervention lies within the sound discretion of the district court. *See Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003).

Proposed Intervenors argue for permissive intervention in the alternative, noting the common questions of law or fact between this case and their FINRA proceeding. ECF 68 at 28

n.14. Plaintiff agrees there are common questions of law and fact between these proceedings, but Proposed Intervenors do not seek to intervene in this case in order to adjudicate those common issues. Rather, they seek to intervene in order to stop the Court from doing so. Plaintiff will suffer severe prejudice if Proposed Intervenors' untimely motion is granted. "Undue delay or prejudice to the rights of the original parties has been the focal point of most decisions dealing with permissive intervention." *Houey v. Carolina First Bank*, 890 F. Supp. 2d 611, 622-23 (W.D.N.C. 2012) (cleaned up); *see also Thomas*, 2014 WL 1315006, at *5 (denying permissive motion to intervene because it would unduly delay adjudication of the case without any corresponding benefit to the existing parties).

To recap, Proposed Intervenors principally seek to stay this case for however long it takes them—and possibly many others—to arbitrate the same claims before individual FINRA panels, even though FINRA's rules provide that the parties cannot be compelled to arbitrate class-action claims. Alternatively, Proposed Intervenors seek to defer resolution of the fully briefed summary judgment motion until after Plaintiff moves for class certification, the outcome of which will either return Proposed Intervenors to (1) the same position they are in now (if denied) or (2) a worse position (if granted) because Proposed Intervenors and other putative class members would then be bound by an adverse summary judgment decision. Given the prejudice to Plaintiff (and potential prejudice to absent class members), the Court should exercise its discretion to deny permissive intervention.

### IV. CONCLUSION

For these reasons, the Court should deny the motion to intervene. The motion is procedurally defective, untimely, and fails to establish grounds for intervention under either Rule 24(a) or 24(b). Proposed Intervenors lack any cognizable interest that would be impaired absent intervention, Plaintiff adequately represents any interests they may have in opposing

Defendants' pending summary judgment motion, and intervention would significantly delay this action, prejudice Plaintiff's right to have the fully briefed summary judgment motion adjudicated, and disadvantage putative class members.

Dated: February 28, 2025 　　　　　　　　　　Respectfully submitted,

|  |  |
|---|---|
| Thomas R. Ajamie* | /s/ John D. Hurst |
| John S. "Jack" Edwards, Jr.* | John D. Hurst |
| Courtney D. Scobie* | N.C. Bar No. 37680 |
| AJAMIE LLP | MOTLEY RICE LLC |
| Pennzoil Place - South Tower | 50 Clay Street, Suite 1 |
| 711 Louisiana, Suite 2150 | Morgantown, WV 26501 |
| Houston, TX 77002 | Telephone: (304) 413-0456 |
| Telephone: (713) 860-1600 | Facsimile: (304) 413-0458 |
| Facsimile: (713) 860-1699 | jhurst@motleyrice.com |
| tajamie@ajamie.com |  |
| jedwards@ajamie.com | Mathew P. Jasinski* |
| cscobie@ajamie.com | Douglas P. Needham* |
|  | M. Zane Johnson* |
| Robert A. Izard* | MOTLEY RICE LLC |
| Craig A. Raabe* | 27 Church Street, 17th Floor |
| Seth R. Klein* | Hartford, CT 06103 |
| Christopher M. Barrett* | Telephone: (860) 882-1681 |
| IZARD, KINDALL & RAABE LLP | Facsimile: (860) 882-1682 |
| 29 South Main Street, Suite 305 | mjasinski@motleyrice.com |
| West Hartford, CT 06107 | dneedham@motleyrice.com |
| Tel: (860) 493-6292 | zjohnson@motleyrice.com |
| Fax: (860) 493-6290 |  |
| rizard@ikrlaw.com | *Admitted *pro hac vice*. |
| craabe@ikrlaw.com |  |
| sklein@ikrlaw.com |  |
| cbarrett@ikrlaw.com |  |

## CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE

I, John D. Hurst, an attorney, certify, as required by the Court's June 18, 2024 Order in *In re Use of Artificial Intelligence*, No. 3:24-mc-104 (W.D.N.C.), that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working under his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ John D. Hurst*
John D. Hurst

## CERTIFICATE OF SERVICE

I, John D. Hurst, an attorney, certify that on February 28, 2025, I caused a copy of the foregoing document to be filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/ John D. Hurst*
John D. Hurst