UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| KELLY MILLIGAN,<br>ON BEHALF OF HIMSELF AND<br>ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>  vs.<br><br>MERRILL LYNCH, PIERCE, FENNER &<br>SMITH INC., BANK OF AMERICA CORP.,<br>and JOHN/JANE DOE 1, THE SENIOR VICE<br>PRESIDENT–HUMAN RESOURCES<br>GLOBAL BANKING AND GLOBAL<br>WEALTH AND INVESTMENT<br>MANAGEMENT ADMINISTRATION AT<br>BANK OF AMERICA CORP.,<br><br>    Defendants. | Civil Action No. 3:24-cv-00440-KDB-DCK<br><br>Judge Kenneth D. Bell<br>Magistrate Judge David Keesler<br><br><br><br>CLASS ACTION |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION
TO PROPOSED INTERVENORS' MOTION TO STAY**

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND .............................................................................................................. 1

III. ARGUMENT .................................................................................................................... 3

    A. The motion to stay should be denied because it is procedurally defective. ............ 4

    B. The motion to stay should be denied on the merits. ............................................... 5

        1. Proposed Intervenors' request for a mandatory stay under Section 3 of the FAA should be denied. ............................................................................. 5

        2. Any request for a discretionary stay should be denied. .............................. 9

IV. CONCLUSION ............................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304,
   2018 WL 9989754 (D.S.C. Oct. 9, 2018) ....................................................................... 8, 9, 11

*Cedeno v. Sasson*,
   100 F.4th 386 (2d Cir. 2024) ................................................................................................ 8

*Gomez v. Brill Securities, Inc.*,
   95 A.D.3d 32, 943 N.Y.S.2d 400 (N.Y. App. Div. 1st Dep't 2012) ..................................... 6

*Int'l Refugee Assistance Project v. Trump*,
   323 F. Supp. 3d 726 (D. Md. 2018) .................................................................................... 10

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .............................................................................................................. 4

*Lloyd v. J.P. Morgan Chase & Co.*,
   791 F.3d 265 (2d Cir. 2015) ............................................................................................ 7, 11

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ............................................................................................. 10

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) .............................................................................................................. 8

*Raymond James Fin. Servs., Inc. v. Cary*,
   709 F.3d 382 (4th Cir. 2013) ................................................................................................ 4

*Rutella v. Nat'l Sec. Corp.*,
   172 A.D.3d 1124, 102 N.Y.S.3d 41 (N.Y. App. Div. 2d Dep't 2019) .................................. 7

*Schwebke v. United Wholesale Mortg. LLC*,
   96 F.4th 971 (6th Cir. 2024) ................................................................................................. 8

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021) ................................................................................................. 8

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*,
   372 F.3d 339 (5th Cir. 2004) ............................................................................................. 8, 9

*Williford v. Armstrong World Indus., Inc.*,
   715 F.2d 124 (4th Cir. 1983) ............................................................................................. 4, 9

*Z.D. v. Group Health Coop.*, No. 11-cv-1119,
   2012 WL 1977962 (W.D. Wash. June 1, 2012) ................................................................. 8, 9

*Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531 HB,
　2013 WL 4857687 (S.D.N.Y. Sept. 11, 2013) ................................................................. 7, 11

**Statutes**

29 U.S.C. § 1002(2)(A)(ii) ........................................................................................................... 2

29 U.S.C. § 1132(a)(2) ................................................................................................................ 7

29 U.S.C. § 1132(a)(3) ............................................................................................................ 7, 9

9 U.S.C. § 3 ......................................................................................................................... passim

**Rules**

Local Rule 7.1(b) ........................................................................................................................ 5

**Regulations**

29 C.F.R. § 2560.503-1(b)(5) ..................................................................................................... 8

**Other Authorities**

Ann. Manual Complex Lit. § 21.133 (4th ed.) ......................................................................... 10

Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note (2003) ................................................ 10

FINRA Rule 13204(a)(4) ................................................................................................. 2, 6, 11

