**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| KELLY MILLIGAN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INC., BANK OF AMERICA CORP., and JOHN/JANE DOE 1, THE SENIOR VICE PRESIDENT–HUMAN RESOURCES GLOBAL BANKING AND GLOBAL WEALTH AND INVESTMENT MANAGEMENT ADMINISTRATION AT BANK OF AMERICA CORP.,<br><br>    Defendants,<br><br>and<br><br>JEFFREY DeWEES, REINHOLD WIGAND, JAY TAMKOC, WILLIAM SCHELLENBERG, MATTHEW MENDOZA, LUKE McKELVY, and ALON HAIM,<br><br>    Proposed Intervenor-Plaintiffs. | Case No. 3:24-cv-00440-KDB-DCK<br><br>Judge Kenneth D. Bell<br><br>Magistrate Judge David Keesler |

**DEFENDANTS' COMBINED OPPOSITION TO THE PROPOSED INTERVENORS'
MOTION TO INTERVENE (DKT. 66) AND MOTION TO STAY (DKT. 69)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

   I.   Relevant Procedural History in This Case. ......................................................... 2

   II.   Former FAs Begin Filing Copycat Claims Against Merrill in FINRA. ............................. 4

   III.   Claimants Elect to Pursue Their ERISA Claims in FINRA. ......................................... 6

ARGUMENT ........................................................................................................... 7

   I.   Claimants' Motion Should be "Summarily Denied" Because they Failed to Comply —and Affirmatively Misrepresented their Compliance—with Local Rule 7.1(b). ............ 7

   II.   The Court Should Deny Claimants' Motion to Intervene. ................................................ 9

     A.   Claimants Waived their Ability to Participate in this Case. ......................................... 9

     B.   Intervention Is Untimely In Any Event. .................................................................... 10

     C.   Regardless, Claimants Cannot Satisfy Rule 24(a)(2)'s Core Requirements. ................ 11

     D.   Permissive Intervention Is Not Warranted. ............................................................... 14

   III.   Even if Permitted to Intervene, the Court Should Deny Claimants' "Motion to Stay." 15

     A.   Claimants Have No Basis for a Stay Under the Federal Arbitration Act. ..................... 16

     B.   Claimants Offer No Reason to Delay This Case or Await Class Certification. ........... 20

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*,
    675 F.2d 610 (4th Cir. 1982) ...................................................................................5

*Alt v. EPA*,
    758 F.3d 588 (4th Cir. 2014) ...........................................................................10, 11

*Amati v. City of Woodstock*,
    176 F.3d 952 (7th Cir. 1999) .................................................................................21

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)...............................................................................................17

*Blake v. Pallan*,
    554 F.2d 947 (9th Cir. 1977) .................................................................................13

*In re Cigar Ass'n of Am.*,
    812 F. App'x 128 (4th Cir. 2020) .........................................................................10

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) ................................................................................3

*Crump v. Mecklenburg Cnty. Det. Ctr. Officers*,
    2023 WL 416194 (W.D.N.C. Jan. 25, 2023) .........................................................8

*Democracy N. Carolina v. Hirsch*,
    345 F.R.D. 147 (M.D.N.C. 2023) .........................................................................13

*Derossett v. Jonathan C. Patrowicz, D.O., P.A*,
    2022 WL 4448859 (D. Md. Sept. 23, 2022) ........................................................22

*Gautreaux v. Pierce*,
    743 F.2d 526 (7th Cir. 1984) .................................................................................13

*Grainger v. Ottawa Cnty., Michigan*,
    90 F.4th 507 (6th Cir. 2024) ...........................................................................12, 13

*John S. Clark Co. v. Faggert & Frieden, P.C.*,
    65 F.3d 26 (4th Cir. 1995) .....................................................................................10

*Jones v. GES Exposition Servs., Inc.*,
    2004 WL 2011396 (N.D. Ill. Sept. 7, 2004) ........................................................13

Case 3:24-cv-00440-KDB-DCK    Document 78    Filed 02/28/25    Page 3 of 29

*Lowery v. Stovall*,
  92 F.3d 219 (4th Cir. 1996) ............................................................. 10

*Matthews v. Priority Energy Servs., LLC*,
  2016 WL 7633990 (E.D Tex. Dec. 2, 2016) ........................................ 19

*Mendez v. Puerto Rican Int'l Cos., Inc.*,
  553 F.3d 709 (3d Cir. 2009) ......................................................... 19, 20

*Norman v. Brown*,
  2023 WL 11938699 (W.D.N.C. July 5, 2023) ....................................... 9

*O'Bar v. Lowe's Home Ctrs., Inc.*,
  2007 WL 1299180 (W.D.N.C. May 2, 2007) ...................................... 21

*Player v. Maher Terminals, Inc.*,
  841 F.2d 1123 (4th Cir. 1988) .......................................................... 21

*RLI Ins. Co. v. Nexus Servs., Inc.*,
  2018 WL 5621982 (W.D. Va. Oct. 30, 2018) ...................................... 13

*Sierra Club v. EPA*,
  2024 WL 3625682 (S.D. W. Va. Aug. 1, 2024) ............................... 12, 14

*Speroni S.p.A. v. Perceptron, Inc.*,
  12 Fed. Appx. 355 (6th Cir. 2001) .................................................... 10

*Taylor v. Pilot Corp.*,
  697 F. App'x 854 (6th Cir. 2017) .................................................... 20

*Teague v. Bakker*,
  931 F.2d 259 (4th Cir. 1991) .......................................................... 12

*Ticor Title Ins. Co. v. Brown*,
  511 U.S. 117 (1994) ........................................................................ 3

*United States v. Shaffer Equip. Co.*,
  11 F.3d 450 (4th Cir. 1993) .............................................................. 8

**Statutes**

9 U.S.C. § 3 .......................................................................... *passim*

9 U.S.C. § 4 ...................................................................................... 16

9 U.S.C. § 16 ............................................................................... 11, 14

9 U.S.C. § 1109 .................................................................................. 3

29 U.S.C. § 1132(a) ..................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 11 ....................................................................................................8

Fed. R. Civ. P. 23 ..................................................................................................21

Fed. R. Civ. P. 23(b)(1).................................................................................. *passim*

Fed. R. Civ. P. 23(c)(1)......................................................................................3, 21

Fed. R. Civ. P. 24(a)(2)...............................................................9, 10, 11, 12, 13