Plaintiff Kelly Milligan files this response in opposition to the motion to stay (ECF 69-70) filed by Jeffrey DeWees, Luke McKelvy, William Schellenberg, Jay Tamkoc, Alon Haim, Matthew Mendoza, and Reinhold Wigand (collectively, the "Proposed Intervenors").[1]

## I. INTRODUCTION

On April 30, 2024, Plaintiff commenced this putative class action to challenge Defendant Merrill Lynch's cancellation of his deferred compensation. Six months later, Proposed Intervenors brought the same claim in arbitration. They now seek to derail the former in favor of the latter. Their request rests on an untenable premise: that this Court should stay a properly filed putative class action, in favor of a copycat FINRA arbitration initiated months later, in direct contravention of both the Plan's forum-selection clause and FINRA's own rules barring putative class members from being compelled to arbitrate their claims. Because this case involves no "issue referable to arbitration," *see* 9 U.S.C. § 3, the motion should be denied.

In the alternative, Proposed Intervenors seek to force Plaintiff to move for class certification now (and the Court to rule on certification now), before the Court decides Defendants' pending motion for summary judgment. But in doing so, Proposed Intervenors advocate a procedure detrimental to their interests *and those of the other putative class members*: If the Court were to certify a mandatory class and then grant summary judgment to Defendants, that ruling would bind all class members. The current sequencing better protects putative class members by ensuring they will not be bound by an adverse ruling on the threshold ERISA question.

## II. BACKGROUND

On April 30, 2024, Plaintiff Kelly Milligan initiated this putative class-action lawsuit against Defendants. ECF 1. The proposed class comprises former Merrill Lynch financial advisors

---

[1] References to ECF __ at __ are to the page numbers assigned by the ECF system.

who had their deferred compensation in the WealthChoice Contingent Award Plan forfeited between April 30, 2018, and the date of judgment due to a provision of the plan (the "Cancellation Rule") that Plaintiff contends violates ERISA.[2] *Id*. ¶ 53. Plaintiff alleges that the plan constitutes an "employee pension benefit plan" under ERISA. ECF. 1 ¶ 3; *see also* 29 U.S.C. § 1002(2)(A)(ii). Plaintiff filed suit in this district because the plan documents provide that any dispute arising under the plan shall be conducted "solely in the courts of Mecklenburg County, North Carolina, or the federal courts for the United States for the Western District of North Carolina." ECF 1 ¶ 10.

On October 7, 2024, six months after Plaintiff commenced this action, Proposed Intervenors filed a FINRA arbitration claim that, like Plaintiff's claim here, alleges Merrill Lynch's deferred-compensation plan is subject to ERISA. *DeWees v. Merrill Lynch Pierce Fenner & Smith Inc.*, No. 24-02157 (FINRA); ECF 68 at 9; ECF 67, Lax Decl., ¶ 4; ECF 67-1, FINRA Statement of Claim. They did so despite the plan's forum-selection provision and even though FINRA's Code of Arbitration Procedure for Industry Disputes expressly states that any claim "based upon the same facts and law, and involves the same defendants as in . . . a putative class action . . . shall not be arbitrated," unless the parties bringing the claim provide notice that they will not participate in the class action or in any recovery that may result from the class action. FINRA Rule 13204(a)(4). On December 12, 2024, Proposed Intervenors (claimants in the arbitration) filed a notice with the FINRA director stating they would not participate in the class action or any recovery from it. ECF 68 at 19-20; ECF 67, Lax Decl. ¶ 14; ECF 67-11, Claimants' Dec. 12, 2024 Notice. FINRA then referred the issue to the arbitration panel appointed to hear their claims. ECF 68 at 20; ECF 67, Lax Decl. ¶ 7; ECF 67-4, FINRA Dec. 12, 2024 Notice. Thus, the FINRA panel will decide

---

[2] On January 6, 2025, Milligan moved to amend his complaint to include a related plan. ECF 62.

whether Proposed Intervenors' claims are arbitrable, despite the existence of this putative class action.