Fed. R. Civ. P. 24(b)(3)........................................................................................14

Fed. R. Civ. P. 56 ..................................................................................................21

FINRA Rule 1013(a)(2)...........................................................................................5

FINRA Rule 13200(a)..............................................................................................5

FINRA Rule 13204(a)(1)..........................................................................................6

FINRA Rule 13204(a)(2)...........................................................................2, 7, 9, 18

N.C. R. Prof. Conduct 3.3........................................................................................8

# INTRODUCTION

The Motion to Intervene (Dkt. 66) and ensuing Motion to Stay (Dkt. 69) are a transparent attempt by seven former Merrill Lynch financial advisors ("Claimants") to leapfrog this first-filed action in hopes of beating the Court to a ruling on the merits of copycat claims they filed several months later in arbitration. The Court should not sanction this effort. In fact, the Court should not even consider it. Claimants did not, despite Local Rule 7.1(b), confer with Defendants regarding this motion and, worse, (mis)represented to the Court that they had.

But more importantly, Claimants **concede** that (i) they already are "***actively arbitrating*** their ERISA claims" in FINRA and Merrill has not tried to force them into court (Dkt. 68 at 21); and (ii) the Court's ruling on Defendants' pending summary judgment motion—filed before Claimants even initiated their claims in FINRA—***will not*** be binding on them (*id.* at 4). They do not seek to intervene to assert any claims against any party here. Nor do they seek to enforce any actual arbitration agreement—not theirs, not Plaintiff Milligan's, and not any other putative class member's either. Rather, Claimants' only alleged interest in intervening here is their fear that this Court may rule in Defendants' favor on Milligan's individual claims, which then might "seriously affect" the outcome of their copycat claims in FINRA as persuasive authority. Dkt. 68 at 8, 27; Dkt. 70 at 15. Nothing about this scenario justifies Claimants' attempt to intervene now, much less their unprecedented request that this Court stay this "entire proceeding"—***for years***—so they can arbitrate their ERISA claims in FINRA first. As Claimants acknowledge, more than 250 claimants have already filed 34 copycat FINRA cases, and Claimants' counsel purport to have at least 70 more. Dkt. 68, at n.1. There is no basis in fact or law that gives Claimants standing to ask the Court to freeze this first-filed action until every one of these individuals can arbitrate similar ERISA claims under their own arbitration agreements.

The Court has before it a pending summary judgment motion that, if granted, would

dispose of Milligan's claim only. The Federal Rules of Civil Procedure expressly authorize a pre-certification motion—which, here, also involved a period of additional discovery that Milligan felt was needed to oppose the motion. *See* Dkts. 48, 50, 51. Nothing about this was improper or "deceptive," particularly given that Milligan is represented by experienced ERISA counsel. Dkt. 68 at 28. What Claimants really mean is that they would prefer their FINRA case to zoom along, and they dislike that Merrill asked the FINRA panel handling that case to stay it temporarily pending further clarity as to how this lawsuit will proceed, given that Merrill has been forced to defend identical claims in two forums. Dkt. 68 at 10; Dkt. 70, at 13.

But those procedural issues are, at this point, for the FINRA panel to resolve, not this Court. In fact, the panel has not even ruled on the stay request, setting it for hearing in April. Ex. 1, Declaration of Matthew Russell ("Russell Decl.") ¶¶ 8-10. Critically, to justify their opposition to the stay request, Claimants represented to the panel that, "pursuant to FINRA Rule 13204(a)(2), that they ***will not participate in the class action*** or in any recovery that may result from the class action pending against Merrill Lynch." Dkt. 67-11 at 2 (emphasis added). And yet, contradicting this very notice, they not only now seek to "participate in th[is] class action," but are effectively asking the Court to shut it down.

Boiled down, Claimants' Motions arise from a concern that the Court's summary judgment ruling might adversely impact their ability to prevail in arbitration—and so they would like to beat the Court to the punch. But this is not a basis to intervene, much less put this lawsuit on hold until mid-2027 or beyond. The Court should reject Claimants' attempt to "participate in th[is] class action," as they explicitly represented to FINRA they would not do, and deny both motions.

## FACTUAL BACKGROUND

### I.    Relevant Procedural History in This Case.

Milligan filed this lawsuit on April 30, 2024, as a putative class action on behalf of all

former Merrill FAs who did not earn, and therefore were not paid, long-term contingent incentive awards under the WealthChoice Contingent Award Plan ("WC Plan"). Dkt. 1, ¶¶ 6, 11. He claims the WC Plan is unlawful because it is an "employee pension benefit plan" governed by ERISA and, therefore, its terms violate the statute's vesting and anti-forfeiture requirements. *Id.* ¶¶ 42-45; Dkt. 41-1 at 14-15. Based on this theory, Milligan asserts three causes of action arising under ERISA. Dkt. 1, ¶¶ 61-64 (Count I, declaratory and equitable relief under 29 U.S.C. § 1132(a)(3)); *id.* ¶¶ 65-70 (Count II, reformation of Plan terms under 29 U.S.C. § 1132(a)(3) and recovery of benefits due, 29 U.S.C. § 1132(a)(1)(B)); *id.* ¶¶ 71-80 (Count III, recovery of "losses to the plan" for alleged breaches of fiduciary duty under 29 U.S.C. §§ 1132(a)(2) and 1109).

The Complaint seeks to certify a class under each provision of Rule 23(b). Dkt. 1 ¶¶ 58-60; *see* Fed. R. Civ. P. 23(b). As relevant here, if a class is certified under Rule 23(b)(1) or (b)(2), as Milligan first proposes, participation would be mandatory. *E.g.*, *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (class members may not opt-out of a Rule 23(b)(1) or (b)(2) class).

On September 30, 2024, Defendants filed a motion for summary judgment. Dkts. 41, 41-1, 58. Because no class is certified, Defendants' motion, if successful, would resolve Milligan's claims only, which Claimants concede. Dkt. 68 at 8, 27. This motion is fully briefed and ripe for decision. *See* Dkts. 41, 53, 58; *see also* Feb. 19, 2025 Order (setting a hearing on the motion).[1]

---

[1] As discussed below (*infra* at 7-8, 15), there is no dispute that the summary judgment motion will not dispose of—***regardless of the outcome***—the claims of any putative class member (including Claimants). Nor is there anything improper about Defendants seeking summary judgment on Milligan's claims before a motion for class certification; to the contrary, the Federal Rules allow it. *See* Fed. R. Civ. P. 23(c)(1), Advisory Cmte. Notes to 2003 Amendment ("The Party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified."); *see, e.g.*, *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) (nothing precludes defendants "from seeking a dispositive ruling on the merits prior to class certification," also noting this practice is "looked upon . . . favorably").