Meanwhile, Merrill Lynch answered Plaintiff's complaint on July 12, 2024, ECF 25, and on September 30, 2024, moved for summary judgment on the basis that ERISA does not apply. ECF 41. After conducting discovery targeted to that issue, Plaintiff filed his opposition brief on December 6, 2024. ECF 53. Merrill Lynch filed its reply on December 30, 2024, ECF 60, and the motion is set for hearing on March 4, 2025. On January 14, 2025, Plaintiff and Merrill Lynch jointly moved to stay all other deadlines in this case, ECF 63, and the Court granted this motion on January 16, 2025. ECF 64.

On February 14, 2024, Proposed Intervenors filed a motion to intervene and a proposed motion to stay this action pending their own arbitration. In both motions, Proposed Intervenors represented that they conferred with counsel for the parties. That is not correct; at a minimum, they did not confer with counsel for Plaintiff.

### III. ARGUMENT

Section 3 of the Federal Arbitration Act ("FAA") provides that a party may move for a mandatory stay of "any issue referable to arbitration."

> If any suit or proceeding be brought in any of the courts of the United States upon ***any issue referable to arbitration*** under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

3

9 U.S.C. § 3 (emphasis added). "Arbitration is a matter of consent, not coercion . . . and federal arbitration policy does not alter that maxim." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 385 (4th Cir. 2013).

A party may also move for a stay under the court's inherent power. The movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). For this reason, the movant "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

Frustrated that Defendants asked FINRA to stay their arbitration due to this putative class action, Proposed Intervenors now ask this Court to stay this lawsuit—which was filed months before their copycat arbitration—until their arbitration concludes. Alternatively, they ask that the Court stay all proceedings except those related to class certification. Their motion to stay is procedurally defective and meritless. It should be denied.

### A. The motion to stay should be denied because it is procedurally defective.

As a threshold matter, the motion to stay should be denied for failing to comply with Local Rule 7.1(b). That rule requires civil motions to "show that counsel have conferred and attempted in good faith to resolve areas of disagreement, or describe the timely attempts of the movant to confer with opposing counsel." The rule explicitly exempts only dispositive motions, motions where the non-moving party is unrepresented, and motions for extension of time to file responsive pleadings. A motion to stay falls into none of these exceptions. Although the Proposed Intervenors aver that their attorneys "consulted with counsel for the parties" before filing their motion, that is incorrect. Counsel for the Proposed Intervenors made no attempt to confer with counsel for

4

Plaintiff before filing.[3] Under Local Rule 7.1(b), a "motion that fails to show that the parties have properly conferred or attempted to confer may be summarily denied." The Court should exercise its authority to deny the motion on this basis alone.

B.  **The motion to stay should be denied on the merits.**

Proposed Intervenors are not entitled to a mandatory stay under Section 3 of the FAA, nor are they entitled to a discretionary stay under the Court's inherent powers.

1.  **Proposed Intervenors' request for a mandatory stay under Section 3 of the FAA should be denied.**

The motion to stay should be denied because this case involves no "issue referable to arbitration," as required by 9 U.S.C. § 3. Proposed Intervenors' motion is based principally on this provision. ECF 70 at 15-24. Even assuming an arbitration agreement between Plaintiff and Defendants exists, this case involves no "issue referable to arbitration" for two independent reasons. *First*, Proposed Intervenors ignore the forum-selection clause in the WealthChoice Plan, which expressly provides that any dispute arising thereunder shall be conducted "solely in the courts of Mecklenburg County, North Carolina, or the federal courts for the United States for the Western District of North Carolina." ECF 1 ¶ 10; ECF 41-5 at 5, ¶ 9 (2010 WealthChoice Award Agreement for Strategy Premium Award); *see also* ECF 41-6 to 41-15 (Plan award agreements with same forum selection clause). Plaintiff's claims specifically relate to the terms of this plan, not the terms of his employment at Merrill Lynch, and therefore cannot be arbitrated under the plan's express terms.

---

[3] Evidently, they did not confer with counsel for Defendants either. *See* ECF 75.