After briefing Defendants' summary judgment motion, Milligan filed a motion for leave to amend the Complaint. Dkt. 62. Milligan did not propose adding new causes of action. *See* Dkt. 62-1. Rather, he proposed additional allegations relating to a so-called "RSU Plan," which he also contends violates ERISA in the same manner as the WC Plan. *E.g.*, Dkt. 62-1 ¶¶ 22-23, 27, 31; *see also* Dkt. 62-2 at 19-25 (redline comparison). In seeking leave to amend, Milligan represented to this Court that the "core of the complaint remains the same," and "none of [the proposed] changes impact[] Defendants' pending motion for summary judgment[.]" Dkt. 62-3 at 3.

Given the fully briefed summary judgment motion, and Milligan's position that "none of [the proposed] changes impact[]" that pending motion, *id.*, the Parties jointly moved to stay the remaining case deadlines until the Court rules on the motion for summary judgment. Dkt. 63. The Court granted the stay on January 16, Dkt. 64, and is set to hear arguments on the motion for summary judgment on March 4, 2025.

## II. Former FAs Begin Filing Copycat Claims Against Merrill in FINRA.

After Milligan filed his Complaint, a slew of former FAs began asserting copycat claims against Merrill in arbitration. To date, around 250 former FAs have done so, spanning 34 matters—*all* of which were filed *after* Milligan filed this case in April 2024. Russell Decl. ¶ 6. While there is some variation in the specific claims, all take the same general approach in asserting claims under ERISA. Cribbing from Milligan's Complaint, the claims parrot his theory—and many of his factual allegations verbatim—by claiming the WC Plan is a "pension plan" under ERISA and thus violates ERISA's vesting and anti-forfeiture requirements. *See, e.g.*, Dkt. 67-1 (Claimants' FINRA Statement of Claim). Unlike Milligan, these FAs did not pursue their claims in court, but rather sought to arbitrate in FINRA.[2] This is unsurprising. For one, if filed in court, the "first-filed rule"

_____

[2] Claimants criticize Defendants for not notifying the Court of the pending arbitrations. Dkt. 68 at 21-22. But there has never been a reason to do so. These putative class members are—as Claimants

would have prevented such claims from overtaking Milligan's first-filed action. *See Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982) ("Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed.").

Moreover, it is undisputed that these former FAs may seek arbitration of their claims under their Form U4s and FINRA Rules. Each putative class member executed a FINRA-mandated Form U4 registration, which includes an arbitration agreement.[3] The Form U4's arbitration provision states that the signatory "agree[s] to arbitrate any dispute, claim or controversy that may arise between [the FA] and [his or her] *firm . . .* that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA]." Dkt. 67-9 at 16 (exemplar Form U4). FINRA's Rules further explain that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." FINRA Rule 13200(a). But as the Form U4—and the FINRA Rules it incorporates—make clear, this duty to arbitrate is not absolute. *See* Dkt. 67-9 (arbitration is only required for disputes that are "***required to be arbitrated*** under the rules, constitutions or by-laws of [FINRA]"); FINRA Rule 13200(a) ("***Except as otherwise provided*** in the Code, . . ."). In other words, Milligan's duty to arbitrate extends only to those types of claims that are ***required*** to be arbitrated under the Form U4 and FINRA Rules. Here, Milligan appears to have chosen to proceed in this Court by relying

---

expressly agree—"actively arbitrating" in FINRA. Nor has Merrill asked this Court to take any action to preclude these arbitrations. And, again, Claimants concede the pending summary judgment motion will not dispose of these other FINRA claimants' claims.

[3] Under FINRA rules, "[r]epresentatives of broker-dealers, investment adviser or issuers of securities must be registered with the appropriate jurisdictions and/or self-regulatory organizations (SROs)." *See* https://tinyurl.com/45ckrutd; FINRA Rule 1013(a)(2). The Form U4, or "Uniform Application for Securities Industry Registration or Transfer" establishes this registration. *Id.*

on FINRA Rule 13204(a)(1), which provides that "[c]lass action claims may not be arbitrated under the [FINRA] Code."[4]

### III.    Claimants Elect to Pursue Their ERISA Claims in FINRA.

Claimants filed their Statement of Claim in FINRA on October 7, 2024—after Defendants had already filed their summary judgment motion here. *See* Dkt. 67-1 ¶¶ 12, 29-51, 52-69. In FINRA, Merrill has not argued that Claimants' claims do not belong there; rather, as Claimants concede, on December 3, 2024, Merrill executed a FINRA submission agreement, memorializing the submission of the "present matter"—*i.e.*, Claimants' individual ERISA, wage, and common law claims—"in controversy, as set forth in [Claimants'] statement of claim . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."[5] Dkt. 67-2.

Merrill also filed a combined answer and motion to stay Claimants' FINRA proceedings. In support, Merrill explained that—given Milligan's first-filed class action, which asks to certify a mandatory class (*supra* at 3-4)—the prudent and most efficient way to proceed in FINRA would be to pause those proceedings temporarily, until this Court could rule on class certification (*i.e.*, whether Claimants may be members of a mandatory class) or the merits of Milligan's individual claims (*i.e.*, whether this case would continue at all, thus potentially removing the prospect of an overlapping class action that triggers Rule 13204). Dkt. 67-3. Merrill made clear that Claimants— no matter the outcome here—would then be free to pursue their claims. That is, they could do so either in FINRA (i.e., if no mandatory class is certified or Milligan's claims are resolved at

---

[4] While not relevant here, given that Milligan and Claimants are bound only by the Form U4s, it is possible to have a distinct, standalone arbitration agreement and/or class action waiver that more broadly requires individual arbitration or prohibits filing or participating in any class action claims.