5

Case 3:24-cv-00440-KDB-DCK    Document 77    Filed 02/28/25    Page 9 of 17

***Second***, even if the Plan allowed Plaintiff to arbitrate his class claims, FINRA prohibits it. Proposed Intervenors rely on FINRA's Code of Arbitration Procedure for Industry Disputes, ECF 70 at 9-10, but it expressly prohibits the arbitration of class claims:

> A member or associated person ***may not enforce any arbitration agreement against a member of a certified or putative class action*** with respect to any claim that is the subject of the certified or putative class action until:
>
> - the class certification is denied;
>
> - the class is decertified;
>
> - the member of the certified or putative class is excluded from the class by the court; or
>
> - the member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

FINRA Rule 13204(a)(4) (emphasis added).[4]

Courts have consistently concluded that claims in pending class actions are not referable to arbitration under agreements, like Form U4, that incorporate FINRA's rules. In *Gomez v. Brill Securities, Inc.*, 95 A.D.3d 32, 943 N.Y.S.2d 400 (N.Y. App. Div. 1st Dep't 2012), for example, the New York Appellate Division held that, under FINRA Rule 13204(a)(4) (formerly 13204(d)), securities-industry employees could not be compelled to arbitrate claims asserted in a class action. The court explained that "where the arbitration agreement expressly precludes arbitration if the otherwise arbitrable claims are brought via a plenary class action, we cannot compel arbitration since the agreement proscribes it." 95 A.D.3d at 33; *see also id*. at 38 ("we simply enforce the

---

[4] A copy of FINRA Rule 13204 is included in Exhibit H (ECF 67-8) to the Lax Declaration (ECF 67) filed by Proposed Intervenors. To the extent Proposed Intervenors are concerned about their ability to proceed in arbitration as a result of this rule, *see* ECF 70 at 17-19, that issue is properly addressed to FINRA; indeed, it is pending before the arbitration panel. ECF 70 at 13.

express agreement between the parties, which, by incorporating by reference FINRA Rule 13204(d), precludes arbitration when arbitrable claims are brought by class action"); *accord Rutella v. Nat'l Sec. Corp.*, 172 A.D.3d 1124, 1126, 102 N.Y.S.3d 41 (N.Y. App. Div. 2d Dep't 2019) ("Under FINRA Rule 13204(a)(4), the defendants are not permitted to enforce an arbitration agreement against a member of a putative class action with respect to any claim that is the subject of the putative class action, unless, among other things, class certification is denied.").

Federal courts agree. Indeed, in a case involving Defendant Merrill Lynch, the Southern District of New York refused to compel arbitration of the plaintiffs' employment claims. *Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531 HB, 2013 WL 4857687, at *3 (S.D.N.Y. Sept. 11, 2013). The court held that FINRA Rules 13204(a)(4) and 13204(b)(4) expressly prohibit the enforcement of arbitration agreements against members of putative class or collective actions until class certification is denied, the class is decertified, or the member opts out. *Id*. at *2; *see also Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 271 (2d Cir. 2015) ("Since . . . plaintiffs' class and collective action claims are precluded from arbitration by FINRA Rule 13204, they fall outside the scope of the arbitration clause."); *Alakozai v. Chase Inv. Servs. Corp*., No. 11-cv-09178 SJO JEMX, 2012 WL 748584, at *3 (C.D. Cal. Mar. 1, 2012), *aff'd*, 557 Fed. App'x 658 (9th Cir. 2014) ("Unless class certification is denied, the class is decertified, either of the Plaintiffs are excluded from the class, or either of the Plaintiffs elect not to participate in the class, Defendant cannot enforce the arbitration provision against Plaintiffs.").