[5] A FINRA Submission Agreement simply memorializes the parties' agreement to submit a given dispute "to the arbitration process, and to be bound by FINRA's arbitration procedures and rules and any award that may be rendered by the arbitrator(s)" in that case; it does not represent a blanket agreement to submit all similar disputes to arbitration. *See* FINRA Regulatory Notice 09-04.

summary judgment) or as mandatory class members, if certified under Rule 23(b)(1) or (b)(2). *Id.* at 5 (if summary judgment is granted, "there would no longer be a pending class action and, . . . Claimants may then continue to pursue their claims in FINRA."). In response, Claimants *disclaimed their right to participate in this class action.* Specifically:

> Claimants hereby provide notice, pursuant to FINRA Rule 13204(a)(2), that they ***will not participate*** in the class action or in any recovery that may result from the class action pending against Merrill Lynch in the Western District of North Carolina, *Milligan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, *et al.*, No. 3:24-cv-0044000 (W.D.N.C.).

Dkt. 67-11 at 2; *see also* FINRA Rule 13204(a)(2) (providing that claims "based upon the same facts and law" as a putative class action "shall not be arbitrated" unless such a notice is filed first).

The motion to stay was first considered by FINRA's Director of Dispute Resolution who—contrary to Claimants' repeated assertion (Dkt. 68 at 6, 22)—***did not*** "deny" the motion, but rather expressly referred it to the FINRA panel that will handle the case. Dkt. 67-4. The panel, in turn, heard some argument but directed the parties to provide further briefing and set a hearing for April 8, 2025. Ex. A at 2; Russell Decl. ¶¶ 8-10. Accordingly, the FINRA panel overseeing Claimants' arbitration ***has not even decided*** Merrill's motion to stay. *Id.* Regardless, as Claimants concede, they are "actively arbitrating their ERISA claims with Merrill in the FINRA Arbitration," while any ruling on Defendants' summary judgment motion in this case will not bind them (or the FINRA panel). Dkt. 68 at 25; *see also id.* at 27 ("Coming prior to class certification, a ruling in Merrill's favor ***will not*** be formally binding on putative members of the proposed class") (emphasis added).

## ARGUMENT

### I. Claimants' Motion Should be "Summarily Denied" Because they Failed to Comply—and Affirmatively Misrepresented their Compliance—with Local Rule 7.1(b).

As a threshold matter, the Court should "summarily den[y]" Claimants' motion to intervene for not only failing to comply with Local Rule 7.1(b), but for misrepresenting that they had done

so. Claimants' Motion stated that "prior to filing th[eir] motion to intervene, counsel for [Claimants] consulted with counsel for the parties and could not resolve the dispute reflected in this motion." Dkt. 66, ¶ 6; Dkt. 69, at 2 (same). That was false.

Claimants' counsel did not contact Defendants' counsel about any attempt to intervene in this case, much less "attempted in good faith to resolve areas of disagreement," L.R. 7.1(b), before filing their motion. *See* Ex. 1, Russell Decl. ¶¶ 4-5; Ex. 2, Decl. of R. Muckenfuss ("Muckenfuss Decl.") ¶¶ 3-4. Defendants' counsel has contacted Claimants' North Carolina counsel—both by phone and email—to understand the basis for their representation to the Court, but to date, no explanation has been provided. *Id.* ¶¶ 5-11. Worse, despite being on notice that Defendants' counsel has no record of any attempt to confer and disputes their conferral averment, Claimants have not amended it, in contravention of their duty of candor (N.C. R. Prof. Conduct 3.3) and Rule 11 obligations (Fed. R. Civ. P. 11). *E.g.*, *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 463 (4th Cir. 1993) ("[O]ur adversary system depends on a most zealous safeguarding of truth and candor"). As Local Rule 7.1(b) contemplates, therefore, the Court should "summarily den[y]" Claimants' motion to intervene. *See* L.R. 7.1(b).

Indeed, this result would be warranted even if Claimants had merely ignored Local Rule 7.1(b), rather than misrepresented their compliance. In far less egregious circumstances, courts have denied motions where movants do not comply with the Local Rule. For example, in *Branch v. Jefferson Capital Systems, LLC*, a pro se plaintiff's motion was deemed "improper" and denied because it did not "include any representation that Plaintiff contacted or attempted to contact defense counsel regarding the [motion]." 2023 WL 8103158, at *1 (W.D.N.C. Nov. 21, 2023); *see also Crump v. Mecklenburg Cnty. Det. Ctr. Officers*, 2023 WL 416194, at *1 (W.D.N.C. Jan. 25, 2023) (denying motion where plaintiff did "not certify in the [motion] that he attempted to confer

with defense counsel before filing"); *Norman v. Brown*, 2023 WL 11938699, at *2 (W.D.N.C. July 5, 2023) ("The lack of certification alone warrants the denial of the Motion.").

## II.    The Court Should Deny Claimants' Motion to Intervene.

Regardless, Claimants are incorrect in asserting an entitlement to intervene in this case so they can advance a futile "motion to stay." As discussed below, Claimants, who by their own admission are ***actively arbitrating*** their ERISA claims with Merrill in the FINRA Arbitration" (Dkt. 68 at 25), have not only failed to satisfy the requirements of Rules 24(a)(2) and (b), but affirmatively disclaimed their participation in this case. The motion to intervene should be denied.

### A.    Claimants Waived their Ability to Participate in this Case.

The Court need not grapple with the contours of Rule 24 to deny Claimants' motion and allow this case proceed uninterrupted. Claimants have expressly and unreservedly disclaimed their ability to participate here. Specifically, Claimants represented to FINRA, "pursuant to FINRA Rule 13204(a)(2), that they ***will not participate*** in the class action or in any recovery that may result from the class action pending against Merrill" in this Court. Dkt. 67-11 at 2 (emphasis added). As the Fourth Circuit mandates, the Court should hold Claimants to their decision and deny the motion to intervene. The recent decision in *Rogers v. Tug Hill Operating, LLC* is instructive. In that case, the Fourth Circuit reversed a district court that improperly allowed intervention where the intervenor "disclaimed any right to be a party" to a relevant federal action. 76 F.4th 279, 290 (4th Cir. 2023). Specifically, the proposed intervenor entered into a contract stating that it "will not be a party to disputes or negotiations of disputes between [other relevant parties]." *Id.* at 291. Based on that representation, the Fourth Circuit held that the proposed intervenor "waived whatever right it may otherwise have had to be a party to [plaintiff's] action against [defendant], ***thus precluding its intervention under Rule 24." Id.*** (emphasis added). The same applies here, where Claimants expressly stated they would not participate in this class action.