Moreover, although individual ERISA claims may be arbitrated, ECF 70 at 2-23, Plaintiff's claims for breach of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and reformation of the plan under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), seek plan-wide remedies that are not suitable for individual arbitrations. *See Cedeno v. Sasson*, 100 F.4th 386, 400-407 (2d

7

Cir. 2024) (barring application of arbitration provision that prohibited plan-wide remedies available under ERISA § 502(a)(2)); *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 621 (7th Cir. 2021) (same). Plaintiff seeks to reform a plan provision, namely, the cancellation rule, that affects a broad swath of participants and beneficiaries. Reformation cannot be obtained in an individual arbitration because an ERISA plan's provisions cannot be applied differently from one participant to the next. *See* 29 C.F.R. § 2560.503-1(b)(5) (ERISA requires that plan provisions be "applied consistently with respect to similarly situated claimants"); *Z.D. v. Group Health Coop.*, No. 11-cv-1119, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012) ("were this Court to find that the Plan requires Defendants to act in a certain fashion, ERISA would require [the plan administrator] to act in a similar fashion toward all beneficiaries"). Such claims are appropriate for class-action treatment. *See Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304, 2018 WL 9989754, at *12 (D.S.C. Oct. 9, 2018) (certifying class of former financial advisors who forfeited deferred compensation in ERISA plan).

Finally, to the extent one or more of Plaintiff's claims were arbitrable when this lawsuit began, they no longer are, because Defendants waived their right to arbitrate by engaging in discovery and filing a dispositive motion. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (party may waive right to arbitrate by intentionally relinquishing or abandoning that right); *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 976 (6th Cir. 2024) ("in most of our cases finding arbitration waiver, there has been an affirmative request for relief, such as the filing of a dispositive motion").

Proposed Intervenors' reliance on *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339 (5th Cir. 2004), is misplaced. ECF 68 at 27. In that case, the defendant moved to stay litigation pending the outcome of an arbitration between the plaintiff (the

8

defendant's former parent company) and the defendant's new parent company. Although the defendant was not a signatory to the arbitration agreement between the plaintiff and the defendant's parent, the defendant was entitled to a stay because the plaintiff was essentially seeking to recover the same payment through different legal theories in different forums, with both the defendant and its parent potentially liable. As a result, the plaintiff's claims against the defendant were referable to arbitration. *See* 372 F.3d at 345 (concluding that the plaintiff "only suffered one alleged harm, so the resulting litigation and the arbitration are 'inherently inseparable' from the instant litigation"). Here, in contrast, Plaintiff's claims are *not* referable to arbitration.

Finally, a stay in *Waste Management* served to prevent duplicative and potentially inconsistent adjudications. 372 F.3d at 345. Here, however, the entire premise of Proposed Intervenors' motion is that duplicative and potentially inconsistent adjudications are okay— so long as they occur in separate, individual arbitrations, before this case is resolved. In contrast, Plaintiff seeks to prevent duplicative and potentially inconsistent adjudications by pursuing his claims as a class action. *Z.D.*, 2012 WL 1977962, at *7 (recognizing in action under ERISA § 502(a)(3) that ERISA required the plan to act in a similar fashion toward all beneficiaries to avoid putting defendants in an "inescapable legal quagmire" and "truly unwinnable position" of not being able to comply with one judgment without violating another); *see, e.g.*, *Berry*, 2018 WL 9989754, at *12.

### 2. Any request for a discretionary stay should be denied.

As an alternative to their motion to stay this action in its entirety under 9 U.S.C. § 3, Proposed Intervenors move for a discretionary stay, by which they seek to defer consideration of Defendants' motion for summary judgment until after Plaintiff moves for class certification. ECF 70 at 21-24. Proposed Intervenors have not shown by "clear and convincing" evidence they are entitled to this relief. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

In considering a motion to stay, courts typically examine three factors: "(1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

***First***, Proposed Intervenors have not shown that a stay would improve judicial economy. In theory, an early ruling granting class certification could improve judicial efficiency by resolving Plaintiff's, Proposed Intervenors', and putative class members' ERISA claims against Defendants together, win *or* lose. But resolving Defendants' motion for summary judgment first is even more efficient.[5] If granted, then the parties will have avoided spending unnecessary resources conducting discovery (including depositions) and briefing class issues, but Proposed Intervenors and other putative class members will not be formally bound by the decision. If denied, then Plaintiff can move for class certification on much surer footing. This is why Plaintiff agreed to stay the case pending a ruling on summary judgment. In contrast, a stay is likely to harm judicial economy, particularly given that the summary judgment motion is fully briefed and will be argued on March 4, 2025.