9

Moreover, given that Claimants' representations were made to another tribunal, the doctrine of judicial estoppel further cements their inability to intervene. This doctrine "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) *Speroni S.p.A. v. Perceptron, Inc.*, 12 Fed. Appx. 355, 358 (6th Cir. 2001) ("It is widely held that a position taken in arbitration can give rise to judicial estoppel," and collecting cases). The purpose is to "prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Id.* Claimants are doing just that. They have ***intentionally*** taken conflicting positions to gain the advantage of being able to "actively arbitrat[e]" their claims at FINRA, while also trying to stall this action—despite disclaiming any intention or ability to participate in it. The Court should not countenance this type of gamesmanship. *See, e.g.*, *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995) (while judicial estoppel should not be used in the case of "inadvertence or mistake," it should be applied to prevent litigants gaming the courts).

At bottom, like the proposed intervenors in *Rogers*, Claimants made clear that they "***will not participate***" in this case. *Supra* at 2, 7, 9. By seeking to intervene and become a formal party to this action, Claimants now seek to "participate." They cannot have it both ways. And, consistent with judicial estoppel principles, Claimants should not now be allowed to "opportunistically claim that intervention is necessary." *Rogers*, 76 F.4th at 291; *Lowery*, 92 F.3d at 223.

## B. Intervention Is Untimely In Any Event.

Claimants' motion to intervene also is untimely. In the Fourth Circuit, "[t]imeliness is a cardinal consideration of whether to permit intervention." *In re Cigar Ass'n of Am.*, 812 F. App'x 128, 137 (4th Cir. 2020); *see* Fed. R. Civ. P. 24(a)(2) (allowing intervention as of right "[o]n timely motion"). This limitation, which is left to the Court's discretion, aims to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Id.*; *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir.

10

2014) (it is appropriate for a court to be "reasonably reluctant to arrest the momentum of the lawsuit so near to its final resolution"). Here, Claimants' intervention motion, *by design*, aims to do just that: scuttle the case before a summary judgment ruling. It is untimely for this reason alone.

It is also untimely based on the three factors courts use to assess whether an intervention has come too late. *Alt*, 758 F.3d at 591. First, this "suit has progressed" to an advanced stage, with a fully briefed, potentially case-dispositive summary judgment motion set for hearing in a few days. *Id.* Second, the existing parties to this case will obviously suffer "prejudice [from the] resulting delay" of intervention. *Id.* The whole point of Claimant's intervention is to move for a stay and delay this case indefinitely, apparently until the conclusion of *every* FINRA arbitration that is now pending or *will be* pending in the future.[6] As it stands, Merrill has FINRA hearings that are currently scheduled out until mid-*2027*, and Claimants say there are more to come. Dkt. 68 at 5, n.1; Dkt. 70 at 9; Russell Decl. ¶¶ 6-7. Third, there is no "excuse" for the tardiness of Claimants' intervention. *Alt*, 758 F.3d at 591. It is entirely a function of their decisions to (i) copy Milligan's pleadings for their own purposes (despite those very same pleadings putting them on notice of Milligan's intent to move for a mandatory class that includes them), and (ii) delay initiating their FINRA arbitration until *after* Merrill moved for summary judgment. If Claimants took issue with Milligan's (or Defendants') litigation strategy, they should have sought to intervene months ago. Taken together, Claimants cannot show their motion was "timely filed" as required under Rule 24.

### C. Regardless, Claimants Cannot Satisfy Rule 24(a)(2)'s Core Requirements.

Under Rule 24(a)(2), intervention as of right is appropriate where a proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so

---

[6] As noted (*infra* at 15), if allowed to intervene, even if the Court were to deny their motion to stay here, Claimants may still try to obtain a *de facto* stay by filing an appeal. *See* 9 U.S.C. § 16.

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Claimants must show they have a "significantly protectable interest" in the litigation. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). Here, Claimants' purportedly "protectable interest" supporting their intervention bid is their "arbitration rights." *See* Dkt. 68 at 7, 23. But that interest does not support intervention in this case.

First, as Claimants concede, they are ***actively arbitrating*** their ERISA claims with Merrill in the FINRA arbitration." Dkt. 68 at 26-27. Therefore, Claimants' "arbitration rights" do not need "protecting," as they are now proceeding in their chosen forum. Plus, no party in this case has challenged Claimants' ability to arbitrate. Their only ostensible "interest" here, therefore, is that the Court may rule in Defendants' favor on Milligan's individual claims, which they chose to copy and file in FINRA. But Claimants make the point that a decision will ***not*** bind them. *See* Dkt. 68 at 8, 27 (admitting "a ruling in Merrill's favor will not be formally binding on putative members of the proposed class"). Regardless, a proposed intervenor does not have a "substantial interest in the procedural mechanism by which litigation proceeds." *Grainger v. Ottawa Cnty., Michigan*, 90 F.4th 507, 514 (6th Cir. 2024) (denying putative class member's motion to intervene).

Second, Claimants also cannot establish that denying intervention will actually "impair or impede" their ability to arbitrate their claims. *See Sierra Club v. EPA*, 2024 WL 3625682, at *12 (S.D. W. Va. Aug. 1, 2024) ("Despite its flexibility, the impairment prong has limits."). Claimants, at best, suggest an adverse decision on Defendants' summary judgment motion could negatively impact their chances in arbitration. That is, they maintain that the mere possibility that this Court could create persuasive authority—which their FINRA arbitration panel will be free to consider how it sees fit—mandates intervention. Dkt. 68 at 8, 27. Not so. Where proposed intervenors are

not bound by or collaterally estopped from challenging another court's holding in separate litigation, their interests are not actually impaired. *See, e.g.*, *Grainger*, 90 F.4th at 516 ("Although proposed intervenors would be affected by an order in the underlying litigation, the order did not collaterally estop the intervenors from challenging its holding in separate litigation, nor did it bind them to its holding in the separate litigation."); *Gautreaux v. Pierce*, 743 F.2d 526, 535 (7th Cir. 1984) ("Refusing to allow intervention effectively would require only that Intervenors refile their motions and supporting documents in another lawsuit which would also be considered by a district judge. Under these circumstances, refusing to allow intervention will cause little if any inconvenience that would not also exist if we allowed intervention."); *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977) ("Mere inconvenience to the [intervenor] caused by requiring him to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2).").