---

[5] It is also expressly contemplated under Rule 23. "The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note (2003); *see also* Ann. Manual Complex Lit. § 21.133 (4th ed.) ("The court may rule on motions pursuant to Rule 12, Rule 56, or other threshold issues before deciding on certification; however, such rulings bind only the named parties.").

10
Case 3:24-cv-00440-KDB-DCK   Document 77   Filed 02/28/25   Page 14 of 17

***Second***, Proposed Intervenors have not shown they would suffer any hardship in the absence of a stay. If the Court were to grant summary judgment to Defendants, Proposed Intervenors acknowledge that an adverse summary-judgment decision "prior to class certification" would not bind them. ECF 68 at 8, 27. In contrast, Proposed Intervenors would suffer hardship if the Court grants their requested stay, certifies a mandatory class, and then grants summary judgment to Defendants—because they would then be bound by that decision. By agreeing to resolve Defendants' summary judgment motion before class certification, Plaintiff has sought to *protect* the interests of the putative class because an adverse decision would bind only him.

Insisting that ERISA claims are arbitrable, Proposed Intervenors assert that they cannot be certified as a class action. ECF 70 at 22. As shown above, however, the opposite is true: Because these claims are suitable for class certification, *see, e.g.*, *Berry*, 2018 WL 9989754, at *12, Plaintiff (and other putative class members) may not be compelled to arbitrate them. *See* FINRA Rule 13204(a)(4); *Zeltser*, 2013 WL 4857687, at *3; *Lloyd*, 791 F.3d at 271.

***Third***, deferring resolution of Defendants' fully briefed motion for summary judgment would prejudice Plaintiff and Defendants. It would require them to expend considerable resources and time on class-certification discovery and briefing without knowing whether the Court believes that Plaintiff's ERISA claims are viable. It is certainly not "clear and convincing" that a stay would not prejudice Plaintiff and Defendants.

In sum, Proposed Intervenors seek to defer resolution of the fully briefed summary judgment motion until after Plaintiff moves for class certification, the outcome of which will either return Proposed Intervenors to (1) the same position they are in now (if denied) or (2) a worse position (if granted) because Proposed Intervenors and other putative class members would then be bound by an adverse summary judgment decision. Given the prejudice to Plaintiffs (and

potential prejudice to absent class members), the Court should exercise its discretion to reject this approach.

## IV. CONCLUSION

Because this case involves no "issue referable to arbitration" under 9 U.S.C. § 3, and there are no "clear and convincing" grounds for a discretionary stay, Proposed Intervenors' motion to stay should be denied in its entirety.

Dated: February 28, 2025

Respectfully submitted,

/s/ John D. Hurst

Thomas R. Ajamie*
John S. "Jack" Edwards, Jr.*
Courtney D. Scobie*
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com
cscobie@ajamie.com

Robert A. Izard*
Craig A. Raabe*
Seth R. Klein*
Christopher M. Barrett*
IZARD, KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

John D. Hurst
N.C. Bar No. 37680
MOTLEY RICE LLC
50 Clay Street, Suite 1
Morgantown, WV 26501
Telephone: (304) 413-0456
Facsimile: (304) 413-0458
jhurst@motleyrice.com

Mathew P. Jasinski*
Douglas P. Needham*
M. Zane Johnson*
MOTLEY RICE LLC
27 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
mjasinski@motleyrice.com
dneedham@motleyrice.com
zjohnson@motleyrice.com

*Admitted *pro hac vice*.

## CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE

I, John D. Hurst, an attorney, certify, as required by the Court's June 18, 2024 Order in *In re Use of Artificial Intelligence*, No. 3:24-mc-104 (W.D.N.C.), that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working under his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ John D. Hurst*
John D. Hurst

## CERTIFICATE OF SERVICE

I, John D. Hurst, an attorney, certify that on February 28, 2025, I caused a copy of the foregoing document to be filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/ John D. Hurst*
John D. Hurst

13

Case 3:24-cv-00440-KDB-DCK   Document 77   Filed 02/28/25   Page 17 of 17