Therefore, because Claimants (1) admittedly are already "actively" pursuing their claims in FINRA, and (2) concede they will not be bound by this Court's ruling, they have not satisfied the impairment prong of this analysis. *E.g.*, *RLI Ins. Co. v. Nexus Servs., Inc.*, 2018 WL 5621982, at *3 (W.D. Va. Oct. 30, 2018) ("[T]he Intervenors' interests would not be impaired because they have the opportunity to litigate whether their privacy interests are violated in another action."); *Jones v. GES Exposition Servs., Inc.*, 2004 WL 2011396, at *8 (N.D. Ill. Sept. 7, 2004) ("Because no class has been certified . . . , disposition of the suit will not bar (or even meaningfully preclude) the proposed intervenors from pursuing their own rights in their own separate action(s)").

Nor can Claimants substantiate their assertion that Milligan fails to adequately safeguard their supposed "protectable interest." While this burden may be a "minimal challenge," it is still a requirement, particularly where the proposed intervenor "has the same ultimate objective" as the current plaintiff. *Democracy N. Carolina v. Hirsch*, 345 F.R.D. 147, 149 (M.D.N.C. 2023). That

is true here, as both Milligan and Claimants have the "same ***ultimate*** objective"—establishing the WC Plan is a "pension plan" under ERISA. To show inadequate representation, Claimants "***must*** demonstrate 'adversity of interest, collusion, or nonfeasance' to undo a presumption in favor of adequacy." *Id.* Claimants made no effort to establish any of these factors.

At best, Claimants argue their interests are adverse merely because they'd like to arbitrate in FINRA the same claims Milligan filed first as a putative class action, and they don't want to be part of any such class. But that argument is a smoke screen. Milligan has never attempted to stop Claimants from arbitrating at FINRA. And, by addressing summary judgment ***before*** a class certification decision, Milligan is actually ensuring the Court's decision will ***not*** be binding on any putative class members, Claimants, or any other FINRA litigants, as could be the case if the Court ultimately certified a mandatory, non-opt-out class under Rule 23(b)(1) or (b)(2), as Milligan requests. Claimants therefore fail to carry their burden on this prong as well.

### D. Permissive Intervention Is Not Warranted.

In one passing footnote, Claimants also argue they should be allowed to permissively intervene. Dkt. 68 at n14. The Court should reject this undeveloped argument out of hand. When considering a motion under Rule 24(b), courts must consider whether the proposed intervention will "unduly delay" or "prejudice the adjudication of the original parties' rights." *Sierra Club*, 2024 WL 3625682, at *14; Fed. R. Civ. P. 24(b)(3). Here, this type of undue delay and prejudice is not only likely, it is the very ***intent*** of Claimants' motion—giving no regard for Milligan's litigation of his own claims in court or those of the putative class members. Claimants' sole basis for moving to intervene is to protect their (unchallenged) "arbitration rights" and file a frivolous motion to stay. *Infra* at 16-22. Indeed, if permitted to intervene, the Court will need to rule on Claimants' motion to stay and, if denied, potentially allow a possible appeal to play out too. *See* 9 U.S.C. § 16. All the while, the Court could be stifled in ruling on the fully briefed summary

judgment motion that was ripe for a decision before Claimants' last-ditch attempts to stop it. Whether summary judgment is granted or denied, the Court should not allow Claimants' gamesmanship to unduly delay a ruling on the pending motion for summary judgment in this case.

*   *   *

For any of the reasons above, Claimants have no legal or factual basis for intervening in this case. To the contrary, they expressly disclaimed their ability to "participate in th[is] class action," and are currently "actively arbitrating" their claims in FINRA. The Court should reject this obvious effort to gum up this case and allow them to jump ahead of the Court and Milligan in arriving at a decision on the merits of their respective ERISA claims.

## III. Even if Permitted to Intervene, the Court Should Deny Claimants' "Motion to Stay."

Even if Claimants were allowed to intervene, their request that the Court put this first-filed lawsuit on ice—potentially for *years*—is as brazen as it is baseless, and the Court should reject it.

Claimants assert no claims against Defendants in this Court. Nor are they party to the arbitration agreement between Milligan and Merrill. Yet they tell this Court that it ***must*** stay Milligan's first-filed putative class action, entirely, because they chose to file copycat claims in FINRA months later. Such a drastic step is required, so they say, to protect their right to arbitrate similar claims. But, again, they are ***already*** arbitrating those claims in FINRA. Dkt. 68 at 25.

The true nature of Claimants' request is obvious: they foresee that this Court's ruling on the summary judgment motion could harm their chances in their separate arbitration, so they want to beat the Court to the punch. But Claimants concede a summary judgment ruling will not be binding on them, but rather Milligan alone. Dkt. 68 at 25. Yet they ask the Court to stay this entire case (and upend the Court's ability to rule on the fully briefed summary judgment motion) until after they—and apparently ***all 252*** claimants who have filed claims in FINRA, along with at least 71 more who Claimants' counsel purports to have waiting in the wings (*id.* at n.1)—can first try

to persuade 34 different FINRA panels (and counting), that Claimants should prevail on their ERISA claims. This would mean staying this case until ***mid-2027*** at the earliest, and likely beyond. *See* Russell Decl. ¶ 6. There is no legal or factual basis for this request.

### A. Claimants Have No Basis for a Stay Under the Federal Arbitration Act.

Claimants first argue that staying this "entire proceeding" is "mandatory" under the FAA, 9 U.S.C. § 3. Mot. at 1. That is wrong. The FAA is not implicated by Claimants' request because they do not seek to enforce ***any*** arbitration agreement. They do not ask the Court to enforce ***their own*** Form U4. Nor could they, since they are arbitrating in FINRA now. Dkt. 68 at 25. They do not ask the Court to enforce ***Milligan's*** Form U4. Nor could they, because they are not a party to that agreement and, regardless, could not enforce it even if they were (as explained below). As it stands, this is a putative class action that Milligan filed before a single copycat claim was filed in FINRA (by these Claimants or any of the 252 others). There are no grounds for a § 3 stay.

The Supreme Court has reiterated "explicitly and repeatedly that arbitration obligations are grounded in contract law," and such agreements are "as enforceable as other contracts, but not more so." *Rogers*, 76 F.4th at 286 (quoting *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022)). FAA § 2 thus provides that such an agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To enforce this requirement, § 4 allows "a party 'aggrieved' by the failure 'of another to arbitrate *under a written agreement* for arbitration may petition' a *federal court* 'for an order directing that such arbitration proceed in the manner provided for in such agreement." *Rogers*, 76 F.4th at 286 (quoting 9 U.S.C. § 4) (emphasis in original). FAA § 3 further provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue ***referable to arbitration under an agreement in writing*** for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is ***referable to arbitration under such an agreement***, shall on application of ***one of the parties*** stay the trial of the action until such arbitration

has been had in accordance with the terms of ***the agreement***, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphases added).

Taken together, the FAA's enforcement scheme plainly applies to a dispute that one party to an arbitration agreement has "fail[ed]" to arbitrate pursuant to that "written agreement." *Rogers*, 76 F.4th at 286. And, as the text of § 3 makes clear, a mandatory stay generally requires that "an arbitration agreement exists *between the parties*" to the actual "suit or proceeding" that was filed in court rather than arbitration. *Id.* (quotations omitted) (emphasis in original); *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625 (2009) ("Section 3 of the [FAA] entitles ***litigants in federal court*** to a stay of any action that is 'referable to arbitration under an agreement in writing.'") (emphasis added). While a non-signatory to an arbitration agreement is not categorically foreclosed from seeking a § 3 stay, it may do so only "if the relevant state contract law allows him to enforce the agreement." *Id.* at 631; *Rogers*, 76 F.4th at 287 (only "if state contract law allows a person who was not a party to an arbitration agreement to nonetheless enforce it, then that nonparty is entitled to invoke the FAA's enforcement mechanisms in federal court"). Here, however, not even Claimants assert that any contract law principles entitle them to enforce an arbitration agreement between Milligan and Merrill, nor do they ask the Court to do so.

Claimants thus have no standing (or any other basis) to seek a § 3 stay. Neither Claimants nor Merrill brought "any suit or proceeding" in federal court, 9 U.S.C. § 3. And Milligan's class action claims, which ***were*** "brought" in this Court, are not "referable to arbitration" under Milligan's Form U4. *Supra* at 5-6. As such, Claimants are not presently "one of the parties" to ***either*** this lawsuit ***or*** an arbitration agreement that applies to any claims in this case, nor do they seek to enforce arbitration "in accordance with the terms of ***the agreement***" that applies to Milligan. 9 U.S.C. § 3 (emphasis added). To the contrary, Claimants concede that they are already

arbitrating in FINRA, pursuant to their own Form U4 agreements. And Claimants have even waived their ability to participate in this case by giving "notice, [to the panel] pursuant to FINRA Rule 13204(a)(2), that they **will not participate in the class action** or in any recovery that may result from the class action pending against Merrill Lynch." Dkt. 67-11 at 2 (emphasis added). Nevertheless, contradicting this notice, Claimants now seek to "participate in th[is] class action" by asking this Court to stay Milligan's claims and those of thousands of putative class members. Worse, they ask the Court to stay "the entire proceeding"—but not so Milligan can arbitrate **his** claims, but so **Claimants** (and apparently anyone else who has filed or ever will file similar claims in FINRA) can beat the Court to a resolution in their arbitrations first. Dkt. 68 at 1.

Tellingly, Claimants do not cite any case ordering a § 3 stay in circumstances even remotely comparable. To the contrary, most cases they cite stand for only general FAA principles or involve the more typical scenario in which a plaintiff with an arbitration agreement filed suit in federal court instead. Some cases involve a common plaintiff whose claims were subject to arbitration with *some* defendants, but not others, or where *some* claims were arbitrable, but not all. None of these scenarios reflects what Claimants would ask the Court to do here. They are not parties and have *no* claims against any Defendant in this Court; to the contrary, their claims are proceeding in FINRA. Milligan, on the other hand, has no claims "referrable to arbitration" under § 3, given the terms of Milligan's U4. Claimants are simply interlopers asking to jam up this action because an adverse summary judgment ruling might disadvantage them elsewhere.

Claimants rely primarily on a single case from the Fifth Circuit to assert that all it takes to obtain a § 3 stay is the prospect that an arbitrator in some other case might be "strongly influenced" or "seriously affected" by a court's resolution of similar claims in court. Mot. at 13-14 (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004)).

This is not accurate. *Waste Management* involved "two parallel proceedings involving the **same** letter of credit," where a common plaintiff (Waste Management) "sought to recover the **same** missed payment" from both a subsidiary (in court) and its parent (in arbitration). *See Matthews v. Priority Energy Servs., LLC*, 2016 WL 7633990 (E.D Tex. Dec. 2, 2016) (distinguishing *Waste Management* and denying a § 3 stay). The subsidiary moved to stay the litigation under § 3, given the first-filed arbitration between Waste Management and the parent—even though the subsidiary was not a signatory to those parties' arbitration agreement. A critical fact leading to a stay was that Waste Management, a common plaintiff, claimed that **both** the parent and the subsidiary were liable on the **same** payment—so the key issue in both proceedings was "who should reimburse [Waste Management] for that payment." *Id.* at *5. Thus, resolving the claims in court would necessarily resolve the **same** claims with one of the actual parties in arbitration.

None of this applies here. Claimants do not try to enforce Milligan's Form U4 as a "non-signatory," or claim their own claims are "referrable to arbitration" pursuant to **Milligan's** agreement. Nor are they common claimants with some claims that are arbitrable against Merrill and others that are not. Rather, their only alleged harm in allowing this litigation to go forward is that a bad ruling could hurt them.[7] Beyond these distinctions, other courts have questioned *Waste Management*, noting "the criteria developed in Fifth Circuit jurisprudence find more in Section 3

---

[7] More comparable are cases in which some putative class members are subject to an arbitration agreement covering class claims, while others are not. Courts in that context often refuse to stay the entire litigation for putative members who did ***not*** agree to arbitrate, which would leave them languishing in court indefinitely merely because some other class members did agree to arbitrate. *See, e.g.*, *Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709, 711-12 (3d Cir. 2009) (finding § 3 cannot "reasonably be read to resolve issues presented in situations involving a party who has not committed itself to arbitrate any issue before the court," while noting "numerous other situations in which litigants who are free to litigate a claim could lose their right to do so by being involuntarily joined with parties who are not free to litigate some issue in some suit—class actions and consolidations most readily come to mind").

than its text will support," and holding § 3 "was not intended to mandate curtailment of litigation rights of anyone who has not agreed to arbitrate any of the issues before the court." *Mendez*, 553 F.3d at 711-12; *see Taylor v. Pilot Corp.*, 697 F. App'x  854, 860 (6th Cir. 2017) (rejecting stay of litigation until all arbitrations by collective action members were completed; "that the FAA would actually entitle [defendant] to stay the proceedings with respect to plaintiffs that never agreed to arbitrate with [it] until [it] finished arbitrating with those who had seems questionable").

In the end, the law does not allow third-parties to intervene in pending cases any time a merits decision might impact their own claims. Outcomes in one litigation have an impact on other cases all the time. And Claimants' logic has no limiting principle. What if Milligan had filed only an individual claim? Assuming it was not arbitrable, the Court would still need to rule as to whether the WC Plan is a "pension plan" under ERISA, thus potentially "impairing" Claimants' arbitration in the same way they complain about now. But they would have no basis for interjecting to ask a court to stay resolution of such individual claims. Or what if Defendants filed a motion to dismiss in this case, rather than a motion for summary judgment, but raising the same arguments that the WC Plan is not a "pension plan" under ERISA? Can Claimants or putative class members intervene to force the Court to defer a ruling on the motion, just because doing so might impact their claims if they elect to arbitrate in FINRA?  Of course not. But Claimants' motion is no different.

### B.      Claimants Offer No Reason to Delay This Case or Await Class Certification.

In the alternative, Claimants ask the Court to stay all other activities in this case—including the pending summary judgment motion—until it can first resolve a yet-to-be filed motion for class certification. Mot. at 18-21. This request is puzzling. Claimants do not argue that the lack of a certified class (or an order denying class certification) has precluded them from arbitrating in FINRA. They appear focused on Merrill's request that *the FINRA panel* stay the arbitration until it is clear whether a mandatory class is (or is not) certified under Rule 23(b)(1) or (b)(2), which

20

could preclude Claimants from opting out. *See* Dkt. 68 at 15-16. But that issue is not even ripe in

FINRA, as the panel has not ruled—and may ultimately deny a stay. Regardless, that is currently

a case-management issue for the FINRA panel, and has no bearing on whether to proceed with

Milligan's claims here.

Nor is there anything improper or deceptive in seeking summary judgment on Milligan's

individual claims. As the Fourth Circuit has long held, "Rule 23 does not preclude a district court

from considering a motion for summary judgment prior to the issue of class certification." *Player*

*v. Maher Terminals, Inc.*, 841 F.2d 1123 (4th Cir. 1988); *see also, e.g.*, *O'Bar v. Lowe's Home*

*Ctrs., Inc.*, 2007 WL 1299180, at \*1 (W.D.N.C. May 2, 2007) ("[I]t is ***entirely appropriate*** for the

Court to rule on Rule 56 motions or other threshold issues before deciding certification.")

(emphasis added). And this view is consistent with the purposes animating Rule 23. *See, e.g.*, Fed.

R. Civ. P. 23(c)(1), Advisory Cmte. Notes to 2003 Amend. ("The Party opposing the class may

prefer to win dismissal or summary judgment as to the individual plaintiffs without certification

and without binding the class that might have been certified.").  In other words, by moving for

summary judgment before certification, Defendants accepted the risk that, even if successful, this

would not have preclusive effect on existing and future plaintiffs—including Claimants—from

pursuing even the ***same claims***. Claimants agree, readily admitting the Court's summary judgment

ruling will not bind them. Dkt. 68 at 8, 27 ("Coming prior to class certification, a ruling in Merrill's

favor will not be formally binding on putative members of the proposed class[.]"); *Player*, 841

F.2d at 1123 ("[A]ny prejudice . . . works against the defendant").[8]

---

[8] By way of background, the only reason this question merits any discussion is due to the one-way intervention doctrine. This doctrine, which aims to protect ***defendants***, is implicated where a plaintiff "waits on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervenes to advantage of the judgment." *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) (cleaned up). But because "the rule is meant to protect defendants," a defendant

Taking a step back, it is unclear what Claimants hope to achieve by asking for an accelerated ruling on class certification. As it stands now, a summary judgment decision will not bind them or formally resolve their claims in FINRA. Even if they feel they could persuade this Court to deny class certification (Dkt. 68 at 7), that would still leave Milligan's claims for the Court to resolve—which is the current posture of this case now. Or, if Claimants are wrong and the Court certified a mandatory class under Rule 23(b)(1) or (b)(2), these Claimants may *be in that class*, meaning the Court's resolution of Defendants summary judgment *will be* binding on them. But that appears to be the scenario Claimants seek to avoid. If anything, one would assume Claimants would prefer the current posture, seeing as a ruling on Milligan's claims will only be binding on him, while they are free to argue in FINRA about its persuasive value. But their alternative request only lays bare what they are truly seeking: to stall this Court from deciding the merits of the ERISA claims, so they can try to persuade a FINRA panel to find in their favor first. That is simply not a valid basis for the unprecedented relief they request.

## CONCLUSION

For these reasons, the Court should deny Claimants' motion to intervene. And given their inability to intervene, the Court should not rule on Claimants' proposed motion to stay.

---

may "voluntarily forgo the rule's protections and 'moot' the class certification issue by moving for—and obtaining—summary judgment 'before the district judge decides whether to certify the suit as a class action.'" *Derossett v. Jonathan C. Patrowicz, D.O., P.A*, 2022 WL 4448859, at *1 n.1 (D. Md. Sept. 23, 2022) (ruling on summary judgment "without waiting for the class certification issue to be raised or resolved").

Dated: February 28, 2025

Respectfully submitted,

By: /s/ Robert A. Muckenfuss

Sari M. Alamuddin (*pro hac vice*)
Matthew A. Russell (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
(312) 324-1000
sari.alamuddin@morganlewis.com
matthew.russell@morganlewis.com

Robert A. Muckenfuss, NC State Bar #28218
Zachary L. McCamey, NC State Bar #53540
MCGUIRE WOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 343-2000
zmccamey@mcguirewoods.com
rmuckenfuss@mcguirewoods.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Robert A. Muckenfuss, an attorney, hereby certify that on February 28, 2025, I caused a copy of the foregoing document to be filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

*/s/ Robert A. Muckenfuss*